IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOLYN L. SPECTER, as Personal Representative of the ESTATE OF JAMES E. SPECTER, M.D., and on behalf of herself, and the Surviving Family Members including KEVIN SPECTER, and DAVID W. WOOD, JR. and MARIANNE WOOD, Individually an on behalf of the marital community,<br><br>                                      Plaintiffs,<br>v.<br><br>TEXAS TURBINE CONVERSIONS, INC., a Texas Corporation, RECON AIR CORPORATION, a foreign corporation,<br><br>                                      Defendants. | Case No. 3:17-cv-00194-TMB<br><br>ORDER ON MOTION IN LIMINE TO LIMIT INTRODUCTION OF FLIGHT TEST DATA (DKT. 176) |

## I.    INTRODUCTION

This matter comes before the Court on Defendant Texas Turbine Conversions Inc.'s ("TTC") Motion in Limine "to Limit Introduction of Flight Test Data and Supporting Memorandum of Law."[1] Plaintiffs oppose the Motion.[2] The matter is fully briefed by the parties.[3] Neither party has requested oral argument, and the Court finds the matter suitable for resolution without oral argument. For the following reasons, the Motion at Docket 176 is **DENIED**.

---

[1] Dkt. 176 (Motion).

[2] Dkt. 207 (Plaintiffs' Opposition).

[3] Dkts. 176; 207; 273 (TTC Reply).

1

## I. BACKGROUND

The background facts of this case are set out in detail in this Court's order at Docket 313. The facts are incorporated by reference and will not be repeated here.[4]

Plaintiffs seek to introduce flight test data gathered from both DHC-3 Otter floatplanes and landplanes as evidence of the existence of a design defect under their negligence and strict liability claims. TTC moves to exclude flight test data relating to landplane performance and argues that it would be unfairly prejudicial and that the value of the flight test data would be outweighed by its risk of confusing the jury.[5]

TTC sought to obtain a Supplemental Type Certificate ("STC") to convert DHC-3 Otters from propeller planes to "turboprop" planes.[6] The STC indicates that TTC applied for the STC in October 2000.[7] In advance of that application, TTC conducted flight testing, the results of which were included in a report issued prior to TTC's application.[8] The relevant STC in this case was issued May 2001; however, TTC was only authorized to make conversions in Otter landplanes, or wheeled planes.[9] Additional testing was completed in January 2002, with the explicit goal of

---

[4] *See* Dkt. 313 (Order on Defendants' Motions in Limine re: Certain Expert Testimony).

[5] Dkt. 176 at 1–2.

[6] "Turboprop aircraft have one or more gas-turbine engines connected to a gearbox that turns the propeller(s), to move the aircraft on the ground and through the air." *See* Turboprop Aircraft, National Business Aviation Association, https://nbaa.org/business-aviation/business-aircraft/turboprop-aircraft/.

[7] Dkt. 207-3 (STC Certificate).

[8] Dkt. 176-15 (TTC Flight Test Report (2000)).

[9] *Id.*; Dkt. 176-12 (TTC Flight Test Report (2002)) (stating that "No new type design data is considered under this project; just the issue of compatibility is being investigated so that the 'LANDPLANE ONLY' restriction on the conversion STC can be removed.").

testing the turboprop conversion on floatplanes, such that the STC could be amended to permit conversions to both landplanes and floatplanes.[10] The FAA approved the modification, and the STC was amended in January 2002 to state "[t]his alteration is compatible with approved Landplane and Seaplane configurations of the DHC-3 aircraft."[11] At issue here is whether Plaintiffs should be able to present all flight testing data, or just the data that pertains to TTC's bid in 2002 to modify the STC to allow for turboprop conversions on DHC-3 Otter floatplanes.

## II. LEGAL STANDARD

"'A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area'"[12] and is "a well-recognized judicial practice authorized under case law."[13] A court's power to rule on motions in limine stems from "the court's inherent power to manage the course of trials."[14]

Federal Rule of Evidence ("FRE") 403 states that the court "may exclude relevant evidence if its probative value is substantially outweighed by . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[15]

---

[10] Dkt. 176-12 at 2.

[11] Dkt. 207-3 at 2.

[12] *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013) (quoting *United States v. Heller,* 551 F.3d 1108, 1111 (9th Cir. 2009)).

[13] *Smith v. County of Riverside*, No. EDCV 16-00227 JGB (KKx), 2018 WL 7500278, at *2 (C.D. Cal. Nov. 14, 2018) (citing *Ohler v. United States*, 529 U.S. 753, 758 (2000)).

[14] *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

[15] Fed. R. Evid. 403.

The district court "retains broad discretion" to determine whether the probative value of the evidence is *substantially* outweighed by the aforementioned considerations.[16]

### III. ANALYSIS

TTC argues that floatplanes and landplanes are different and that there is a "high risk of the jury confusing the issues."[17] TTC is concerned that Plaintiffs will present the flight test data from 2000, cherry-pick statements from the landplane flight testing report, and, as a result, encourage the jury to doubt the design or safety of the turboprop engine installed on Rainbow King Lodge's floatplane.[18] TTC argues that it would be prejudiced because the jury would inappropriately consider the landplane testing data.[19] Plaintiffs counter that the dispute over test data does not go to admissibility, but to the weight of the evidence instead.[20] Plaintiffs also make arguments, largely unsupported, that question the motive of TTC in seeking to exclude the landplane testing data.[21]

---

[16] *Obrey v. Johnson*, 400 F.3d 691, 698 (9th Cir. 2005) (citing Fed. R. Evid. 403); *see also R.B. Matthews, Inc. v. Transamerica Transp. Servs., Inc*., 945 F.2d 269, 272 (9th Cir. 1991) ("Trial judges have wide discretion to exclude evidence given their presence at the trial and because the considerations arising under [FRE] 403 are 'susceptible only to case-by-case determinations, requiring examination of the surrounding facts, circumstances, and issues.'" (citation omitted)).

[17] Dkt. 176 at 14.

[18] *See* Dkts. 273 at 7–8; 176 at 14.

[19] Dkt. 176 at 12–14.

[20] Dkt. 207 at 5.

[21] *Id.* at 4. Plaintiffs also allege that TTC "withheld" information from pilots and the FAA and "got the FAA to certify the aircraft with its controllability problems" without elaboration. *Id.* at 6. In any event, Plaintiffs' allegations do not affect the Court's consideration of the evidentiary issue at issue in TTC's Motion.

The Court finds that landplane testing data should not be excluded. The landplane data has probative value because it can help the jury evaluate the process by which TTC's turboprop conversion was tested, approved, and implemented. The data is probative as to Plaintiffs' theory that the engine conversion was defective and was a substantial factor in causing the accident. While there are certainly differences between floatplanes and landplanes, those differences do not necessarily negate the possibility of a defect in the engine conversion and its subsequent performance on the aircraft in this case. The Court further finds that the probative value is not substantially outweighed by the risk of prejudice. TTC will have every right at trial to present its case, cross examine witnesses, and present its own view on the applicability and weight of the landplane flight test data. As the parties point out, expert testimony may also be used to assist the jury in understanding the evidence.[22] The jury is equipped to comprehend the differences between landplanes and floatplanes and appropriately weigh the evidence. TTC has not shown that under FRE 403 analysis the flight test data should be excluded in this case.

## IV. CONCLUSION

For the above reasons, TTC's Motion at Docket 176 is **DENIED**.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 4th day of December, 2020.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[22] *See, e.g.*, Dkt. 176-11 (Carducci Expert Report).