IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOLYN L. SPECTER, as Personal Representative of the ESTATE OF JAMES E. SPECTER, M.D., and on behalf of herself, and the Surviving Family Members including KEVIN SPECTER, and DAVID W. WOOD, JR. and MARIANNE WOOD, Individually an on behalf of the marital community,<br><br>Plaintiffs,<br><br>v.<br><br>TEXAS TURBINE CONVERSIONS, INC., a Texas Corporation, RECON AIR CORPORATION, a foreign corporation,<br><br>Defendants. | Case No. 3:17-cv-00194-TMB<br><br>ORDER ON PARTIES' MOTIONS IN LIMINE TO EXCLUDE CERTAIN EXPERT TESTIMONY REGARDING SPATIAL DISORIENTATION (DKTS. 165, 185) |

## I. INTRODUCTION

The matter comes before the Court on two motions in limine from the parties to exclude expert testimony regarding spatial disorientation. First, Plaintiffs move to preclude defense experts Robert Carducci, Mark Madden, and Lawrence Timmons from testifying about spatial disorientation and the role it may have played in the plane crash.[1] Second, Recon Air Corporation ("RAC") moves to exclude Plaintiffs' rebuttal expert, Ronald Smith, from testifying.[2] The Motions

---

[1] Dkt. 185 (Plaintiffs' Motion in Limine re Spatial Disorientation).

[2] Dkts. 165 (RAC Motion in Limine No. 5 re Smith); 231 (Texas Turbine Conversions' ("TTC") Motion for Joinder); RAC and TCC are the remaining Defendants in this action and will be referred to collectively as "Defendants."

1

have been fully briefed and are ready for decision.[3] The Parties did not request oral argument, and the Court finds it is not necessary. Based on the following reasons, the Motions are **DENIED**.

## II. BACKGROUND

The background facts of this case are set out in detail in this Court's order at Docket 313. The facts are incorporated by reference and will not be repeated here.[4]

Plaintiffs move to exclude defense experts Carducci, Madden, and Timmons from testifying regarding Pilot Furnia's spatial disorientation and what role it may have played in the crash.[5] Plaintiffs argue that Carducci, Madden, and Timmons lack the requisite expertise or foundational reliability to offer an opinion that Pilot Furnia suffered from spatial disorientation and crashed the plane.[6] TTC and RAC filed oppositions arguing that the three experts are qualified to give expert testimony on spatial disorientation and their opinions are relevant and helpful because Pilot Furnia testified that his disorientation caused the accident.[7]

Ronald Smith, an aviation physiologist, provided a Rebuttal Expert Report on behalf of Plaintiffs to rebut defense experts Carducci, Madden, and Timmons' testimony that Furnia suffered from spatial disorientation during the flight.[8] RAC moves to exclude Smith's testimony as improper rebuttal testimony that fails to actually contradict defense experts' testimony and that

---

[3] Dkts. 216 (TTC's Opposition to Motion in Limine re Spatial Disorientation); 241 (RAC's Opposition to Motion in Limine re Spatial Disorientation); 282 (Plaintiffs' Reply); 210 (Opposition to RAC's Motion in Limine No. 5); 259 (RAC's Reply).

[4] *See* Dkt. 313 (Order on Defendants' Motions in Limine re: Certain Expert Testimony).

[5] Dkt. 185.

[6] Dkt. 185-1 (Memorandum in Support of Plaintiffs' Motion in Limine).

[7] Dkts. 216 (TTC Opposition); 241 (RAC Opposition).

[8] Dkt. 165-10 (Smith's Rebuttal Report).

2

should have been anticipated and disclosed during initial expert disclosures.[9] Plaintiffs oppose this Motion and argue Smith's testimony is a proper rebuttal to defense experts.[10]

### III.   LEGAL STANDARD

*A.   Motion in Limine and Relevancy*

"'A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area'"[11] and is "a well-recognized judicial practice authorized under case law."[12] A court's power to rule on motions in limine stems from "the court's inherent power to manage the course of trials."[13]

Federal Rule of Evidence ("FRE") 401 "defines relevant evidence as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"[14] "If evidence is relevant, it is generally admissible under [FRE] 402."[15] "However, relevant evidence must be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."[16]

---

[9] Dkt. 165-1 at 1–3, 5–15.

[10] Dkt. 210.

[11] *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013) (quoting *United States v. Heller,* 551 F.3d 1108, 1111 (9th Cir. 2009)).

[12] *Smith v. County of Riverside*, No. EDCV 16-00227 JGB (KKx), 2018 WL 7500278, at *2 (C.D. Cal. Nov. 14, 208) (citing *Ohler v. United States*, 529 U.S. 753, 758 (2000)).

[13] *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

[14] *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 953 (9th Cir. 2011) (quoting *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (en banc)).

[15] *Id.*

[16] *Id.* (emphasis added) (citing Fed. R. Evid. 403).

3

### B. *FRE 702 and Daubert*

FRE 702 controls the admissibility of an expert's opinion. FRE 702, as modified in light of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, provides that:

> A witness who is qualified as an expert . . . may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.[17]

The principles of *Daubert* apply to both scientific[18] and "technical" or "other specialized" knowledge.[19] When determining the admissibility of such evidence in advance of trial, the court undertakes a "gatekeeping" function to ensure that the jury's consideration of evidence is not contaminated by irrelevant or scientifically unsupported testimony.[20]

The Supreme Court has established a two-part analysis for determining whether expert testimony is admissible: (1) "the trial court must make a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue,'" i.e., whether the proffered

---

[17] Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) (*Daubert I*).

[18] *Daubert I*, 509 U.S. at 595.

[19] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

[20] *See United States v. Alatorre*, 222 F.3d 1098, 1100–03 (9th Cir. 2000); *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010); *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019).

4

testimony is reliable; and (2) the trial court "must ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact."[21]

The reliability inquiry is "a flexible one."[22] Several factors that can be used to determine the reliability of expert testimony are: (1) "whether a theory or technique can be tested"; (2) "whether it has been subjected to peer review and publication"; (3) "the known or potential error rate of the theory or technique"; and (4) "whether the theory or technique enjoys general acceptance within the relevant scientific community."[23]

The relevancy inquiry, requires the court to ensure that the proposed expert testimony is "relevant to the task at hand," i.e., that it "logically advances a material aspect of the proposing party's case."[24] Once an expert "meets the threshold established by [FRE] 702 as explained in *Daubert,* the expert may testify and the jury decides how much weight to give that testimony."[25]

---

[21] *United States v. Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002) (quoting *Daubert I,* 509 U.S. at 591–93); *Estate of Barabin v. AstenJohnson Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) ("We have interpreted Rule 702 to require that '[e]xpert testimony . . . be both relevant and reliable.'") (quoting *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001)).

[22] *Kumho Tire*, 526 U.S. at 150.

[23] *United States v. Hankey,* 203 F.3d 1160, 1167 (9th Cir. 2000) (citing *Daubert I*, 509 U.S. at 592–94).

[24] *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II* "); *Estate of Barabin*, 740 F.3d at 463; *Primiano*, 598 F.3d at 656 ("'Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.'") (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)).

[25] *Primiano*, 598 F.3d at 565; *see also City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) ("'The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.'") (internal alterations omitted) (quoting *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013)).

## IV.    DISCUSSION

*A.    Plaintiffs' Motion in Limine to Exclude Defense Expert Testimony on Spatial Disorientation*

For the following reasons, Plaintiffs' Motion in Limine to exclude defense expert testimony regarding spatial disorientation is **DENIED.** Courts have frequently allowed expert testimony to explain to a fact finder the mechanics and effects of spatial disorientation in the context of plane crashes.[26]

Here, defense expert Carducci is an aeronautical engineer who opines on a number of topics, including that Pilot Furnia suffered from spatial disorientation early in the flight that resulted in his loss of control and caused the aircraft to crash.[27] Carducci has extensive experience with modification of aircraft and associated equipment, development of aircraft safety procedures and instructions, investigations into aircraft losses and crashes, and has had a privates pilot's license for decades.[28]

Defense expert Timmons, an aeronautical engineer with over fifty years of engineering experience, product development, and flight test experience as well a personal pilot's license,

---

[26] *See Michelmore v. United States*, 299 F. Supp. 1116, 1119 (C.D. Cal. 1969) *aff'd sub nom. Spaulding v. United States*, 455 F.2d 222 (9th Cir. 1972) (two witnesses testified about pilot's disorientation as cause of fatal crash); *Himmler v. United States*, 474 F. Supp. 914, 918–19 (E.D. Pa. 1979) (multiple spatial disorientation witnesses); *Rawl v. United States*, 778 F.2d 1009, 1012–15 (4th Cir. 1985) (pilot's spatial disorientation contributed to fatal crash); *Budden v. United States*, 963 F.2d 188, 190–91 (8th Cir. 1992) (spatial disorientation testimony); *Rowe v. United States*, 272 F. Supp. 462, 471 (W.D. Pa. 1964) (three experts testified about spatial disorientation as cause of crash); *Langenbau v. Med. Trans. Corp.*, 167 F. Supp. 3d 983, 994, 1001 (N.D. Ia. 2016) (rejecting *Daubert* challenge to pilot who testified about spatial disorientation based on his personal experience and his examination of the flight data of the aircraft at issue).

[27] Dkts. 185-1 at 3 (citing Ex. 1, Carducci Depo. at 67:11–20); 185-7 (Carducci CV); 185-8 (Carducci Report).

[28] Dkt. 185-7 at 2–6.

opines that Pilot Furnia was unaware of his spatial orientation or maneuvers, leading to disorientation and the crash.[29] Defense expert Madden, a professor of aviation technology who has taught human factors courses and who is a licensed pilot with personal experience with spatial disorientation, also opines that Pilot Furnia lost control and crashed as a result of spatial disorientation.[30]

Plaintiffs argue that defense experts Carducci, Madden, and Timmons lack the requisite expertise or foundational reliability to offer an opinion that Pilot Furnia suffered from spatial disorientation and what impact this spatial disorientation may have had in causing the plane crash.[31] Specifically, Plaintiffs argue that Carducci lacks "any expertise in human factors, human perception, aviation medicine, or any of the other categories of expertise necessary to opine about spatial disorientation" instead explaining his expertise is that "spatial disorientation is 'common knowledge in the aviation industry'" and referencing military tests involving perception challenges arising from inner ear issues.[32] Plaintiffs argue that Timmons similarly fails to meet the *Daubert* standard for reliable expert testimony, with no scientific basis for his claim, training in "human factors or the considerations of spatial disorientation" and a misplaced reliance on Pilot Furnia's testimony.[33] Finally, Plaintiffs argue that Madden's testimony fails to meet the *Daubert* requirements because although Madden taught a human factors course, he has no formal education

---

[29] Dkts. 185-11 (Timmons Report & CV); 185-1 at 8–9.

[30] Dkts. 185-12 (Madden Report & CV); 185-1 at 9–12.

[31] Dkt. 185-1 at 2–3, 6–13.

[32] *Id.* at 6–8 (quoting Ex. 1, Carducci Dep. at 45:2–16, 87:5–12).

[33] *Id.* at 8–9.

7

or training in that topic and lacks medical or human physiology training.[34] Further, Plaintiffs point to Madden's rejection of situational awareness as a possible cause for the crash and Madden's amateur application of FAA definitions as further evidence Madden is unqualified to opine on Pilot Furnia's supposed spatial disorientation.[35] Smith, an aviation physiologist, provided a Rebuttal Expert Report on behalf of Plaintiffs, and Plaintiffs reference Smith's Report and his methodology as evidence of defense experts' shortcomings.[36]

Defendants argue that Pilot Furnia testified that his disorientation caused the plane crash.[37] They also defend their three experts' credentials, experience, and foundation—and thereby qualifications—to provide expert testimony on spatial disorientation, and Defendants contend that it is not necessary for a proffered spatial disorientation expert witness to be a medical doctor or a human factors expert.[38]

The Court agrees. Under the FRE 702 and *Daubert* standards, defense experts Carducci, Madden, and Timmons are sufficiently qualified to opine on Pilot Furnia's alleged spatial disorientation. All have extensive backgrounds and familiarity with not only the mechanics of planes and flight simulations, but, as pilots, all have personal experience with the effects of spatial disorientation and should be permitted to testify and should be permitted to offer opinions based

---

[34] *Id.* at 9–10.

[35] *Id.* at 10–12.

[36] *Id.* at 3, 7.

[37] Dkts. 216 at 4 (citing Ex. A Furnia Depo. at 151:23-25, 152:7-8); 241 at 3, 5, 15.

[38] Dkts. 216 at 6–9, 11– 25; 241 at 2, 5–16.

8

on reasoning, experience and examination of data from the flight in question.[39] Further, Carducci, Madden and Timmons reviewed appropriate sources to draw on for their expert conclusions, including Plaintiffs' expert witness reports, witness depositions, National Transportation Safety Board ("NTSB"),, Federal Aviation Administration ("FAA"), and Transport Canada documents and data relating to the crash, and manuals and regulations applicable to the aircraft in question.[40]

Additionally, the defense of spatial disorientation is clearly relevant to Defendants' case and supports the defense's theory that pilot error based in part on spatial disorientation—not product modifications to the aircraft—caused the crash. Plaintiffs' arguments about Carducci, Madden, and Timmons's testimony on spatial disorientation go to weight, not admissibility of their testimony.

Accordingly, because the Court finds that defense experts' testimony regarding spatial disorientation is relevant and reliable, Plaintiffs' Motion at Docket 185 is **DENIED**.

  *B.  RAC's Motion in Limine to Exclude Plaintiffs' Rebuttal Expert Smith*

For the following reasons, RAC's Motion in Limine to exclude Plaintiffs' rebuttal expert Smith's testimony regarding spatial disorientation is also **DENIED**. The scope of a rebuttal expert report is limited.[41] An expert report qualifies as a rebuttal report if it "is intended solely to contradict or rebut evidence on the same subject matter identified by another party under [Federal

---

[39] *See Langenbau*, 167 F. Supp. 3d at 1001; *Himmler*, 474 F. Supp. 919 ("Spatial disorientation is a well-known phenomenon to people in aviation.").

[40] See Dkts. 185-8; 185-11; 185-12.

[41] *See* Fed. R. Civ. P. 26.

9

Rule of Civil Procedure] 26(a)(2)(B) or C."[42] Rebuttal experts cannot testify in their parties' case-in-chief.[43] Further, "proper expert rebuttal cannot explore new areas not raised in initial reports."[44]

However, Rule 26(a)(2) provides more flexibility for rebuttal expert testimony than traditional notions of rebuttal testimony at trial,[45] and "[a]s long as [the] rebuttal expert witnesses speak to the same subject matter the initial experts addressed and do not introduce novel arguments, their testimony is proper under Federal Rule of Civil Procedure 26(a)(2)(C)."[46] Further, "[a] party who does not bear the burden of proof on an issue may be keenly interested in avoiding the expense of designating an expert witness on that issue."[47] "If, however, the party with the burden of proof offers a compelling expert disclosure, the opposing party can still designate a rebuttal expert in compliance with the rules."[48]

---

[42] Fed. R. Civ. P. 26(a)(2)(D)(ii); *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 635–36 (D. Hawaii 2008); *Leadership Studies, Inc. v. Blanchard, Train. & Develop., Inc.*, No. 15cv1831-WQH(KSC), 2018 WL 1989554, at *9–10 (S.D. Cal. Apr. 27, 2018); *Withrow v. Spears*, 967 F. Supp. 2d 982, 1002 (D. Del. 2013) ("[E]xpert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal or reply reports.").

[43] *Lindner*, 249 F.R.D. at 636.

[44] *TCL Comm. Tech. Hold. Ltd. v. Telfonaktenbologet LM Ericsson*, SACV 14-00341 JVS (Anx) consolidated with CV 15-02370 JVS, 2016 WL 7042085, at *4 (C.D. Cal. Aug. 17, 2016).

[45] *Theoharis v. Rongen*, No. C13–1345RAJ, 2014 WL 3563386, at *4 (W. D. Wash. July 18, 2014).

[46] *Laflamme v. Safeway, Inc.*, Case No. 3:09-cv-00514-ECR-VPC, 2010 WL 3522378, at *3 (D. Nev. Sept. 2, 2010).

[47] *Theoharis*, No. C13–1345RAJ, 2014 WL 3563386, at *4; *TCL Comm. Tech. Hold. Ltd*, SACV 14-00341 JVS (Anx) consolidated with CV 15-02370 JVS, 2016 WL 7042085, at *4 (adopting the reasoning from *Theoharis* and declining to strike defense expert reports on the grounds that defendant "should have anticipated or expected having an expert testify on the subject matter that [defense] rebuttal expert reports cover").

[48] *Theoharis*, No. C13–1345RAJ, 2014 WL 3563386, at *4 (declining "to adopt the rule that expert testimony on an anticipated portion of an opposing party's case cannot be rebuttal expert

10

Plaintiffs submit Smith as a rebuttal expert to counter defense experts Carducci, Madden, and Timmons's conclusion that Pilot Furnia suffered from spatial disorientation or other physiological illusions contributing to the crash.[49] Smith is an Aviation Safety Officer for the U.S. Navy who has worked as a naval aerospace physiologist, received training at the Armed Forces Institute of Pathology, and investigated thirty-one major aircraft mishaps.[50] After reviewing depositions and expert reports from Carducci, Madden, and Timmons, as well as evidence in the record, Smith concludes that his Spatial Disorientation Event Sequence Analysis rules out that Pilot Furnia experienced spatial disorientation during the flight and crash.[51]

RAC argues that Smith is not proper rebuttal witness and that his testimony should be excluded because Smith's report offers opinions on "long-anticipated issues" including that RAC intended to present the defense of spatial disorientation, which appeared in RAC's Answer Third-Party Complaint and the NTSB Report, and Smith should have been disclosed as an initial expert.[52] RAC further argues that Smith fails to actually rebut defense experts' testimony regarding Pilot

---

testimony) (citing *Pakootas v. Teck Cominco Metals, Ltd.*, No. CV–04–256–LRS, 2012 WL 1833390, at *6 (E.D. Wash. Apr. 4, 2012) (explaining that Rule 26 "does not automatically exclude anything an expert could have included in his or her original report") *TCL Comm. Tech. Hold. Ltd.*, SACV 14-00341 JVS (Anx) consolidated with CV 15-02370 JVS, 2016 WL 7042085, at *1 ("'It is routine that the party with the burden of proof on a particular issue be the first to submit its expert reports addressing the issue.'") (quoting *Sandata Techs., Inc. v. Infocrossing, Inc.*, No. 05 CIV 09546LMMTHK, 2007 WL 4157163, at *1 (S.D.N.Y. Nov. 16, 2007)).

[49] *See* Dkt. 165-10.

[50] *Id.* at 4; Dkt. 185-6 at 4.

[51] Dkts. 165-10 at 4, 26.

[52] *Id.* at 4–6, 19–15.

Furnia's spatial disorientation.[53] Finally, RAC argues that allowing Smith to testify as a rebuttal expert unfairly prejudices RAC because RAC is unable to rebut new opinions set forth in Smith's expert report.[54]

Plaintiffs respond that RAC raised spatial disorientation in its cross claims against Pilot Furnia and Rainbow King and not in its Answer to Plaintiffs' Complaint, and that Pilot Furnia denied suffering from spatial disorientation in his deposition such that Plaintiffs did not need to put on their own initial expert to argue spatial disorientation was not a factor in the crash.[55]

The Court agrees and finds the reasoning in *TLC* and *Theoharis* that Rule 26 does not support a blanket prohibition on rebuttal testimony that addresses an anticipated portion of an opposing party's case to be compelling. Even if a defense of spatial disorientation by RAC or TTC to the products liability claim could have been anticipated, that does not automatically mean Plaintiffs cannot rebut such expert testimony when it arises.[56] The Court will not exclude Smith's

---

[53] *Id.* at 2, 12. In response to Plaintiffs' Motion in Limine to exclude defense experts from testifying about Pilot Furnia's alleged spatial disorientation, RAC argues that Smith's report is untimely. Dkt. 241 at 2. However, courts enjoy broad discretion when setting and adjusting discovery deadlines, and here, where all expert reports were disclosed well in advance of trial, and RAC declined to take Smith's deposition, Dkt. 210 at 2, there is no risk of unfair surprise to either side.

[54] Dkt. 165-1 at 9.

[55] Dkt. 210 at 2–3, 10.

[56] *Theoharis*, No. C13–1345RAJ, 2014 WL 3563386, at *4; *TCL Comm. Tech. Hold. Ltd.*, SACV 14-00341 JVS (Anx) consolidated with CV 15-02370 JVS, 2016 WL 7042085, at *4. The Court notes, as RAC points out, Dkt. 259 at 4–5, that both of these cases involved the admissibility of defense or cross-claimants' expert testimony, rather than a plaintiff's expert, and raised the concerns of unfair surprise surrounding a plaintiff's rebuttal expert. Be that as it may, the courts emphasized the party who does not bear the burden of proof on an issue may be interested in avoiding expert witness expenses until opposing party completes expert disclosure. Here, Plaintiffs do not bear the burden of offensively proving spatial disorientation did not cause the crash, and Smith's rebuttal testimony is limited to proffering theories rebutting the defense's assertion that Pilot Furnia suffered from spatial disorientation and that caused the plane crash.

report on the grounds that Plaintiffs should have "anticipated or expected having an expert testify on the subject matter" that Smith's rebuttal expert report covers,[57] especially considering that RAC raised spatial disorientation in its cross-claim, not in its Answer.[58] And considering that Pilot Furnia, who was dismissed from the action,[59] while acknowledging disorientation of some sort, did not admit or state that he believed he suffered from spatial disorientation during the crash.[60] A party need not expend endless time and resources on offensive measures that may not ultimately be relevant to either party's case. It was reasonable that Plaintiffs did not hire an initial expert to opine on spatial disorientation and waited until after RAC disclosed its experts and defense experts were deposed. Additionally, despite RAC's contentions that Smith's report is only "superficially critical" of Madden and Carducci's opinions,[61] and fails to contradict their reports and testimony, the Court finds Smith's testimony *does* contradict defense experts' conclusions regarding Pilot Furnia's potential spatial disorientation and may be used to challenge Defendants' theory.

---

[57] *TCL Comm. Tech. Hold. Ltd.*, SACV 14-00341 JVS (Anx) consolidated with CV 15-02370 JVS, 2016 WL 7042085, at *4.

[58] Dkts. 23 at 25; 28 at ¶¶ 14, 23.

[59] Dkt. 106.

[60] Dkts. 210 at 3–4 (citing Dkt. 210-2 (Furnia Depo.)); 216-1 at 154:4-5, 154:14-15,160:20-162:19 (Furnia Depo.) (Q: "Do you think you lost control of the airplane because of spatial disorientation?"A: "[S]patial disorientation in that terms, no."; "I believe I lost control of the airplane because I got distracted. I got distracted. The distraction caused disorientation. The disorientation caused me to turn off course and lose control of the airplane and wreck. . . . I took off. I got disorientated from the -- the thud[.]").

[61] Dkt. 165-1 at 15.

Smith offers his opinion based on significant scientific analysis[62] to contradict Madden statements, supported by Carducci's deposition that: (1) Pilot Furnia's spatial disorientation began at the point that Pilot Furnia initiated his push for takeoff; "(2) the aircraft was in a state of being out of control from this point until it impacted local terrain; (3) from this point onward the flight was doomed."[63] Smith disputes these statements and contends that based on Pilot Furnia's deposition testimony and the NTSB data corroborating the flight path, Pilot Furnia was able to see visual references on the horizon and did not adjust his flight path or respond in a manner indicating he was suffering from spatial disorientation.[64] Additionally, Smith points to an eye-witness's account of someone who was able to see the aircraft and stated he saw the aircraft hit the water as rebutting Madden's hypothesis that the plane struck a tree and that it was too dark to see.[65] Smith also disagrees with defense experts' conclusions that the inadvertent turn leading to the crash was solely the result of pilot spatial disorientation.[66]

Accordingly, because Plaintiffs' offer Smith's testimony solely to rebut defense experts' contentions regarding spatial disorientation and Smith's rebuttal testimony, if ultimately offered, will not prejudice Defendants, the Court concludes Smith is a proper rebuttal expert and RAC's Motion to exclude his testimony is **DENIED**.

---

[62] *See TCL Comm. Tech. Hold. Ltd.*, SACV 14-00341 JVS (Anx) consolidated with CV 15-02370 JVS, 2016 WL 7042085, at *4 ("[N]othing about Rule 26 or the nature of rebuttal prohibits offering independent opinions or utilizing other methodologies.") (citing *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1220 (S.D. Cal. 2010)).

[63] Dkt. 165-10 at 14–15.

[64] *Id.* at 15–16.

[65] *Id.* at 17–18, 27, 29.

[66] *Id.* at 19–26.

14

For the foregoing reasons, Plaintiffs' Motion to preclude defense experts Robert Carducci, Mark Madden, and Lawrence Timmons from testifying about spatial disorientation and the role it may have played in the plane crash at Docket 185 is **DENIED**, and RAC's Motion to exclude Plaintiffs' rebuttal expert Ronald Smith from testifying at Docket 165 is **DENIED**.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 8th day of December 2020.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE