IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOLYN L. SPECTER, as Personal Representative of the ESTATE OF JAMES E. SPECTER, M.D., and on behalf of herself, and the Surviving Family Members including KEVIN SPECTER, and DAVID W. WOOD, JR. and MARIANNE WOOD, Individually an on behalf of the marital community,<br><br>Plaintiffs,<br><br>v.<br><br>TEXAS TURBINE CONVERSIONS, INC., a Texas Corporation, RECON AIR CORPORATION, a foreign corporation,<br><br>Defendants. | Case No. 3:17-cv-00194-TMB<br><br>ORDER ON PARTIES' MOTION IN LIMINE TO EXCLUDE DR. KAUFMAN'S EXPERT TESTIMONY (DKT. 166) |

## I. INTRODUCTION

The matter comes before the Court on Defendant Recon Air Corporation's ("RAC") Motion in Limine to exclude Plaintiffs' expert Jedidiah Kaufman, M.D., from testifying (the "Motion").[1] The Motion has been fully briefed and is ready for decision.[2] The Parties did not request oral argument, and the Court finds it is not necessary for resolution of the matter. Based on the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Dkts. 166 (RAC Motion in Limine No. 6 re Kaufman); 232 (Texas Turbine Conversions ("TTC") Motion for Joinder). RAC and TCC are the remaining Defendants in this action and will be referred to collectively as "Defendants."

[2] Dkts. 219 (Opposition to RAC's Motion in Limine No. 6); 261 (RAC Reply).

1

## II. BACKGROUND

The background facts of this case are set out in detail in this Court's order at Docket 313. The facts are incorporated by reference and will not be repeated here.[3]

On July 12, 2020, RAC filed the instant Motion in Limine to preclude Plaintiffs' expert Dr. Kaufman from testifying.[4] RAC argues that Dr. Kaufman's "opinions and testimony should be excluded from evidence because they do not meet the standard for admissibility under Federal Rule of Evidence [("FRE")] 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993)."[5] Dr. Kaufman proffers opinions concerning the following topics: (1) James Specter's cause and manner of death; (2) Specter's health at the time of death and potential longevity; (3) David Wood's injuries caused by the crash, including his traumatic brain injury and its long-term impacts; and (4) Wood's emotional state post-crash.[6]

On August 31, 2020, Plaintiffs filed an opposition, arguing that Dr. Kaufman's testimony as to Wood's medical conditions and Specter's medical conditions and cause of death was relevant and reliable under FRE 702 and *Daubert* and should not be excluded.[7]

/ / /

/ / /

---

[3] Dkt. 313 (Order on Parties' Motions in Limine re Certain Expert Testimony).

[4] Dkts. 166; 262.

[5] Dkt. 166-1 at 2.

[6] *Id.*; Dkt 219 at 3–18.

[7] Dkt. 219 at 3–10, 16–18.

### III. LEGAL STANDARD

*A. Motion in Limine and Relevancy*

"'A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area'"[8] and is "a well-recognized judicial practice authorized under case law."[9] A court's power to rule on motions in limine stems from "the court's inherent power to manage the course of trials."[10]

FRE 401 "defines relevant evidence as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"[11] "If evidence is relevant, it is generally admissible under [FRE] 402."[12] "However, relevant evidence must be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."[13]

*B. FRE 702 and Daubert*

FRE 702 controls the admissibility of an expert's opinion. FRE 702, as modified in light of *Daubert*, provides that:

---

[8] *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013) (quoting *United States v. Heller,* 551 F.3d 1108, 1111 (9th Cir. 2009)).

[9] *Smith v. County of Riverside*, No. EDCV 16-00227 JGB (KKx), 2018 WL 7500278, at *2 (C.D. Cal. Nov. 14, 2008) (citing *Ohler v. United States*, 529 U.S. 753, 758 (2000)).

[10] *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

[11] *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 953 (9th Cir. 2011) (quoting *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (en banc)).

[12] *Id.*

[13] *Id.* (emphasis added) (citing Fed. R. Evid. 403).

> A witness who is qualified as an expert . . . may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>>
>> (b) the testimony is based on sufficient facts or data;
>>
>> (c) the testimony is the product of reliable principles and methods; and
>>
>> (d) the expert has reliably applied the principles and methods to the facts of the case.[14]

The principles of *Daubert* apply to both scientific[15] and "technical" or "other specialized" knowledge.[16] When determining the admissibility of such evidence in advance of trial, the court undertakes a "gatekeeping" function to ensure that the jury's consideration of evidence is not contaminated by irrelevant or scientifically unsupported testimony.[17]

The Supreme Court has established a two-part analysis for determining whether expert testimony is admissible: (1) "the trial court must make a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue,'" i.e., whether the proffered

---

[14] Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) (*Daubert I*).

[15] *Daubert I*, 509 U.S. at 595.

[16] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

[17] *See United States v. Alatorre*, 222 F.3d 1098, 1100–03 (9th Cir. 2000); *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010); *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019).

4

testimony is reliable; and (2) the trial court "must ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact."[18]

The reliability inquiry is "a flexible one."[19] Several factors that can be used to determine the reliability of expert testimony are: (1) "whether a theory or technique can be tested"; (2) "whether it has been subjected to peer review and publication"; (3) "the known or potential error rate of the theory or technique"; and (4) "whether the theory or technique enjoys general acceptance within the relevant scientific community."[20]

The relevancy inquiry, requires the court to ensure that the proposed expert testimony is "relevant to the task at hand," i.e., that it "logically advances a material aspect of the proposing party's case."[21] Once an expert "meets the threshold established by FRE 702 as explained in *Daubert,* the expert may testify and the jury decides how much weight to give that testimony."[22]

---

[18] *United States v. Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002) (quoting *Daubert I,* 509 U.S. at 591–93); *Estate of Barabin v. AstenJohnson Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) ("We have interpreted Rule 702 to require that '[e]xpert testimony . . . be both relevant and reliable.'") (quoting *United States v. Vallejo,* 237 F.3d 1008, 1019 (9th Cir. 2001)).

[19] *Kumho Tire*, 526 U.S. at 150.

[20] *United States v. Hankey,* 203 F.3d 1160, 1167 (9th Cir. 2000) (citing *Daubert I*, 509 U.S. at 592–94).

[21] *Daubert v. Merrell Dow Pharm.,* 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*"); *Estate of Barabin*, 740 F.3d at 463; *Primiano*, 598 F.3d at 656 ("'Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.'") (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)).

[22] *Primiano*, 598 F.3d at 565; *see also City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) ("'The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.'") (internal alterations omitted) (quoting *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013)).

"Because medical expert opinion testimony 'is based on specialized as distinguished from scientific knowledge, the *Daubert* factors are not intended to be exhaustive or unduly restrictive.'"[23] "[M]edical knowledge is often uncertain" and a court "should admit medical expert testimony if physicians would accept it as useful and reliable."[24]

## IV. DISCUSSION

### A. *RAC's Motion in Limine to Exclude Plaintiffs' Expert Dr. Kaufman*

After considering Dr. Kaufman's credentials and methodologies and Plaintiffs' claims for damages, the Court **GRANTS IN PART** and **DENIES IN PART** RAC's Motion in Limine to exclude testimony from Plaintiffs' expert Dr. Kaufman.

Plaintiffs' expert Dr. Kaufman is a surgeon with twenty years of experience specializing in general and advanced minimally invasive surgery, bariatric surgery, and upper and lower endoscopies.[25] Dr. Kaufman primarily performs emergency medical care for surgical consults and has worked as a medical school instructor.[26] Plaintiffs seek to introduce Dr. Kaufman's testimony to explain Specter's cause and manner of death and to describe and contextualize Specter's other injuries.[27] Dr. Kaufman would also opine on Specter's life expectancy, had he not perished in the crash.[28] Plaintiffs also seek to introduce Dr. Kaufman's testimony to describe Wood's injuries,

---

[23] *Sandoval-Mendoza*, 472 F.3d at 655 (quoting *Sullivan v. U.S. Dep't of the Navy,* 365 F.3d 827, 834 (9th Cir. 2004)).

[24] *Id.*

[25] Dkts. 166-3 (Kaufman Depo.); 166-9 (Kaufman CV).

[26] Dkts. 166-3 at 3:21–4:16, 5:10-13; 166-9 at 1–2.

[27] *See* Dkts. 219 at 3–12; 166-2 (Kaufman Report).

[28] Dkts. 219 at 11–13; 166-2 at 2.

including eight broken ribs and a broken left fibula, as well as Wood's head injury and its lasting effects.[29]

As to Specter, RAC argues that Dr. Kaufman's opinions should be excluded from evidence at trial because Dr. Kaufman is not qualified to offer opinions about Specter's life expectancy since he is not a cardiologist and lacks the "requisite knowledge regarding Spector's health prior to the accident and the topic is not within [Dr.] Kaufman's area of expertise."[30] Moreover, Dr. Kaufman's opinions failed to consider Specter's medical history, further undermining his credibility.[31] RAC further argues that Dr. Kaufman's opinions regarding Specter's supposed post-impact pain and suffering are based on speculation, rather than admissible evidence.[32] Additionally, RAC argues that Dr. Kaufman's opinions will not assist the trier of fact because they ignore relevant evidence and are unsupported by scientifically accepted analysis, testing, or methodology.[33] Finally, RAC argues that Dr. Kaufman's "mere regurgitation of Specter's autopsy report" would fail to assist the jury and is intended to play to the jury's emotions in a manner that is "both inflammatory and unfairly prejudicial."[34]

As to Wood, RAC argues that Dr. Kaufman's opinions are similarly subject to exclusion because "he is not qualified to render opinions which implicate or are based on neurology."[35]

---

[29] Dkts. 219 at 2–4, 16–18; 166-2 at 5–8.

[30] Dkt. 166-1 at 2, 4, 6–7.

[31] *Id.* at 9–12.

[32] *Id.* at 2, 13–14.

[33] *Id.* at 2.

[34] *Id.* at 2, 11.

[35] *Id.* at 2, 8.

7

Further, RAC argues that Dr. Kaufman's opinions regarding Wood are speculative and would be "unhelpful to a jury because of [Dr.] Kaufman's decision to ignore relevant material facts regarding Wood's medical condition, including but not limited to Wood's own sworn testimony about his condition[.]"[36] Finally, RAC argues that Dr. "Kaufman's opinions regarding Wood's purported traumatic brain injury are not scientifically tested and are not based on objective and verifiable data, reasoning, or accepted methodology; rather, they are based on conjecture and/or unscientific methods and sources."[37]

Plaintiffs counter that Dr. Kaufman has ample experience and qualifications to offer medical opinions regarding Specter and Wood's injuries and Specter's cause of death and life expectancy based on Specter's autopsy and the plaque buildup in Specter's arteries.[38] Further, Plaintiffs argue that Dr. Kaufman's testimony will assist the jury in resolving the damages issues in the case.[39]

The Court agrees that Dr. Kaufman, a surgeon with over twenty years of training and employment in the medical field and experience working with trauma patients, is sufficiently qualified to offer opinions regarding Specter and Wood's injuries at the crash site, including Wood's head or brain injury and Specter's cause and manner of death. Further, it appears that a doctor, especially a surgeon, of ordinary skill and training who examines an autopsy report would know what plaque buildup in a decedent's heart indicates such that Dr. Kaufman may offer

---

[36] *Id.* at 2, 15.

[37] *Id.* at 2.

[38] Dkt. 219 at 3–16.

[39] *Id.* at 8–11.

opinions, based on his report, of Specter's life expectancy.[40] Additionally, insofar as Dr. Kaufman offers testimony about what happened immediately prior to Specter's death, he may discuss such opinions if the foundation is properly laid and his opinions are based on facts in evidence and medical records. If he assumes facts not in evidence or misstates the record, Defendants can object at that time.[41]

RAC's arguments in favor of total preclusion of Dr. Kaufman's testimony go to factual disagreement, bias, and weight, but not Dr. Kaufman's actual qualifications or an absence of the basis for opinions.[42] Defendants are free to cross examine and impugn Dr. Kaufman's conclusions and methodologies, but the Court will not exclude such opinions at this time.

Although Dr. Kaufman, a trauma surgeon with experience diagnosing head injuries and who reviewed Wood's medical records and interviewed Wood and his family, sufficiently establishes his credentials when it comes to the initial diagnoses that Wood suffered a head or brain injury, there appears to be a *Daubert* issue regarding Dr. Kaufman's testimony that Wood has long-term brain damage with possible mental health effects. Given Dr. Kaufman's credentials

---

[40] *Doe v. Cutter Biological, Inc., a Div. of Miles Lab., Inc.*, 971 F.2d 375, 385 (9th Cir. 1992 ("Ordinarily, courts impose no requirement that an expert be a specialist in a given filed, although there may be a requirement that he or she be of a certain profession, such as a doctor.") (citation omitted); *Moreno v. Los Angeles Cty. Sheriff's Dep't*, No. 2:13–cv–07570–CAS(MANx), 2015 WL 4652637, at *12 (C.D. Cal. Aug. 3, 2015) ("'[A] medical doctor's testimony regarding the cause of an injury may be based on experience and review of medical records only.'") (quoting *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1227, n.1 (9th Cir.1998)); *see also Sandoval-Mendoza*, 472 F.3d at 655.

[41] *See Garcia*, No. CV 5:18-00839 SJO (ASx), 2019 WL 4282903, at *13.

[42] *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (*Daubert* does not require a court to admit or to exclude evidence based on its persuasiveness; rather it requires a court to admit or exclude evidence based on its scientific reliability and relevance) (citing *Daubert I*, 509 U.S. at 590).

9

and methodologies used, there is insufficient foundation to support these conclusions. Dr. Kaufman, as a surgeon specializing in minimally invasive and bariatric surgeries, does not have expertise to opine on the long-term effects of brain injuries or on Wood's long-term prognosis, and Dr. Kaufman admits he did not conduct neurological tests or examinations on Wood or review other reports supporting his conclusions.[43] Instead, Dr. Kaufman appears to base his conclusions about the lasting effects of Wood's brain injuries only on anecdotal evidence from interviews with Wood's immediate family,[44] and Plaintiffs appears to concede as much.[45]

Additionally, an expert is generally not permitted to opine or to voice opinions not expressed in the expert's report.[46] In Dr. Kaufman's deposition testimony, he speculates about links between Alzheimer's and traumatic brain injuries and a possible prognosis for Wood, but such opinions are unsupported by his background training or other medical studies and were not included in his report.[47]

Further, expert testimony is not admissible if it is speculative.[48] Dr. Kaufman does not have the requisite experience or training to opine on Wood's mental or emotional state or mental health issues, and Dr. Kaufman's testimony to this effect would be purely speculative and thus unreliable

---

[43] *See* Dkt. 166-7 at 3:7–11.

[44] Dkt. 166-2 at 6 ("[Wood's] wife and children definitely believe his memory changed after the accident with different recall and attention span.").

[45] *See* Dkt. 219 at 16.

[46] *Garcia v. County of Riverside*, No. CV 5:18-00839 SJO (ASx), 2019 WL 4282903, at *16 (C.D. Cal. June 7, 2019).

[47] *See* Dkts. 166-7 at 4:1–24, 5:1–17, 6:2–8; 166-2.

[48] *See Gen. Elec. v. Joiner,* 522 U.S. 136, 146 (1997); *Moreno* No. 2:13–cv–07570–CAS(MANx), 2015 WL 4652637, at *11.

and unhelpful to the jury. Moreover, there is no reason why Wood and other fact witnesses could not provide a reliable first-hand account of Wood's demeanor immediately following the accident and in the months and years following the crash. Thus, despite Dr. Kaufman's testimony regarding the effects of Wood's head injury and emotional state being relevant to Plaintiffs' damages claim, such testimony must be excluded based on its lack of reliability.

With respect to his opinions on the manner and cause of Specter's death, Specter's health at his time of death, the Court finds that Dr. Kaufman is an expert with appropriate experience and credentials, that his medical opinions were based on a review of medical records, and that Dr. Kaufman's opinions are relevant to Plaintiffs' damages claim. Likewise, Dr. Kaufman is qualified to discuss Wood's injuries caused by the crash based on his review of medical records and his own interviews with Wood and Wood's family and such opinions are also relevant to Plaintiffs' damages claim. However, Dr. Kaufman will not be permitted to offer his opinion or testimony on the long-term effects of Wood's head injury and Wood's mental and emotional state following the crash.[49]

Accordingly, for the foregoing reasons, RAC's Motion to exclude Plaintiffs' expert Jedidiah Kaufman, M.D at Docket 166 is **GRANTED IN PART** and **DENIED IN PART**;

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 8th day of December 2020.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[49] *See Garlick v. County of Kern*, No. 1:13-CV-01051-LJO-JLT, 2016 WL 1461841, at *4 (E.D. Cal. Apr. 14, 2016).