IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOLYN L. SPECTER, as Personal Representative of the ESTATE OF JAMES E. SPECTER, M.D., and on behalf of herself, and the Surviving Family Members including KEVIN SPECTER, and DAVID W. WOOD, JR. and MARIANNE WOOD, Individually an on behalf of the marital community,<br><br>Plaintiffs,<br><br>v.<br><br>TEXAS TURBINE CONVERSIONS, INC., a Texas Corporation, RECON AIR CORPORATION, a foreign corporation,<br><br>Defendants. | Case No. 3:17-cv-00194-TMB<br><br>ORDER ON TEXAS TURBINE CONVERSIONS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF OTHER ACCIDENTS (DKT. 187) |

## I. INTRODUCTION

The matter comes before the Court on Texas Turbine Conversions' ("TTC") Motion in Limine (the "Motion"), in which Recon Air Corporation ("RAC") joins, to exclude evidence of other accidents.[1] Plaintiffs oppose the Motion, and the matter is fully briefed by the Parties.[2] The Parties have not requested oral argument, and the Court concludes oral argument is not necessary. For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART without prejudice**.

---

[1] Dkts. 187 (Motion); 249 (RAC Motion for Joinder) ([B]ecause Plaintiffs claim that "'other accidents' put RAC on 'actual notice' of a loss of rudder authority . . . . out of an abundance of caution, RAC joins in [TTC's] motion."). RAC and TCC are the remaining Defendants in this action and will be referred to collectively as "Defendants."

[2] Dkts. 225 (Opposition); 276 (Reply).

1

## II. BACKGROUND

The background facts of this case are set out in detail in this Court's order at Docket 313. The facts are incorporated by reference and will not be repeated here.[3]

Plaintiffs seek to introduce other aircraft accidents as evidence of a design defect, under theories of negligence and strict liability, to show notice and that Defendants breached a duty to warn, and to impeach Defendants and Defendants' expert witnesses.[4]

TTC filed the instant Motion, arguing that Plaintiffs be prohibited from introducing evidence of five other accidents involving the same model aircraft—the DeHavilland DHC-3 "Otter"—with the same modifications.[5] TTC argues the five other accidents involving DHC-3 Otters equipped with a TCC engine conversion are not substantially similar to the present accident and should be excluded under Federal Rule of Evidence 403 because their probative value is substantially outweighed by the danger of unfair prejudice, confusing the issue, misleading the jury, undue delay, wasting time, or presenting cumulative evidence.[6]

On August 21, 2020, Plaintiffs filed an Opposition to TTC's Motion ("Opposition"), arguing that evidence of accidents involving modified Otters is relevant, probative, and should not be excluded.[7] Plaintiffs argue that evidence of the other accidents is relevant to show the existence

---

[3] Dkt. 313 (Order on Parties' Motions in Limine re Certain Expert Testimony).

[4] *See* Dkts. 187 at 3; 225 at 4–10; 1 at ¶¶ 2, 35, 55–68, 72, 82.

[5] Dkt. 187 at 1–4; *see infra* Section IV(B). The modifications on the aircraft at issue include (1) a short takeoff and landing kit in the aircraft "known as Stol Kit STC SA00287NY, a Baron Stol Kit ("STOL Kit") and (2) a turbine engine conversion manufactured by TCC. *Id.* at 4–5; *see also* Dkt. 1 at ¶¶ 3–4, 26 (Complaint); *see also* Dkts. 17 at ¶ 3 (TCC Answer); 25 at ¶ 26 (Rainbow King Lodge Answer); 28 at ¶¶ 3–4 (RAC Answer, Third-Party Claim, and Crossclaim).

[6] Dkt. 187 at 3–4, 12, 33.

[7] Dkt. 225 at 1–2, 6–15.

2

of a defect, which, they say, rebuts Defendants' theory that the crash was the fault of the Pilot, and shows the "magnitude of danger" caused by the right pull and yaw and loss of rudder authority before stall.[8]

TTC filed a Reply, reiterating that Plaintiffs have failed to show the accidents were substantially similar, especially because four out of the five accidents involved landplanes, not floatplanes.[9] TCC argues that substantial similarity requires more than product similarity; Plaintiffs must also show similar circumstances and defect.[10] TCC also argues that Plaintiffs' expert Mark Pottinger lacks specific foundation to testify about other accidents and that his testimony is speculative at best.[11] Finally, TCC argues accidents should not be admitted to impeach witness testimony.[12]

### III. LEGAL STANDARD

"Rule 401 defines relevant evidence as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"[13] "If evidence is relevant, it is generally admissible under Federal Rule of Evidence 402."[14] "However, relevant evidence must be excluded

---

[8] *Id.* at 6, 9–11.

[9] Dkt. 276 at 10–11.

[10] *Id.* at 3–4.

[11] *Id.* at 12–17.

[12] *Id.* at 22.

[13] *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 953 (9th Cir. 2011) (quoting *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007)).

[14] *Id.*

3

[under FRE 403] if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."[15]

### IV. DISCUSSION

*A. Admissibility of Prior Accidents*

Evidence of prior accidents involving a product may be admissible in negligence and strict lability claims to establish actual or constructive knowledge of defectiveness, product defectiveness, or the cause of an accident.[16] The Ninth Circuit has firmly established,[17] and Alaska state law mirrors other jurisdictions in this, that other accidents must be "substantially similar," rather than merely similar, to be admissible.[18] The proponent of the evidence bears the burden of

---

[15] *Id.* (emphasis added); Fed. R. Evid. 403.

[16] *See, e.g.*, *Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991); *Chapman v. Mazda Motor of Am., Inc.*, 7 F. Supp. 2d 1123, 1128 (D. Mont. 1998); *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1268 (7th Cir. 1988) ("Evidence of other accidents in products liability cases is relevant to show notice to the defendant of the danger, to show existence of the danger, and to show the cause of the accident."); *see also* Lee S. Kreindler, et al., *Aviation Accident Law*, Vol. 3, § 504 Strict Lability in Tort (2014).

[17] *Cooper*, 945 F.2d at 1105 ("A showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect.") (citations omitted).

[18] *Bierria v. Dickinson Mfg. Co.*, 36 P.3d 654, 657 n.11 (Alaska 2001); *Walden v. Dep't of Tran.*, 27 P.3d 297, 303 (Alaska 2001) (affirming trial court's decision to exclude evidence of other car accidents that occurred at the same location but not under substantially similar conditions or circumstances); *see also Lakin v. Senco Prods., Inc.*, 925 P.2d 107, 113 (Or. Ct. App. 1996) ("Although evidence of prior similar occurrences is not admissible to prove a specific act of negligence, such evidence is admissible 'to prove the existence of a continuing defect or a continuing course of negligent conduct, and that the condition or course of conduct is in fact dangerous, or that the defendant had notice of its dangerous character. The admissibility of such evidence for these purposes is, however, subject to the requirement that the prior accidents must have occurred under similar conditions and circumstances. . . . Only substantial similarity, not complete identity of circumstances, is required. What elements must be similar will depend, of course, on the nature of the allegedly dangerous condition in each case.'") (quoting *Rader v. Gibbons & Reed Co*., 494 P.2d 412, 414–15 (Or. 1972)).

demonstrating substantial similarity.[19] "The rule rests on the concern that evidence of dissimilar accidents lacks the relevance required for admissibility under [FRE] 401 and 402."[20] "Substantial similarity depends upon the underlying theory of the case. Evidence proffered to illustrate the existence of a dangerous condition necessitates a high degree of similarity because it weighs directly on the ultimate issue to be decided by the jury."[21] However, "[m]inor or immaterial dissimilarity does not prevent admissibility."[22]

Even if the proponent establishes substantial similarity of circumstances, the trial court has discretion to determine admissibility of such evidence and "must weigh the dangers of unfairness, confusion, and undue expenditure of time in the trial of collateral issues against the

---

[19] *Smith v. Beech Aircraft Corp.*, No. CV-93-00160-RMB, 178 F.3d 1300, 1999 WL 274515, at *1 (9th Cir. Apr. 29, 1999) (unpublished opinion) (following an evidentiary hearing, the trial court concluded that it could not determine the precise nature of the accident at issue in the case and, with a limiting instruction, permitted the jury to decide whether the accident occurred in the same manner as the other accidents) (citation omitted); *see also In re Air Crash Disaster at Sioux City, Iowa, on July 19, 1989*, Nos. MDL-817, 89 C 8082, 1991 WL 279005, at *2 (N.D. Ill. Dec. 26, 1991) ("The focus of an inquiry into the substantial similarity of a prior accident to the accident at issue is a function of the theory of the case advanced by the proponent of the prior accident evidence.").

[20] *Cooper*, 945 F.2d at 1105 (citing *Pettyjohn v. Kalamazoo Center Corp.*, 868 F.2d 879, 881 (6th Cir. 1989)); *McGonigal v. Gearhart Indus., Inc.*, 851 F.2d 774, 778 (5th Cir. 1988)).

[21] *Younan v. Rolls-Royce Corp*, No. 09cv2136–WQH–BGS, 2013 WL 1899919, at *9 (S.D. Cal. May 7. 2013) (quoting *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434, 1440 (10th Cir. 1992)).

[22] *White v. Ford Motor Co.*, 312 F.3d 998, 1009 (9th Cir. 2002) (citation omitted), *opinion amend. on denial of reh'g*, 335 F.3d 833 (9th Cir. 2003).

factors favoring admissibility."[23] Finally, "evidence of dissimilar accidents may be admitted when relevant to the witness's credibility."[24]

In a somewhat-recent district court case in the Ninth Circuit, a defendant argued that evidence of seven other same-model helicopter accidents should be excluded.[25] Defendant argued evidence of the other accidents was irrelevant, more prejudicial than probative, confusing to the jury, a waste of time, and should further be excluded because plaintiffs failed to demonstrate a specific defect common to the accident helicopter and the same models involved in other accidents and that the accidents occurred under substantially similar circumstances to those in the present case.[26] The court disagreed, concluding the accidents were admissible for showing knowledge of autorotation accidents at high gross rates known or imputed to the defendant.[27] The Court concluded that the plaintiffs "presented sufficient evidence of substantial similarity to warrant admission of evidence of the first six [o]ther [a]ccidents for purposes of showing notice of a potential defect" and that evidence of the other accidents "is potentially admissible for the purpose of refuting [defendant's] contention that the accident at issue was at least in part caused by the negligence" of one of the plaintiffs.[28]

---

[23] *Escobar v. Airbus Helicopter SAS*, No. 13-00598 HG-RLP, 2016 WL 5897554, at *5 (D. Haw. Oct. 7, 2016) (citing *Nachtsheim*, 847 F.2d at 1269).

[24] *Copper*, 945 F.2d at 1105.

[25] *Younan v. Rolls-Royce Corp*, No. 09cv2136–WQH–BGS, 2013 WL 1899919, at *8.

[26]*Id.*

[27] *Id.* at *8–10 (denying Motion in Limine to Exclude Evidence of or Reference to Other Accidents without prejudice to allow for objections to specific evidence at trial).

[28] *Id.*

6

## B. Parties' Arguments

Here, TTC argues that evidence of other accidents fails the FRE 403 balancing test because any probative value provided by evidence of other accidents is substantially outweighed by the danger of prejudice, wasting time, confusing the issues, or misleading the jury.[29] TTC argues that Plaintiffs fail to demonstrate "substantial similarity" between the other crashes and the present accident.[30] TCC opposes Plaintiffs' theory that the aircraft crashed because of a design defect in the aircraft modifications. Instead, TCC argues that the crash in this case was the result of the misloading and overloading of the aircraft by Rainbow King employees, coupled with dark, night-time conditions, Pilot Furnia's medical condition that likely impacted his vision, and Pilot Furnia's failure to utilize his flying instruments.[31]

TCC points out that of the five other crashes involving DHC-3 Otters equipped with the TTC engine conversion, four were landplanes, not floatplanes like the aircraft at issue; floatplanes and landplanes have different properties including differing performance characteristics, and are subject to different flight testing and conflating the two types of planes is inappropriate.[32] TTC discusses the details of the five crashes based on National Transportation Safety Board ("NTSB") factual reports[33] written by NTSB investigators or their Canadian counterparts, and distinguishes the other accidents as follows:

---

[29] Dkt. 187 at 1, 33.

[30] *See id.* at 12–33.

[31] *Id.* at 8–11, 16–33.

[32] *Id.* at 13–15.

[33] The Court will address the admissibility of facts and conclusions from NTSB reports in a separate order.

7

First, TCC distinguishes the *N455A Aleknagik* accident, a 2010 floatplane crash that took place in Aleknagik, Alaska.[34] TCC argues that the Aleknagik crash is distinct from the one at issue in that it occurred during daylight hours, rather than in dark, nighttime conditions; the weather conditions were poor, unlike the present accident; the crash occurred during the cruise phase of the flight, without "indications of trouble before crash," rather than during the takeoff phase; and with a pilot who previously had a stroke and may have suffered a partial seizure the day of the accident, unlike Pilot Furnia, who appeared to be healthy other than deep vein thrombosis, which TCC argues may have impacted his vision.[35] The NTSB attributed the *Aleknagik* crash "to the pilot's failure to avoid rising terrain."[36]

Second, TCC distinguishes the *C-GMCW Blacksheep I* accident, a 2011 landplane crash that took place in Mayo, Yukon.[37] TCC argues that the *Blacksheep I* crash is distinct from the present crash in that it occurred during daylight hours; during the cruise phase of the flight; weight and center of gravity do not appear to be a factor in the crash; the pilot had been diagnosed with a heart murmur and worked long days in advance of the accident; and the aircraft was a landplane equipped with a wheel-ski landing system.[38] TCC states, "[i]t appears *Blacksheep I* entered an inverted dive during a long left turn from which the pilot was unable to recover."[39]

---

[34] Dkt. 187 at 16–20.

[35] *Id.* (citing Dkts. 187-16 (NTSB Operations Group Factual Report); Ex. Q, NTSB Final Report ANC10MA068; 187-18 (NTSB Aleknagik Accident Report); 187-10 (NTSB Final Report ANC15FA071)).

[36] *Id.* at 20.

[37] *Id.* at 20–23.

[38] *Id.* (citing Dkt. 187-19 (Aviation Investigation Report AIIW0048)).

[39] *Id.* at 22.

Third, TCC distinguishes the *C-GZCW Blacksheep II* accident, a 2007 landplane crash that took place in Mayo, Yukon.[40] TCC argues that the *Blacksheep II* crash is distinct from the present crash in that it occurred during daylight hours in good weather; immediately after takeoff; and the aircraft was hauling rough timber secured only by a "'single one-inch cargo strap.'"[41] After liftoff, the timber—loaded in a manner that resulted in the center of gravity being aft of the rearward limit and not properly secured—slid backwards causing the plane to pitch into an aerodynamic stall, spin, and crash to the ground.[42]

Fourth, TCC distinguishes the *N120BA Texas Skydiving* accident, a 2001 landplane crash that took place in Decatur, Texas.[43] TCC argues that the *Texas Skydiving* crash is distinct from the present crash in that it occurred in daylight; immediately after takeoff; in weather conditions of "'extreme turbulence'"; the pilot reported encountering a dust devil, which caused the airplane to roll ninety degrees; and the aircraft was a landplane.[44] TCC also points out the aircraft was not modified with a STOL kit.[45] The NTSB report concluding the plane was overloaded with a center of gravity outside of the permitted range was "vehemently" disputed by the pilot and owner.[46] The NTSB found probable causes of the crash to be failure of the pilot to maintain aircraft control,

---

[40] *Id.* at 23–26.

[41] *Id.*

[42] *Id.* at 25–26.

[43] *Id.* at 26–28.

[44] *Id.* (citing Dkt. 187-21 (NTSB Accident Final Report FTW01LA91)).

[45] Dkt. 276 at 7.

[46] Dkt. 187 at 29.

9

aircraft weight and balance were limits were exceeded, and weather in the form of whirlwind or dust devil.[47]

Fifth, TCC distinguishes the *N93PC Soldotna* accident, a 2013 landplane crash that took place in Soldotna, Alaska.[48] TCC argues that the *Soldotna* crash is distinct from the present crash in that it occurred in daylight conditions, immediately after takeoff, and the aircraft was a landplane that pitched up and entered an unrecoverable stall.[49] The airplane was slightly overweight but its center of gravity was "at least 5.5 inches beyond the established aft limit of 152.2 inches"—a full inch further aft than the present plane.[50] NTSB accident investigators determined that the airplane takeoff flaps were set to the landing position, creating substantial drag and slowing the takeoff speed and that this, in combination with the severely aft center of gravity, caused the crash.[51]

Plaintiffs argue that the evidence is admissible as notice of a defect and the evidence speaks to issues with the modified plane.[52] Plaintiffs further argue that the requirement of substantial similarity is relaxed when the evidence of other incidents is used to demonstrate notice or awareness of a potential defect.[53] Nevertheless, Plaintiffs contend that three accidents are substantially similar: *Aleknagik*, *Soldotna*, and *Texas Skydiving*, and that all occurred as a result of same defect:

---

[47] *Id.* at 30.

[48] *Id.* at 31–32.

[49] *Id.* (citing Dkt. 187-23 (NTSB Aviation Accident Final Report DCA13MA121)).

[50] *Id.* at 32.

[51] *Id.* at 32–33.

[52] Dkt. 225 at 2, 9–10.

[53] *Id.* at 9 (citing *Four Corners Helicopters*, 979 F.2d at 1440).

10

the design of the aircraft modification resulting in a loss of rudder authority in high angle of attack situations making it difficult for the pilot to recover from the tendency of the aircraft to roll and yaw right. In each of those incidents, the evidence from ground witnesses and otherwise shows that the aircraft suffered the same fate as the flight here.[54]

And, Plaintiffs argue, the evidence may be admitted to demonstrate existence of said defect.[55] Additionally, Plaintiffs argue that evidence of the other accidents is relevant to demonstrate "the magnitude of danger" posed by the defect, namely death or serious injuries, and that Defendants were on notice of the defect.[56] Finally, Plaintiffs argue that, at a minimum, the accidents are admissible to impeach Defendants and their expert witnesses because other incidents need not be substantially similar to be admitted for such a purpose.[57]

C. *Analysis*

The Court concludes that a categorical exclusion of all other accidents does not meet the standard for exclusion under FRE 403. However, the Court will exclude evidence from the *N120BA Texas Skydiving* accident and will limit the admissibility of the other accidents to showing Defendants' notice of the alleged defect and as rebuttal evidence, and will allow Defendants to renew their objections regarding the other accidents at trial.

First, the Court finds that evidence of the other accidents is relevant to Plaintiffs' case because it tends to show the existence of a product defect and that Defendants were on notice of

---

[54] *Id.* at 3, 12; Dkt. 225-2 (Excerpt of Plaintiffs' Expert Mark Pottinger' Report) (Pottinger claims in his report that three accidents—the *Aleknagik*, *Soldotna* and *Texas Skydiving* crashes—"demonstrated a distinct right yaw and roll in high angle of attack flight conditions[.]").

[55] Dkt. 225 at 11–12.

[56] *Id.* at 9 –11, 14.

[57] *Id.* at 6–7.

11

the defect. Other accidents involving the DHC-3 Otter with the same STOL kit and turbine modifications are sufficiently similar to shed light on what happened in this case.

Second, Plaintiffs have shown the probative value of the other accidents is high given their allegations that a design defect existed and that Defendants were on notice of the defect.[58] Although TTC does a rigorous job differentiating the five crashes and notes that no evidence of a defect is included in the investigation reports, the accidents involve the same model aircraft, the same modifications, and similar issues of overloading or misloading, which make them substantially similar to this case and probative.[59] Additionally, the difference between floatplanes and landplanes do not necessarily negate the possibility of a defect in the engine conversion and its subsequent performance on the aircraft in this case.[60]

However, the Court agrees with TTC that Plaintiffs should not be permitted to introduce evidence of the *N120BA Texas Skydiving* accident involving an aircraft lacking the STOL kit modification given Plaintiffs' claim that the combination of STOL and the turbine engine was unsafe, and Plaintiffs' expert's testimony that the STOL kit "affects [an aircraft's] performance significantly[.]"[61] The STOL kit modification and its interplay with the turbine engine are at the

---

[58] *See* David P. Leonard, et al., *New Wigmore: A Treatise on Evidence*, The Relevance of Similar Occurrences Evidence § 14.2 (Rev. ed. 2020) ("[T]he *probative value* of the evidence will vary depending on a number of circumstances, especially the similarity between the conditions in existence at the time of Plaintiff's accident and those that were in place at the times of the prior accidents. This includes both the physical condition of the mechanism or other injury-causing instrumentality and the way in which the accidents occurred." The more similar these factors, the greater the probative value of the evidence on both defect and notice[.]") (emphasis in original); *see also Britton v. Dallas Airmotive, Inc.*, No. 1:07–cv–00547–EJL, 2011 WL 13196592, at *4 (D. Idaho. May 3, 2011) (citing *Cooper*, 945 F.2d at 1105).

[59] *See Younan*, No. 09cv2136–WQH–BGS, 2013 WL 1899919, at *8–9.

[60] *See* Dkt. 314 (Order on Motion in Limine to Limit Introduction of Flight Test Data (Dkt. 176)).

[61] *See* Dkts. 276 at 7 (citations and internal quotation marks omitted); 187-21.

12

heart of Plaintiffs' case and allowing evidence about an aircraft accident that did not involve both of these modification is neither relevant nor probative. Accordingly, TTCs Motion is **GRANTED IN PART** and evidence of the *N120BA Texas Skydiving* crash is excluded.

Despite the Court's conclusion that Plaintiffs have demonstrated substantial similarity between the crash in the present case and the four other accidents, the Court must still weigh whether the probative value is substantially outweighed by the risk of prejudice. The Court finds that the danger of unfair prejudice does not substantially outweigh the probative value of the evidence of the four other accidents when offered to show notice—namely that other crashes involving the same modifications may have put Defendants on notice of a problem.[62] Moreover, the law is clear that evidence of *dissimilar* accidents is admissible to impeach a witness,[63] and Plaintiffs should be permitted to rebut Defendants' theory of pilot negligence.

TCC's Motion is, therefore, **DENIED IN PART, without prejudice**. TCC may raise objections to the introduction of other accidents at trial, and the Court may make an evaluation at

---

[62] *See Younan*, No. 09cv2136–WQH–BGS, 2013 WL 1899919, at *9–10 (noting the requirement of substantial similarity is relaxed when the evidence of other incidents is used to demonstrate notice or awareness of a potential defect and noting that "[a]ny differences in the accidents not affecting a finding of substantial similarity go to the weight of the evidence.") (internal quotation marks omitted) (citing *Four Corners Helicopters*, 979 F.2d at 1440); *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1083 (5th Cir. 1986) ("For purposes of proving other accidents in order to show defendants' awareness of a dangerous condition, the rule requiring substantial similarity of those accidents to the accident at issue should be relaxed.") (citing *McCormick on Evidence,* § 200 (E. Clearly 2d ed.1972) (other accidents and injuries in negligence and products liability cases); 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 401[10] (1982) (similar incidents or accidents)).

[63] *Cooper*, 945 F.2d at 1105; *see also Akkerman v. Mecta Corp.*, 247 F. App'x 895, 897 (9th Cir. Aug. 23, 2007) (unpublished opinion).

that time whether the facts of the other accidents would involve their own mini-trials, wasting time and warranting exclusion.[64]

Separately, the Court ruled on the admissibility of and limitations on Plaintiffs' experts' testimony, several of whom address the similar accidents in their reports,[65] and the Court will be addressing limitations on Parties' admission or reference to NTSB reports.[66] With these limitations in mind, the Court will not categorically bar admission or testimony regarding these four other accidents at this juncture. Instead, the Court will reserve ruling on the admissibility of these other accidents in Plaintiffs' case-in-chief for the purpose of showing notice, and permit Defendants to raise objections at trial as they arise.

Accordingly, for the foregoing reasons, TTC's Motion at Docket 187 is **GRANTED IN PART** and **DENIED IN PART without prejudice**.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 14th day of December 2020.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[64] *See Nachtsheim*, 847 F.2d at 1269.

[65] *See* Dkt. 313; *see also* Dkt. 225 at 2–3. The Court concluded that Plaintiffs' expert Mark Pottinger's testimony should be limited to offering conclusions on specific topics. *See* Dkt. 313 at 15–21.

[66] *See* Dkts. 186 (Plaintiffs' Motion in Limine to Exclude NTSB Reports); 215 (TCC's Opposition to Motion in Limine); *see also* Dkt. 312 (Order re Supplemental Briefing).