IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOLYN L. SPECTER, as Personal Representative of the ESTATE OF JAMES E. SPECTER, M.D., and on behalf of herself, and the Surviving Family Members including KEVIN SPECTER, and DAVID W. WOOD, JR. and MARIANNE WOOD, Individually an on behalf of the marital community,<br><br>Plaintiffs,<br><br>v.<br><br>TEXAS TURBINE CONVERSIONS, INC., a Texas Corporation, RECON AIR CORPORATION, a foreign corporation,<br><br>Defendants. | Case No. 3:17-cv-00194-TMB<br><br>ORDER ON DEFENDANT TEXAS TURBINE CONVERSIONS, INC.'S MOTION FOR SUMMARY JUDGMENT FOR "SUBSTANTIAL ALTERATION" (DKT. 170) |

## I. INTRODUCTION

This matter comes before the Court on Texas Turbine Conversions, Inc.'s ("TTC") Motion for Summary Judgment for "Substantial Alteration" (the "Motion").[1] Defendant Recon Air Corporation ("RAC," and together with TTC, "Defendants") joins the Motion.[2] Plaintiffs oppose the Motion.[3] The matter is fully briefed and ready for consideration by the Court.[4] Oral argument

---

[1] Dkt. 170 (Motion).

[2] Dkt. 179 (RAC Joinder to Dkt. 170).

[3] Dkt. 214 (Plaintiffs' Opposition).

[4] Dkts. 170; 179; 214; 283 (TTC Reply).

1

was requested on the Motion, however, the Court finds the matter suitable for disposition without oral argument.[5] For the following reasons, the Motion at Docket 170 is **DENIED**.

## II. BACKGROUND

The background facts of this case are set out in detail in this Court's order at Docket 313. The facts are incorporated by reference and will not be repeated here.[6]

Due to a lengthy discovery process and by agreement of the parties, TTC filed its Motion on July 14, 2020.[7] Plaintiffs timely filed their Opposition to the Motion on August 31, 2020.[8] TTC filed a Reply on September 22, 2020.[9] The instant Motion addresses Plaintiffs' strict liability and negligence claims by arguing that Rainbow King Lodge ("Rainbow King") and Pilot John Furnia ("Pilot Furnia") "substantially altered" the DeHavilland DHC-3 "Otter" No. N928RK (the "plane" or "aircraft") by overloading it by 508 pounds and making the plane 4.08 inches aft of the center of gravity limit.[10] Defendants argue that these "alterations" disabled a "key safety feature," namely, the plane's weight and center of gravity limits.[11] Additionally, Defendants argue that

---

[5] Dkt. 288 (TTC Motion for Hearing). The motion at Docket 288 will be addressed by separate order of the Court.

[6] Dkt. 313 (Order on Parties' Motions in Limine re: Certain Expert Testimony).

[7] Dkt. 170.

[8] Dkt. 214.

[9] Dkt. 283.

[10] Dkt. 170 at 3, 22–24.

[11] *Id.*

2

damage to the plane's floats also "caused a material change to the aircraft."[12] Defendants contend that these "substantial alterations" caused the subject accident.[13]

In opposition, Plaintiffs argue that the weight and balance of the plane "did not play a role in the crash."[14] They argue that, more fundamentally, overloading a plane is not a "substantial alteration" and is a misreading of the law.[15] They analogize misloading the plane to driving a car over the speed limit.[16] Plaintiffs state that Defendants should bring arguments about overloading as negligence arguments against Rainbow King or Pilot Furnia—not here.[17]

In their Reply, Defendants argue that Plaintiffs ignore controlling and persuasive authority regarding substantial alteration and disagree with Plaintiffs' analogy to speeding, arguing that speeding in a car is operational—rather than aerodynamic—in nature.[18]

### III. LEGAL STANDARD

*A. Summary Judgment*

Summary judgment is appropriate where, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party,[19] "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[12] *Id.* at 25.

[13] *Id.* at 2.

[14] Dkt. 214 at 6.

[15] *Id.* at 10.

[16] *Id.*

[17] *Id.* at 11.

[18] Dkt. 283 at 16–19.

[19] *Scott v. Harris*, 550 U.S. 372, 378 (2007).

3

law."[20] Material facts are those which might affect the outcome of the case.[21] A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[22] "There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion."[23] A movant's burden may be met by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."[24] Thus, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[25]

Once a movant has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify facts which show a genuine issue for trial.[26] Evidence introduced in opposition to a summary judgment motion does not have to be the kind that would be admissible at trial, but may be any type of evidence identified in Fed. R. Civ. P. 56(c).[27]

---

[20] Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Jensinger v. Nev. F. Credit Union*, 24 F.3d 1127, 1130-31 (9th Cir. 1994).

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

[22] *Id.* at 248.

[23] *Mills v. Wood*, No. 4:10-CV-00033-RRB, 2015 WL 2100849, at *1 (D. Alaska May 6, 2015), *aff'd in part*, 726 Fed. App'x 631 (9th Cir. 2018) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).

[24] *Celotex Corp.*, 477 U.S. at 325.

[25] *Anderson*, 477 U.S. at 249.

[26] *Id.* at 323–24.

[27] *See, e.g.*, *Celotex*, 477 U.S. at 323–24; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

4

However, "conclusory assertions are wholly insufficient to sustain either the defendants' burden or the district court's grant of summary judgment."[28] "A party opposing a summary judgment motion must produce '*specific* facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative as to any [material] fact claimed to be disputed.'" [29]

### B. Negligence Claims

Under Alaska law, in order to establish a prima facie case of ordinary negligence, Plaintiffs must present evidence to satisfy the following elements: (1) duty; (2) breach of duty; (3) causation; and (4) harm.[30] Each are "separate and distinct elements of a negligence claim, all of which must be proven before a defendant can be held liable for the plaintiff's injuries."[31]

### C. Strict Liability Claims

Under Alaska law, "[a] product may be defective because of a manufacturing defect, a defective design, or a failure to contain adequate warnings."[32] A product is defectively designed if:

> (1) the plaintiff proves that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or (2) the plaintiff proves that the product's design proximately caused

---

[28] *Walker v. Sumner*, 917 F.2d 382, 387 (9th Cir. 1990); *see also Hilsinger v. Enerco Group, Inc.*, No. 3:13-cv-00003-TMB, 2014 WL 12569381 (D. Alaska Sept. 3, 2014); *Mills v. Wood*, 2015 WL 2100849, at *1 (citing *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005) and *Walker*, 917 F.2d at 387 ("In general, in ruling on a motion for summary judgment, a court may not weigh the evidence or judge the credibility of witnesses . . . . However, this rule does not apply to conclusory statements unsupported by underlying facts.")).

[29] *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (quoting *Ruffin v. County of Los Angeles,* 607 F.2d 1276, 1280 (9th Cir. 1979)).

[30] *Lyons v. Midnight Sun Transp. Servs., Inc.*, 928 P.2d 1202, 1204 (Alaska 1996).

[31] *Id.*

[32] *Shanks v. Upjohn Co.*, 835 P.2d 1189, 1194 (Alaska 1992) (citing *Caterpillar Tractor Co. v. Beck*, 593 P.2d 871, 878 n.15 (Alaska 1979)).

> injury and the defendant fails to prove, in light of the relevant factors, that on balance the benefits of the challenged design outweigh the risk of danger inherent in such design.[33]

In addition, "the plaintiff in a strict products liability suit must establish as part of his cause of action that the product was defective at the time it left the possession of the manufacturer."[34] A manufacturer "may introduce evidence that its product was substantially altered after leaving its possession, which evidence may rebut or overcome the plaintiff's showing that his injuries were a result of the product's defect."[35] Defendants are not required to establish that the product was altered until Plaintiffs prove that the product was defective when leaving the manufacturer's possession.[36]

## IV. ANALYSIS

The question before the Court is whether Rainbow King or Pilot Furnia, by overloading the plane and changing its center of gravity beyond recommended limits, substantially altered the plane? A second question is whether alleged damage to the floats during flight substantially altered the plane? The Court finds that, as a matter of law, the "substantial alteration" defense does not extend to overloading the plane and changing the center of gravity as a result, and, even if it did, there would be a genuine dispute of material fact as to whether the additional weight and changed center of gravity was substantial. For similar reasons, the Court further finds that alleged damage to the plane's floats during flight, but before impact, is not a "substantial alteration." Accordingly, summary judgment as to the substantial alteration defense is **DENIED**.

---

[33] *Beck*, 593 P.2d at 886.

[34] *Hiller v. Kawasaki Motors Corp., U.S.A.*, 671 P.2d 369, 372 (Alaska 1983).

[35] *Id.*

[36] *Id.*

6

### A. Scope of the "Substantial Alteration" Defense

Under Alaska law, a manufacturer can inoculate itself against strict liability claims if it can demonstrate that its product was "substantially altered" after leaving its possession.[37] Alaska law, however, does not elaborate on the contours of this defense, and the parties have cited no binding authority that governs the disposition of this Motion. Furthermore, the substantial alteration defense has not been applied in Alaska to defend against ordinary negligence claims.[38]

Defendants would have the Court apply a broad interpretation of the substantial alteration defense, to cover any substantial change to a "key safety feature," which in this case was the gross weight and center of gravity limitations.[39] Presumably many (if not all) of the instructions for safe operation of the plane, as listed in the Aircraft Flight Manual, could qualify as safety features. And a subset of those features could arguably be "key" features that, if "disabled," would render the plane substantially altered because, as Defendants argue, they affect the "aerodynamic characteristics" of the plane.[40] Plaintiffs, on the other hand, argue that this is a "misperception" of the rule.[41]

The parties do not cite, and the Court has not discovered, any court that has applied the substantial alteration rule in the way Defendants ask the Court to apply it in this case. Defendants cite *Hiller*, an Alaska case, and three out-of-district cases to describe the substantial alteration

---

[37] *Id.*

[38] Indeed, Defendants only discuss the defense in the context of strict liability claims. *See* Dkt. 170 at 19–20.

[39] *Id.* at 22.

[40] *See* Dkt. 283 at 19 ("TTC's argument has to do with the change to N928RK's fundamental aerodynamic characteristics, directly caused by a physical alteration to the airplane . . .").

[41] Dkt. 214 at 10.

7

defense.[42] All four cases pertain to defects or changes to the physical characteristics of a product, not a third party's disregard of the product's safety instructions. *Hiller* involved an alleged defect to a snow machine whereby the seat of the snow machine broke away from the chassis during normal use.[43] The other cases involve (1) a die-casting machine where a trip wire was added to make the machine automatic instead of manual[44]; (2) the addition of a "skimmer hole" to a pool[45]; and (3) the removal of "hand wheels and quarter-turn lock down levers" from a wood moulding[46] machine by a third party.[47] These cases are consistent with cases in other jurisdictions which discuss the substantial alteration defense in the context of changes to the physical makeup of the product.[48] Furthermore, the safety instruction at issue was not actually *altered*, but disregarded. Defendants do not allege that third parties changed the weight or center of gravity limits in the

---

[42] *See Hiller,* 671 P.2d at 370; *Soler v. Castmaster, Div. of H.P.M. Corp.*, 98 N.J. 137, 148, 484 A.2d 1225, 1230 (1984); *Shepherd v. Ohio Dep't of Youth Servs.*, No. 88AP-781, 1989 WL 83575, at *1 (Ct. App. July 27, 1989); *Wick v. Wabash Holding Corp.*, 801 F. Supp. 2d 93, 97 (W.D.N.Y. 2010).

[43] *Hiller*, 671 P.2d at 371.

[44] *Soler*, 98 N.J. at 143, 228 A.2d at 1228.

[45] *Shepherd*, No. 88AP-781, 1989 WL 83575, at *4.

[46] "[A] moulder is a continuous process machine utilizing seven profiled cutting blades to shape lengths of wood." *Wick*, 801 F. Supp. 2d at 98.

[47] *Id.* at 102–04.

[48] *See, e.g.*, *Hernandez v. Biro Mfg. Co.*, 674 N.Y.S.2d 72, 74 (N.Y. App. Div. 1998) (meat grinder was substantially altered when safety features were removed from the grinder); *Moreno v. USG Corp.*, No. 06-cv-2196 DMS (PCL), 2008 WL 11336720, at *3 (S.D. Cal. July 22, 2008) (removal of a guard on a drywall manufacturing machine was a substantial alteration); *McLean v. Badger Equipment Co.*, 868 F. Supp. 258, 262 (E.D. Wis. 1994) (change from a machine screw to a set screw was a substantial change).

8

plane's operating materials, for example, only that the owner and operator of the plane ignored them.

Alaska does not have statutory authority on point. However, the Model Uniform Product Liability Act, and jurisdictions that have adopted it, states that an "alteration" occurs when a third party "changes the design, construction, or formula of a product or changes or removes warnings or instructions that accompanied or were displayed on the product."[49] Even courts interpreting the Restatement (Second) of Torts § 402A, which Plaintiffs cite but Defendants correctly assert is not the law in Alaska, have not applied the substantial alteration defense in the manner suggested by Defendants.[50] In effect, no court or legislature has endorsed Defendants' view of the doctrine.

After surveying the state of the law in Alaska and other jurisdictions, the Court finds, as a matter of law, that the substantial alteration defense is not appropriate here. Defendants have not shown that Rainbow King, Pilot Furnia, or any other third party, altered the plane in a manner that would allow the substantial alteration defense to apply.[51] While overloading the plane, or intervening damage to the plane's floats, is certainly relevant to other claims and possible defenses in this case, Defendants' attempt to use the substantial alteration doctrine falls short.[52] Defendants

---

[49] 6 American Law of Torts § 18:162 (citing Model Uniform Product Liability Act § 112[D][1]); *see also* Idaho Code Ann. § 6-1405(4)(a) (2020) ("'Alteration or modification' occurs when a person or entity other than the product seller changes the design, construction, or formula of the product, or changes or removes warnings or instructions that accompanied or were displayed on the product[.]").

[50] *See, e.g.*, *Whitehead v. St. Joe Lead Co., Inc.*, 729 F.2d 238, 249–50 (3d Cir. 1984) (discussing the Restatement).

[51] The Court rejects Defendants' assertion, to the extent argued, that damage to the plane's floats was a substantial alteration within the scope of the strict liability defense. *See* Dkt. 170 at 25–27.

[52] Many of the arguments made by Defendants go to Plaintiffs' negligence claims, i.e. whether overloading the plane was a substantial factor in causing the accident.

ask for a novel application of the substantial alteration defense, one that would expand the scope of the doctrine in Alaska to cover any "key safety feature" that affects the "aerodynamic characteristics" of a plane, and the Court declines the invitation to do so.

### B. Whether the "Alterations" Were "Substantial" Is a Jury Question

Even if the Court were to find that the substantial alteration defense is applicable here, the Court finds that summary judgment would still be improper. Drawing all reasonable inferences in the light most favorable to the Plaintiffs, there would be a dispute of material fact over whether the "alterations" asserted by Defendants were substantial. While Defendants have presented evidence and expert testimony that the changes to the plane's weight and center of gravity affected its aerodynamic qualities, a reasonable jury could conclude that the alterations were not substantial.[53]

Additionally, some courts consider the foreseeability of the alteration and find that a Defendant can only be absolved of liability if the alteration was not foreseeable.[54] Defendants cite the New Jersey Supreme Court case, *Soler*, which states: "Foreseeable misuse or abnormal use can be extended by analogy to foreseeable substantial change of the product from its original design."[55]

---

[53] *See, e.g.*, Dkts. 193 at ¶¶ 7–17 (Carducci Aff.); 214-3 at 3–4 (Excerpt of Cochran Expert Report).

[54] *See Whitehead*, 729 F.2d at 250 (the "general rule is limited to changes for which it is not foreseeable that the alteration will cause injury"); *Moreno*, No. 06-cv-2196 DMS (PCL), 2008 WL 11336720, at *3 (no evidence that Defendant should have anticipated the substantial change); *Torres v. Xomox Corp.*, 56 Cal. Rptr. 2d 455, 465, 49 Cal.App.4th 1, 15–17 (Cal. Ct. App. 1996) (discussing the role of foreseeability in a manufacturer's ability to avoid liability). There is some indication that Alaska courts would evaluate the foreseeability of the substantial alteration when considering the defense. *See Hiller*, 671 P.2d at 373 n.2 (discussing foreseeable use in products liability cases).

[55] *Soler*, 98 N.J. at 151, 228 A.2d at 1232.

This principle, if applied here, would raise a jury question as to whether the alterations alleged by Defendants were foreseeable.

In sum, the Court finds that the substantial alteration doctrine is inapplicable to the "alterations" alleged by Defendants, and even if appliable, improper for disposition on summary judgment. This Order does not preclude Defendants from raising the defense on other grounds at trial. Accordingly, summary judgment for Defendants is inappropriate, and the Motion at Docket 170 is **DENIED**.

## V. CONCLUSION

For the above reasons, TTC's Motion for Summary Judgment at Docket 170 is **DENIED**.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 14th day of December, 2020.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE