IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOLYN L. SPECTER, as Personal Representative of the ESTATE OF JAMES E. SPECTER, M.D., and on behalf of herself, and the Surviving Family Members including KEVIN SPECTER, and DAVID W. WOOD, JR. and MARIANNE WOOD, Individually an on behalf of the marital community,<br><br>Plaintiffs,<br>v.<br><br>TEXAS TURBINE CONVERSIONS, INC., a Texas Corporation, RECON AIR CORPORATION, a foreign corporation,<br><br>Defendants. | Case No. 3:17-cv-00194-TMB<br><br>ORDER ON DEFENDANT TEXAS TURBINE CONVERSIONS, INC.'S MOTION FOR SUMMARY JUDGMENT ON RAISED-BUT-NOT-ARGUED CLAIMS (DKT. 171) |

## I. INTRODUCTION

This matter comes before the Court on Texas Turbine Conversions, Inc.'s ("TTC") Motion for Summary Judgment on Raised-But-Not-Argued Claims (the "Motion").[1] Defendant Recon Air Corporation ("RAC," and, together with TTC, "Defendants") joins the Motion.[2] Plaintiffs oppose the Motion.[3] The matter is fully briefed and ready for consideration by the Court.[4] Oral argument was not requested on the Motion and the Court finds the matter suitable for disposition without oral argument. For the following reasons, the Motion at Docket 171 is **DENIED in part.**

---

[1] Dkt. 171 (Motion).

[2] Dkt. 181 (RAC Joinder to Dkt. 171).

[3] Dkt. 202 (Plaintiffs' Opposition).

[4] Dkts. 171; 181; 202; 268 (TTC Reply).

1

## II. BACKGROUND

The background facts of this case are set out in detail in this Court's order at Docket 313. The facts are incorporated by reference and will not be repeated here.[5]

Due to a lengthy discovery process and by agreement of the parties, TTC filed its Motion on July 14, 2020.[6] Plaintiffs filed their Opposition to the Motion on August 31, 2020.[7] TTC filed a Reply on September 22, 2020.[8] The instant Motion asks the Court to grant summary judgment as to three of Plaintiffs' arguments that relate to the claims alleged in the Complaint.[9] First, Defendants argue that Plaintiffs should be precluded from asserting that an "alternative safer design of the plane was available," because Plaintiffs failed to provide any (or at best, cursory) evidence supporting their allegation.[10] Second, Defendants argue that Plaintiffs should be precluded from arguing that there was a manufacturing defect because they failed to support their claim.[11] Third, they argue that Plaintiffs should be precluded from arguing that a changed center of gravity created by Defendants caused or contributed to the accident because Plaintiffs explicitly abandoned this theory.[12]

---

[5] Dkt. 313 (Order on Parties' Motions in Limine re: Certain Expert Testimony).

[6] Dkt. 171.

[7] Dkt. 202.

[8] Dkt. 268.

[9] Dkts. 171 at 1; 1 (Complaint).

[10] Dkts. 171 at 13–19; 1 at ¶ 73.

[11] Dkts. 171 at 19–20; 1 at ¶ 55.

[12] Dkts. 171 at 21; 1 at ¶ 35.

2

In opposition to Defendants' first argument, Plaintiffs state that their alternative safer design assertion is a "defense to a defendant's assertion that 'the benefits of the design outweigh the risk of danger inherent in such design.'"[13] Plaintiffs argue that they have no such burden to prove or put forward evidence of an alternative safer design until Defendants establish that the benefits of the product outweigh the associated dangers.[14] Second, Plaintiffs argue that they need not specifically separate out arguments relating to manufacturing defects, since Alaska law recognizes "overlap between the two categories" of design and manufacturing defects and that the plane does not meet the consumer expectations test.[15] And third, although Plaintiffs acknowledge that their "actual theory" of the case does not involve proving that a changed center of gravity created by Defendants caused or contributed to the accident, they nonetheless state that summary judgment on that theory should be denied.[16]

In a short Reply, Defendants assert that Plaintiffs "do not present a scintilla of evidence in opposition" and make "irrelevant legal arguments concerning what they claim is the substantive law."[17] Therefore, they argue, the Court should grant Defendants' Motion.[18]

---

[13] Dkt. 202 at 7 (citing Alaska Pattern Jury Instruction 7.03(4)(B)) (emphasis omitted).

[14] *Id.*

[15] *Id.* at 5–11.

[16] *Id.* at 8.

[17] Dkt. 268 at 2.

[18] *Id.* at 5.

3

### III. LEGAL STANDARD

*A. Summary Judgment*

Summary judgment is appropriate where, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party,[19] "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] Material facts are those which might affect the outcome of the case.[21] A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[22] "There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion."[23] A movant's burden may be met by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."[24] Thus, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[25]

---

[19] *Scott v. Harris*, 550 U.S. 372, 378 (2007).

[20] Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Jensinger v. Nev. F. Credit Union*, 24 F.3d 1127, 1130–31 (9th Cir. 1994).

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

[22] *Id.* at 248.

[23] *Mills v. Wood*, No. 4:10-CV-00033-RRB, 2015 WL 2100849, at *1 (D. Alaska May 6, 2015), *aff'd in part*, 726 F. App'x 631 (9th Cir. 2018) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).

[24] *Celotex Corp.*, 477 U.S. at 325.

[25] *Anderson*, 477 U.S. at 249.

Once a movant has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify facts which show a genuine issue for trial.[26] Evidence introduced in opposition to a summary judgment motion does not have to be the kind that would be admissible at trial, but may be any type of evidence identified in Fed. R. Civ. P. 56(c).[27] However, "conclusory assertions are wholly insufficient to sustain either the defendants' burden or the district court's grant of summary judgment."[28] "A party opposing a summary judgment motion must produce '*specific* facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative as to any [material] fact claimed to be disputed.'"[29]

*B. Negligence Claims*

Under Alaska law, in order to establish a prima facie case of ordinary negligence, Plaintiffs must present evidence to satisfy the following elements: (1) duty, (2) breach of duty, (3) causation, and (4) harm.[30] Each are "separate and distinct elements of a negligence claim, all of which must be proven before a defendant can be held liable for the plaintiff's injuries."[31]

---

[26] *Id.* at 323–24.

[27] *See, e.g., Celotex*, 477 U.S. at 323–24; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

[28] *Walker v. Sumner*, 917 F.2d 382, 387 (9th Cir. 1990); *see also Hilsinger v. Enerco Grp., Inc.*, No. 3:13-cv-00003-TMB, 2014 WL 12569381, at *2 (D. Alaska Sept. 3, 2014); *Mills v. Wood*, 2015 WL 2100849, at *1 (citing *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005) and *Walker*, 917 F.2d at 387 ("In general, in ruling on a motion for summary judgment, a court may not weigh the evidence or judge the credibility of witnesses . . . However, this rule does not apply to conclusory statements unsupported by underlying facts.")).

[29] *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (quoting *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir. 1979)).

[30] *Lyons v. Midnight Sun Transp. Servs., Inc.*, 928 P.2d 1202, 1204 (Alaska 1996).

[31] *Id.*

5

*C. Strict Liability Claims*

Under Alaska law, "[a] product may be defective because of a manufacturing defect, a defective design, or a failure to contain adequate warnings."[32] However, the "overlap between the two categories [of design and manufacturing defects] is unavoidable…[and] rigid delineation of the two categories is neither necessary nor desirable."[33] A product is defectively designed if:

> (1) the plaintiff proves that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or (2) the plaintiff proves that the product's design proximately caused injury and the defendant fails to prove, in light of the relevant factors, that on balance the benefits of the challenged design outweigh the risk of danger inherent in such design.[34]

In addition, "the plaintiff in a strict products liability suit must establish as part of his cause of action that the product was defective at the time it left the possession of the manufacturer."[35]

## IV.    ANALYSIS

Defendants ask the Court to address three issues: (1) Plaintiffs' potential "alternative safer design" argument; (2) the manufacturing defect allegation; and (3) the alleged-but-dropped theory that Defendants are liable due to a change in the plane's center of gravity.[36] The Court **DENIES** summary judgment as to the first two issues and, with regard to the third issue, **ORDERS** Plaintiffs to amend the Complaint at Docket 1 or provide additional briefing to the Court.

---

[32] *Shanks v. Upjohn Co.*, 835 P.2d 1189, 1194 (Alaska 1992) (citing *Caterpillar Tractor Co. v. Beck*, 593 P.2d 871, 878 n.15 (Alaska 1979)).

[33] *Colt Indus. Operating Corp., Quincy Compressor Div. v. Frank W. Murphy Mfr., Inc.*, 822 P.2d 925, 930 (Alaska 1991).

[34] *Beck*, 593 P.2d at 886; *see also Shanks*, 835 P.2d at 1194.

[35] *Hiller v. Kawasaki Motors Corp., U.S.A.*, 671 P.2d 369, 372 (Alaska 1983).

[36] Dkt. 171 at 21.

6

### A. Alternative Safer Design Argument

Under Alaska law, Plaintiffs "need only show that [they were] injured and that the injury was proximately caused by the product's design."[37] At that point, Defendants may "avoid liability . . . by proving by a preponderance of evidence that, 'on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design.'"[38] One of the elements of the risk-benefit analysis is "the mechanical feasibility of a safer alternative design."[39] Meaning, the Court may consider whether TTC could have designed the product differently to mitigate safety risks.

Defendants argue that Plaintiffs have provided no evidence of a safer alternative design and thus their "claim" that an alternative safer design exists should be dismissed.[40] Defendants ask the Court to apply Oregon law that requires a plaintiff to prove that there was an alternative safer design.[41] They also assert that the only examples provided by Plaintiffs of alternative designs were the unmodified Otter-style aircraft ("Otter") with a piston engine and the Vazar modification.[42]

In response, Plaintiffs argue that their assertion of an alternative safer design in the Complaint is not a claim, but a defense to a defendant's assertion that the benefits of the design

---

[37] *Beck*, 593 P.2d at 885.

[38] *Id.*

[39] *Id.* at 886.

[40] Dkt. 171 at 19.

[41] *Id.* at 14.

[42] *Id.* at 16, 18 n.57 (description of Vazar Otter).

7

outweigh the risks.[43] They cite to the expert report of Robert Carducci, who described four engine conversions that have been certified for the Otter and noted that larger engines might reduce controllability.[44] Plaintiffs note that TTC developed "the largest engine/propeller combination of the turbine conversions."[45] Finally, Plaintiffs cite the potential testimony of expert Todd Coburn, who opined that the TTC-modified Otter crashed "at nearly twice the frequency" of the Otter without the TTC conversion.[46]

Moving to the merits, the Court first finds that Defendants, not Plaintiffs, have the burden of putting on evidence of an alternative safer design if and when Plaintiffs prove that a design defect existed.[47] *Caterpillar Tractor Co. v. Beck*, cited by both parties as the key authority on this issue, puts the burden on a defendant to show by a preponderance of evidence that the benefits of its design outweigh the safety risks.[48] The Alaska Supreme Court adopted this standard as a way to "lessen[] the burdens of the plaintiff's prima facie case . . . [and] put[] the burden of producing the relevant complex and technical evidence on the party who has the most access to and is most familiar with such evidence."[49] Defendants' citation to Oregon law is inapposite, even as persuasive authority, because the Oregon standard places the burden on Plaintiffs, but here

---

[43] Dkt. 202 at 7.

[44] *Id.* at 9–10.

[45] *Id.* at 10.

[46] *Id.* at 11.

[47] *Beck*, 593 P.2d at 885.

[48] *Id.*

[49] *Id.* at 886.

8

Defendants have the burden.[50] Furthermore, the Oregon authority cited by Defendants is no longer good law.[51]

Next, the "claim" Defendants seek to dismiss, is in, actuality, not a claim at all. It is a potential argument that Plaintiffs may seek to introduce at trial to counter Defendants' potential argument that the benefits of the modifications made to the plane outweighed the safety risks. Plaintiffs do not need to prove that an alternative safer design existed in order to prove their strict liability claims.[52] The parties are free to ask the Court to admit evidence at trial relating to alternative designs, if and when Defendants pursue that line of argument. It is premature for the Court to evaluate the merits of a potential risk-benefit analysis based on the Motion and record before it.[53]

In sum, the Court finds that Plaintiffs do not have the burden to raise or refute arguments that Defendants *might* make regarding the risk-benefit of the DHC-3 Otter modifications, and, in

---

[50] *See Wilson v. Piper Aircraft Corp.*, 282 Or. 61, 68, 577 P.2d 1322, 1326 (1978) ("[P]laintiff's burden in a design defect case includes a showing that there was an available 'alternative, safer design, practicable under the circumstances[.]'") (citation omitted); *but see Beck*, 593 P.2d at 880 n.24, 885–86 (considering but not adopting the "risk/utility analysis" test once used in Oregon).

[51] *See McCathern v. Toyota Motor Corp.*, 332 Or. 59, 78, 23 P.3d 320, 331–32 (2001) ("[T]he controlling test for design defect in Oregon is the consumer expectations test."); *Purdy v. Deer & Co.*, 281 Or. App. 407, 411, 386 P.3d 2, 6–7 (Or. Ct. App. 2016) (noting that the Oregon legislature "placed the burden of proof on a plaintiff to show that the consumer expectations test is satisfied."). The Oregon legislature enacted O.R.S. § 30.920 in 1979, which changed the legal landscape for products liability in the state. *See McCathern v. Toyota Motor Corp.*, 160 Or. App. 201, 212, 985 P.2d 804, 811–812 (Or. Ct. App. 1999).

[52] Indeed, even if there were no alternative safer designs, *Beck* does not foreclose a finding of liability, since the risk-benefit analysis requires the court to consider "a number of competing factors," which includes but is not limited to "the feasibility of a safer alternative design." *See Beck*, 593 P.2d at 886.

[53] Furthermore, Plaintiffs have put forward more than a "scintilla of evidence" to make their argument. The jury may be able to draw fair inferences from the record to find that the benefits of the modifications did not outweigh the risks.

9

any event, the risk-benefit analysis is not dispositive of any of Plaintiffs' claims. Therefore, summary judgment is properly **DENIED** on this issue.

### B. *Manufacturing Defects*

Alaska law does not require Plaintiffs to allege that a product was defectively manufactured in order to prevail on a claim for strict liability.[54] Courts recognize that there is "no reason to arbitrarily assign defects resulting from processes which are prone to error to one category or the other," meaning, it is a distinction without a difference.[55] Although Defendants cite the Restatement (Third) of Torts to define the scope of a manufacturing defect, the Court declines to apply a definition which, Defendants admit, has not been adopted in Alaska.[56]

Defendants argue that Plaintiffs have provided no relevant or admissible evidence that supports the allegations in paragraph 55 of the Complaint, which contains a list of allegations such as Defendants' failure to warn, failure to properly design the aircraft, and failure to properly assemble the aircraft.[57] It appears that Defendants only seek summary judgment as to allegations in paragraph 55 that might relate to "defective manufacturing"; however, Defendants do not list the specific portions at issue.[58] Defendants argue that Plaintiffs' experts provide no support for

---

[54] *See Colt Indus.*, 822 P.2d at 930 ("We have clearly stated that rigid delineation of the two categories [of design and manufacturing defects] is neither necessary nor desirable."); *Beck*, 593 P.2d at 886.

[55] *Colt Indus.*, 822 P.2d at 930.

[56] *See* Dkt. 171 at 19.

[57] *See* Dkt. 1 at ¶ 55.

[58] Dkt. 171 at 19–20 ("TTC submitted contention interrogatory no. 6 to Plaintiffs asking them to specify their allegations contained in paragraph 55 of their complaint. Their response lacked any substantive information let alone any admissible evidence."). It is unclear which are the allegations or materials facts on which Defendants seek summary judgment.

10

Case 3:17-cv-00194-TMB   Document 325   Filed 12/15/20   Page 10 of 13

alleged manufacturing defects.[59] In response, Plaintiffs argue that summary judgment is not appropriate because, essentially, "defective manufacturing" is not a standalone claim in Alaska.[60]

The Court agrees with Defendants that the record does not support a finding that the plane was assembled out of compliance with the manufacturer's design plans, and, indeed, that is not a central component of Plaintiffs' theory of liability.[61] However, due to the ambiguity in Defendants' pleading, and the state of the law in Alaska which blurs the line between manufacturing and design defects, the Court is unwilling to rule on summary judgment that no "defective manufacturing" exists.[62] For example, certain elements of the record, such as the change in the engine's p-factor,[63] or the use of climb flaps vs. take-off flaps,[64] could arguably be classified manufacturing defects.[65] To the extent a ruling for Defendants would preclude such arguments, summary judgment is inappropriate, and Defendants have not otherwise demonstrated that a narrower ruling would be appropriate. Therefore, summary judgment is properly **DENIED** on this issue.

---

[59] *Id.* at 20.

[60] *See* Dkt. 202 at 5–6.

[61] *See id.* at 7–8.

[62] *See Colt Indus.*, 822 P.2d at 930.

[63] *See* Dkt. 173-13 at 2 (Airplane Flight Manual Supplement) ("[T]he p-factor is opposite to the original to the original due [sic] the counter-clockwise rotation of the engine and propeller").

[64] *See* Dkt. 173-12 at 4 (Report of Company Flight Tests (Jan. 22, 2002)) ("Three series of stalls were performed; flaps retracted, flats at 'climb', and flaps at 'landing' (fully extended).").

[65] Plaintiffs should not inadvertently be prevented from litigating genuine issues of material fact by the Court's finding that no defective manufacturing exists, a distinction that Alaska has eschewed.

11

### C. Changed Center of Gravity Theory

Defendants seek summary judgment on Plaintiffs' theory that a change in the center of gravity, created by TTC and RAC, caused or contributed to the accident.[66] Plaintiffs have acknowledged that this is no longer a live theory, stating "Plaintiffs no longer allege that the change in the center of gravity . . . caused or contributed to the crash."[67] Plaintiffs reiterate that the Motion before the Court "is not directed at issues pertaining to the Plaintiffs' actual theory of the case."[68] Nonetheless, Plaintiffs state, without discussion, that Defendants' Motion should be denied.[69] Defendants represent that "Plaintiffs were asked to dismiss this and other abandoned claims in an email," but that Plaintiffs declined to do so.[70]

The parties do not dispute that the changed center of gravity theory is an abandoned theory in the case. Plaintiffs should be given the opportunity to amend the Complaint to align it with their "actual theory of the case," which "is and always has been that the [aircraft] demonstrated a tendency to right turn, roll and yaw in certain scenarios . . . [and] as a result of the modification[s] . . . the pilot ran out of the ability to control the direction of the aircraft due to rudder limitations and lost control of the aircraft."[71]

---

[66] Dkt. 171 at 21.

[67] Dkt. 171-16 at 5 (Plaintiffs' First Supplemental Responses to TTC's First Set of Discovery Requests).

[68] Dkt. 202 at 8.

[69] *Id.*

[70] Dkt. 171 at 21.

[71] Dkt. 202 at 7–8.

12

The Court **ORDERS** that Plaintiffs amend the Complaint at Docket 1, or, in the alternative, explain why the Complaint need not be amended at this time, on or before 5:00 pm AKST on December 18, 2020. The Court withholds decision on the Motion as to this third issue until Plaintiffs amend the Complaint or provide additional briefing.

## V. CONCLUSION

Accordingly, for the above reasons, TTC's Motion for Summary Judgment at Docket 171 is **DENIED in part** as it pertains to Plaintiffs' potential "alternative safer design" argument and manufacturing defect allegation. Further, the Court **ORDERS** that Plaintiffs amend the Complaint at Docket 1, or, in the alternative, explain why the Complaint need not be amended at this time, **on or before 5:00 pm AKST on December 18, 2020.**

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 15th day of December, 2020.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE