IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOLYN L. SPECTER, as Personal Representative of the ESTATE OF JAMES E. SPECTER, M.D., and on behalf of herself, and the Surviving Family Members including KEVIN SPECTER, and DAVID W. WOOD, JR. and MARIANNE WOOD, Individually an on behalf of the marital community,<br><br>Plaintiffs,<br>v.<br><br>TEXAS TURBINE CONVERSIONS, INC., a Texas Corporation, RECON AIR CORPORATION, a foreign corporation,<br><br>Defendants. | Case No. 3:17-cv-00194-TMB<br><br><br>ORDER ON DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON PUNITIVE DAMAGES (DKTS. 168, 191) AND DEFENDANTS' MOTIONS FOR A HEARING (DKTS. 267, 288) |

## I. INTRODUCTION

This matter comes before the Court on Recon Air Corporation's ("RAC") Motion for Partial Summary Judgment on Punitive Damages ("RAC's Motion")[1] and Texas Turbine Conversions, Inc.'s ("TTC") Motion for Summary Judgment on Punitive Damages ("TTC's Motion").[2] TCC and RAC shall be referred to collectively as "Defendants." Plaintiffs oppose both Motions.[3] The matter is fully briefed and ready for consideration by the Court.[4] Defendants requested oral

---

[1] Dkts. 168 (RAC Partial Summary Judgment Motion on Punitive Damages); 168-1 (Memorandum in Support of Motion). TCC joins RAC'S Motion. Dkt. 233 (Motion to Join Dkt. 168).

[2] Dkt. 191 (TCC Partial Summary Judgment Motion on Punitive Damages).

[3] Dkts. 205 (Plaintiffs' Opposition to RAC's Motion); 206 (Plaintiffs' Opposition to TTC's Motion).

[4] Dkts. 168; 191; 205; 206; 255 (RAC's Reply); 278 (TTC's Reply).

1

argument, but the Court finds the matter suitable for disposition without oral argument.[5] For the following reasons, the Motions at Docket 168 and 191 are **GRANTED** and Defendants' Motions at Dockets 267 and 288 are **DENIED**.

## II. BACKGROUND

The background facts of this case are set out in detail in this Court's Order at Docket 313. The facts are incorporated by reference and will not be repeated here.[6]

Following a lengthy discovery process and by agreement of the parties, RAC filed its Motion on July 14, 2020,[7] and TTC filed its Motion on July 15, 2020.[8] Plaintiffs then filed their Oppositions.[9]

In RAC's Motion, it asks the Court to grant summary judgment on the issue of punitive damages because Plaintiffs have failed to produce *any* evidence RAC acted with malice or bad motive, or recklessly disregarded a known risk of substantial harm.[10] RAC acknowledges its duty as an installer to determine the compatibility of the STOL Kit and turbine modification with the aircraft.[11] However, RAC argues that Plaintiffs have not raised any dispute as to whether RAC:

---

[5] Dkts. 267 at 1–2 (RAC Motion for Hearing); 288 at 1–2 (TTC Motion for Hearing). TCC's Motion requested oral argument on a number of topics, but the Court concluded argument was unnecessary. *See* Dkts. 288; 313 (Order on Parties' Motions in Limine re Certain Expert Testimony); 324 (Order re Motion for Summary Judgment on Substantial Alteration).

[6] Dkt. 313 at 2–4.

[7] Dkt. 168.

[8] Dkt. 191.

[9] Dkts. 205; 206.

[10] Dkts. 168-1 at 2, 5–6 (emphasis in original); 255 at 2–4.

[11] Dkt. 168-1 at 5–6. The modifications to the subject aircraft include (1) a short takeoff and landing kit in the aircraft "known as Stol Kit STC SA00287NY, a Baron Stol Kit ("STOL Kit")

(1) breached its duty by not independently inquiring beyond, in lieu of, or in substitution of the data supplied by the supplemental type certificate ("STC") holder[12] or the two government-issued airworthiness statements[13]; (2) was aware that the components were incompatible; or (3) recklessly disregarded the risk to passengers, including Plaintiffs.[14]

In their Opposition to RAC, Plaintiffs state that RAC breached its duty as an installer to ensure compatibility of all modifications because RAC: (1) knew or should have known that the TTC conversion created situations where a loss of rudder authority or "run out of rudder" occurred in certain flight scenarios based on the Flight Manual Supplements ("FMS"), and (2) failed to independently investigate whether the TTC conversions were compatible and "did nothing to warn its consumers" of the defect.[15] Plaintiffs assert that there are "genuine issues of material fact regarding RAC's duty, breach of duty, cause of the crash, as well as RAC's knowledge and indifference thereto."[16]

---

manufactured by Stolairus Aviation, Inc and TTC; and (2) a turbine engine conversion manufactured by TCC. *Id.* at 4–5; *see also* Dkt. 1 at ¶¶ 3–4, 26 (Complaint); *see also* Dkts. 17 at ¶ 3 (TCC Answer); 25 at ¶ 26 (Rainbow King Lodge Answer); 28 at ¶¶ 3–4 (RAC Answer, Third-Party Claim, and Crossclaim); 313 at 3 n.8, 4 n.14.

[12] The Court previously described in detail the STC approval process. *See* Dkt. 321 at 4–5 (Order on Defendants' Motion in Limine to Exclude Airworthiness Directives). In this case, the relevant STC holders are turbine engine manufacturer TTC and Stolairus, no longer a party to this case. *See* Dkts. 26 (Motion to Dismiss for Lack of Jurisdiction); 110 (Order Granting Motion to Dismiss); *see also* Dkts. 313 at 2–3; 163 (RAC Motion in Limine re Airworthiness Directives).

[13] RAC quotes the relevant airworthiness statement, which states: the "STOL [K]it installation is compatible with any approved engine installation (piston or turbine)." Dkt. 168-1 at 6 (internal alterations and quotation marks omitted).

[14] *Id.* at 4–6.

[15] Dkt. 205 at 4–8.

[16] *Id.* at 8.

TTC's Motion asks the Court to grant summary judgment as to the issue of punitive damages because Plaintiffs are unable to show that TTC's actions meet the statutory standard of outrageous conduct, including acts done with malice or bad motives, or acts done with reckless indifference to the interests of others.[17] TTC asserts that its compliance with Federal Aviation Administration ("FAA") standards and its "development and completion of numerous systems and engineering tests and accompanying flight testing . . . to ensure the airworthiness of the turbine conversion" demonstrate neither malicious conduct nor reckless indifference.[18]

In their Opposition, Plaintiffs allege that there are genuine issues of material fact as to whether TTC is liable for punitive damages because TTC did not comply with the certification requirements and applicable regulations, and, even if it did comply, such compliance does not shield TCC from punitive damages.[19] Further, Plaintiffs allege that TTC meets the statutory standard for punitive damages by recklessly disregarding knowledge about insufficient rudder authority gained through TTC's flight testing protocol and through three subsequent accidents that demonstrated a similar right yaw and roll.[20]

In its Reply, TTC reiterates that it is entitled to summary judgment because Plaintiffs have failed to produce any direct evidence of outrageous or intentional misconduct, let alone clear and

---

[17] Dkt. 191 at 1, 29–30.

[18] *Id.* at 30–31.

[19] Dkt. 206 at 4–7.

[20] *Id.* at 10–12. Plaintiffs place special emphasis on TTC's role as a distributor selling conversion kits. *Id.* at 12 ("TTC is also in the business of *selling* conversion kits . . . and knew its product was killing and seriously injuring people but nevertheless passed it on to market for profit."). However, Plaintiffs do not cite any controlling authority holding product distributors liable for punitive damages.

4

convincing evidence, as required under Alaska law's standard for liability for punitive damages.[21] TTC further asserts that Plaintiffs offer no direct or admissible evidence regarding TTC's knowledge about insufficient rudder authority or the other three subsequent accidents, instead basing such claims solely on expert testimony TCC has moved to exclude.[22]

### III. LEGAL STANDARD

#### A. *Summary Judgment*

Summary judgment is appropriate where, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party,[23] "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[24] Material facts are those which might affect the outcome of the case.[25] A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[26] "There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion."[27] A movant's burden

---

[21] Dkt. 278 at 1, 4–5, 21–22.

[22] *Id.* at 18–20.

[23] *Scott v. Harris*, 550 U.S. 372, 378 (2007).

[24] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Jensinger v. Nev. F. Credit Union*, 24 F.3d 1127, 1130–31 (9th Cir. 1994).

[25] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

[26] *Id.* at 248.

[27] *Mills v. Wood*, No. 4:10-CV-00033-RRB, 2015 WL 2100849, at *1 (D. Alaska May 6, 2015), *aff'd in part*, 726 F. App'x 631 (9th Cir. 2018) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

may be met by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."[28] Thus, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[29]

Once a movant has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify facts which show a genuine issue for trial.[30] "[C]onclusory assertions are wholly insufficient to sustain either the defendants' burden or the district court's grant of summary judgment."[31] "A party opposing a summary judgment motion must produce '*specific* facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative as to any [material] fact claimed to be disputed." [32]

---

[28] *Celotex Corp.*, 477 U.S. at 325.

[29] *Anderson*, 477 U.S. at 249.

[30] *Celotex Corp.*, 477 U.S. at 323–24.

[31] *Walker v. Sumner*, 917 F.2d 382, 387 (9th Cir. 1990); *see also Hilsinger v. Enerco Grp., Inc.*, No. 3:13-cv-00003-TMB, 2014 WL 12569381 (D. Alaska Sept. 3, 2014); *Mills*, No. 4:10–cv–00033–RRB, 2015 WL 2100849, at *1 ("In general, in ruling on a motion for summary judgment, a court may not weigh the evidence or judge the credibility of witnesses . . . . However, this rule does not apply to conclusory statements unsupported by underlying facts.") (citing *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005); *Walker*, 917 F.2d at 387).

[32] *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (quoting *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir. 1979)).

### B. Punitive Damages

Under Alaska law, to support a claim for punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant's conduct "was outrageous, including acts done with malice or bad motives[,] or . . . evidenced reckless indifference to the interest of another person."[33]

Alaska law considers punitive damages to be a harsh remedy "not favored in the law" and "allowed only with caution and within narrow limits."[34] "Punitive damages are not awarded for mere inadvertence, mistake, errors in judgment . . . which constitute ordinary negligence[] but are restricted to conduct involving some measure of outrage similar to that usually found in crime."[35]

The Alaska Supreme Court has "adopted the Restatement view of reckless disregard, which 'view[s] recklessness as unreasonably disregarding a known risk of substantial physical harm to

---

[33] Alaska Stat. Ann. § 09.17.020(b); *Ace v. Aetna Life Ins. Co.*, 139 F.3d 1241, 1246 (9th Cir. 1998); *State Farm Fire & Cas. Co. v. Nicholson*, 777 P.2d 1152, 1158 (Alaska 1989); *Ross Lab., Div. of Abbott Lab. v. Thies*, 725 P.2d 1076, 1081 (Alaska 1986). Since passage of the 1986 Alaska Tort Reform Act, "punitive damages [claims] have been governed by statute." *Great Divide Ins. Co. v. Carpenter*, 79 P.3d 599, 612 (Alaska 2003).

[34] *State Farm Mut. Auto Ins. Co. v. Weiford*, 831 P.2d 1264, 1266 (Alaska 1992) (citation and internal quotation marks omitted): *Thies*, 725 P.2d at 1081–82 (affirming dismissal of punitive damages for a product retailer and reversing finding of punitive damages for co-defendant manufacturer); *Madonna v. Tamarack Air, Ltd.*, 298 P.3d 875, 880 (Alaska 2013).

[35] *Pederson v. Barnes*, 139 P.3d 552, 562–63 (Alaska 2006) (internal quotation marks and alterations omitted) (citing, *inter alia*, Restatement (Second) of Torts § 908, comment b); *Weiford*, 831 P.2d at 1266–68 (affirming submission of bad faith claim to jury, but reversing award of punitive damages); *Alyeska Pipeline Serv. Co. v. Beadles*, 731 P.2d 572, 574 (Alaska 1987) (holding that where there is no evidence of "actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice," punitive damages are not appropriate and should not be submitted to the jury).

another.'"[36] Furthermore, in order to meet the high standard of reckless disregard, the "indifference must be 'sufficiently outrageous to be deemed equivalent to actual malice.'"[37]

## IV. ANALYSIS

Because Plaintiffs do not argue that Defendants acted with actual malice or bad motive, the question before the Court is whether TTC or RAC, in manufacturing, installing, and marketing of the turbine conversion and STOL Kit modifications unreasonably disregarded a known risk of substantial physical harm to Plaintiffs. The Court concludes that Plaintiffs have failed to show a genuine dispute of material fact as to whether Defendants demonstrated reckless disregard sufficiently outrageous and equivalent to actual malice, and that Defendants are entitled to judgment as a matter of law. Accordingly, both Motions for summary judgment are **GRANTED**.

### A. RAC's Summary Judgment Motion

RAC asks the Court to grant summary judgment on the issue of punitive damages because Plaintiffs have failed to produce *any* evidence RAC acted with malice or bad motive, or recklessly disregarded a known risk of substantial harm.[38] RAC argues Plaintiffs have not raised any dispute as to whether RAC: (1) breached its duty by not independently inquiring beyond, in lieu of, or in

---

[36] *Jones v. Bowie Indus., Inc.*, 282 P.3d 316, 339 (Alaska 2012) (quoting *Lamb v. Anderson*, 147 P.3d 736, 745–46 (Alaska 2006)); *Chizmar v. Mackie*, 896 P.2d 196, 210 (Alaska 1995) ("'Conduct cannot be in reckless disregard of the safety of others unless the act or omission is itself intended, notwithstanding that the actor knows of facts which would lead any reasonable man to realize the extreme risk to which it subjects the safety of others'") (quoting Restatement (Second) of Torts § 500, comment b).

[37] *Blake v. Guthy-Renker*, 965 F. Supp. 2d 1076, 1088–89 (D. Alaska 2013) (rejecting punitive damages for distributer that delayed in warning consumers about a contaminated product) (quoting *Chizmar*, 896 P.2d at 210); *see also Weiford*, 831 P.2d at 1266 ("Consistent with this approach, we have limited punitive damages to cases where the wrongdoer's conduct could fairly be categorized as 'outrageous, such as acts done with malice or bad motives or reckless indifference to the interests of another.'"); *Nicholson*, 777 P.2d at 1158; *Beadles*, 731 P.2d at 574–75.

[38] Dkts. 168-1 at 2, 5 (emphasis in original); 255 at 2–4.

substitution of the data supplied by the STC holder or the two government-issued airworthiness statements; (2) was aware that the components were incompatible; or (3) recklessly disregarded the risk to Plaintiffs.[39]

Plaintiffs state that RAC breached its duty as an installer to ensure compatibility of all modifications because RAC knew or should have known that the TTC conversion created situations where a loss of rudder authority or "run out of rudder," failed to independently investigate whether the TTC conversions were compatible with the plane, and "did nothing to warn its consumers" of the defect.[40] Plaintiffs assert that there are "genuine issues of material fact regarding RAC's duty, breach of duty, cause of the crash, as well as RAC's knowledge and indifference thereto."[41]

Here, RAC is entitled to judgment as a matter of law on the punitive damages claim. There is no dispute that RAC did not conduct additional, independent tests of the compatibility of the modifications on the subject craft. However, Plaintiffs are unable to point to any authority that requires an installer, as opposed to the STC holder, to conduct its own flight tests in lieu of, or in substitution of, the technical supporting data supplied by the STC holder and approved by two airworthiness authorities—the FAA and its Canadian counterpart. The Court also located no controlling authority holding an installer liable for punitive damages under such theories. Even Plaintiffs' own experts have not opined that RAC, as the installer, must conduct its own flight

---

[39] Dkt. 168-1 at 4–6.

[40] Dkt. 205 at 4–8.

[41] *Id.* at 8.

testing or that it cannot rely on technical data that the STCs are and were compatible.[42]  Thus, the Court cannot conclude that RAC's failure to conduct additional testing on modified parts that complied with applicable regulatory standards or to independently inquire above and beyond its duty to ensure compatibility raises a genuine issue of material fact that RAC behaved outrageously and with reckless disregard for harm to Plaintiffs.

Further, the FMS warning provided by TCC that the modified aircraft could "run out of rudder in high angle of attack scenarios before the stall occurred"[43] does not necessarily show RAC had an obligation to conduct additional testing or, to warn pilots, who would also be in possession of the FMS.  Instead, TTC is required to provide pilots with a FAA-approved FMS, and RAC has no ability—let alone an obligation—to make changes to such warnings.[44]  RAC's failure to conduct such additional tests based off of the FMS warning or to offer additional warnings above and beyond those provided by the manufacturer does not amount to clear and convincing evidence of outrageous conduct necessary for a claim of punitive damages to survive the summary judgment stage.[45]  Finally, RAC's failure to conduct additional testing following three

---

[42] *See* Dkt. 255 at 3, 7–9 (citing Dkts. 255-2 at 44:6–45:16, 114:8–13 (Pottinger Depo.); 255-5 at 242:14–243:21 (Coburn Depo.)); 205-6 (Pottinger Report); 205-2 at 134:2–5, 142:8–22 (Coburn Depo.); 205 at 4 (citing 205-1 (Cochran Report)); *see also* Dkt. 313 at 15, 19 (limiting Pottinger's ability to testify as to RAC and TTC's legal, regulatory, or testing obligations or duty to warn); Dkt. 205-3 at 112:1–8 (Pottinger Depo.) ("[T]he flight manual supplement . . . should put any installer on notice that [it] need[s] to do some additional inquiry about the compatibility of these STCs and whether or not the aircraft as modified is going to meet . . . the certification basis for the underlying aircraft.").

[43] Dkt. 205 at 5–6, 8.

[44] *See* Dkt. 255 at 14.  The Court will address separately TCC's Partial Motion for Summary Judgment at Docket 173 on the issue of failure to warn in which RAC joins at Docket 184.

[45] *See Beadles*, 731 P.2d at 575 n.6 ("The superior court's threshold determination [on summary judgment of the punitive damages issue] is sustainable since the totality of the evidence produced does not permit [defendant's] conduct to be fairly characterized as outrageous.").

other accidents involving DHC-3 Otter planes with the same modifications—which Defendants argue are not substantially similar to the present case[46]—does not amount to a genuine issue of material fact that RAC unreasonably disregarded a known risk of substantial physical harm to Plaintiffs.

In this case, because Plaintiffs have failed to produce specific facts showing that there remains a genuine factual issue for trial and the evidence does not give rise to an inference of actual malice or of conduct sufficiently outrageous to be deemed to be equivalent to actual malice, summary judgment is appropriate.[47] Accordingly, RAC's Motion is **GRANTED**.

### B. TTC's Summary Judgment Motion

TTC argues that its compliance with applicable standards and its "development and completion of numerous systems and engineering tests and accompanying flight testing . . . to ensure the airworthiness of the turbine conversion" demonstrate neither malicious conduct nor reckless indifference.[48] TCC includes extensive background detailing the testing and application process it underwent, under the guidance and supervision of the appropriate regulatory bodies, to

---

[46] *See* Dkts. 187 (TTC Motion in Limine to Exclude Evidence of Other Accidents); 249 (RAC Motion to Join Dkt. 187); 323 (Order Granting in Part and Denying in Part Motion at Dkt. 187).

[47] *Robles v. Shoreside Petro., Inc.*, 29 P.3d 838, 846 (Alaska 2001) (affirming summary judgment order striking punitive damage claim and rejecting requested instruction on punitive damages because a reasonable jury could not find malice or reckless disregard); *Beadles*, 731 P.2d at 574–75 (affirming grant of summary judgment on issue of punitive damages after a review of the record showed plaintiff failed to demonstrate defendant's conduct was outrageous); *Hagens Ins., Inc. v. Roller*, 139 P.3d 1216, 1225 (Alaska 2006) (affirming a directed verdict dismissing punitive damage claim); *In re Crash of Aircraft N93PC on July 7, 2013, at Soldotna,* Alaska, No. 3:15-cv-0112-HRH [Consolidated with No. 3:15-cv-0113-HRH and No. 3:15-cv-0115-HRH], 2020 WL 2739910, at *1 n.1 (D. Alaska May 26, 2020) (punitive damages claim against RAC, TTC, and other defendant withdrawn in products liability case involving crash of same model landplane) (Dkt. 282).

[48] Dkt. 191 at 30–31.

obtain the STC on its turbine engine conversion—all facts which TCC characterizes as "undisputed."[49]

TTC further argues that Plaintiffs offer no direct or admissible evidence regarding TTC's knowledge about insufficient rudder authority or the other three subsequent accidents, instead basing such claims solely on expert "assertions" that TCC has moved to exclude.[50] Because Plaintiffs fail to produce any direct evidence of outrageous conduct or intentional misconduct, let alone clear and convincing evidence as required under Alaska law, TTC argues it is entitled to summary judgment on the issue of punitive damages.[51]

Plaintiffs counter that there are genuine issues of material fact as to whether TTC is liable for punitive damages because TTC did *not* comply with the certification requirements and applicable regulations, and, even if it did comply, such compliance does not shield TCC from punitive damages.[52] Further, Plaintiffs allege that TTC meets the statutory standard for punitive damages by recklessly disregarding knowledge about insufficient rudder authority gained through TTC's flight testing protocol and through three similar accidents that demonstrated a right yaw and roll like the crash at issue.[53]

Here, summary judgment for TTC is appropriate on the issue of punitive damages. First, Plaintiffs fail to support their claim that TCC did not comply with applicable certification and

---

[49] Dkt. 191 at 3–16, 24 ("The detailed and rigorous protocols that [TTC] followed demonstrate the opposite of outrageous or malicious conduct[] or acting in reckless indifference to the interests of others.").

[50] Dkt. 278 at 18–20.

[51] *Id.* at 1, 4–5, 21–22; Dkt. 191 at 1, 29–30.

[52] Dkt. 206 at 4–7 (emphasis added).

[53] *Id.* at 10–12.

regulations with more than a scintilla of evidence. Plaintiffs allege in their Complaint that TTC "failed to supervise and ensure that the modification work complied with Federal Aviation Regulations ("FAR") and was completed with the highest degree of safety" and as a result of TTC's "failure to properly supervise the modification" Plaintiffs were harmed.[54] Other than this one allegation in their negligent supervision claim, and statements by Plaintiffs' experts[55]—the admissibility of which has been limited by the Court[56]—Plaintiffs do not otherwise allege or assert

---

[54] Dkt. 1 at ¶¶ 91–92 (Complaint).

[55] Plaintiffs point to their expert Mark Pottinger's conclusion that: "'The subject aircraft was modified with a turbine conversion that did not meet [Canadian Air Regulation [("CAR")] 3.120 performance standards during power on, flaps deployed stalls. Basis: TTCI flight test data, CAR 3.120'" and that TTC failed to "'undertake further modifications to the airframe or operating instructions to make the turbine modified aircraft perform consistently with CAR 3.120.'" Dkt. 206 at 5–6 (quoting Dkt. 206-1 at 40 (Pottinger's Report)).

Plaintiffs' other expert, Dr. Todd Coburn opines that: "'[i]nvestigation into the subject crash leads to the conclusion that the Texas Turbine & Stolairus certification effort was lacking,'" and that the FAA's testing was insufficient because it failed to "verify that the center of gravity limits of the altered aircraft were unchanged," because missing entries in the Flight Test Report left "the configuration of the aircraft during the investigation of stalls for an aft-loaded aircraft somewhat in question" and TCC failed to test the takeoff flap settings. Dkt. 206 at 7 (quoting Dkt. 206-3 at 1–2, 4, 7 (Coburn Report)). However, Coburn admitted during his deposition, that he had no data to suggest that testing in the takeoff flap setting would have revealed anything different about the controllability or stability of the airplane. Dkt. 278 at 10 (citing Dkt. 282-2 at 155:10-23 (Coburn Depo.)). Coburn also clarified that it "appear[ed]" to him that CAR requirements "may not have been fully met." Dkt. 282-2 at 156:24–157:6.

[56] The Court found that "Pottinger is not qualified to opine on other topics including the legal, regulatory, or testing obligations of TTC or RAC, or any duty to warn imposed upon TTC or RAC." Dkt. 313 at 15, 19. Further, Coburn based at least part of his assessment that "certification analysis and flight tests were insufficient and did not meet . . . FAA regulations," Dkt. 206-3 at 4, on the revised airworthiness directives that the Court has excluded as untrustworthy and unreliable, *see* Dkt. 321.

13

facts showing TTC failed to comply with FAA Certification Process or Canadian and FAR Standards.[57]

TTC describes in detail how the FAA tested and assessed TTC's turbine conversion kit installed in a DHC-3 Otter on floats and concluded that it met or exceeded all applicable standards, and TCC attaches records showing there was no indication that its modification was defective.[58]

Although TTC's Compliance with the FAA Certification Process and Canadian and FAR Standards is not an absolution of liability or sufficient to defeat Plaintiffs' claims,[59] such compliance does weigh heavily against finding outrageous conduct on the part of TCC.

Plaintiffs next point to their experts' opinions that TTC had actual knowledge of the rudder authority issue gained through TTC's flight testing protocol, disregarded said knowledge and failed to adequately warn pilots about the issue, and that this amounts to clear and convincing evidence of TCC's reckless indifference.[60] The Court has since excluded Plaintiffs' expert Pottinger's testimony on topics regarding the legal, regulatory, or testing obligations of

---

[57] Plaintiffs other allegations relating to revisions in airworthiness directives following another Otter crash are inadmissible, as the Court previously concluded. *See* Dkts. 1 at ¶ 9; 321 at 11–14.

[58] *See* Dkts. 191 at 3–15; *see also* Dkts. 191-7, 191-9, 191-29, 191-30 191-31(Reports of Flights Tests); 191-33 (Maintenance Manual Supplement); 191-34 (Airplane Flight Manuel Supplement).

[59] *See Sowinski v. Alaska*, 198 P.3d 1134, 1146 n.28 (Alaska 2008) (Generally, compliance with a statute or regulation does not constitute a complete defense to tort liability); *Wilson v. Piper Aircraft Corp.*, 282 Or. 61, 70-71, 577 P.2d 1322, 1327–28 (Or. 1978) ("Although we have held that compliance with the FAA safety standards does not preclude the possibility of liability for a design defect, we nevertheless believe that in a field as closely regulated as aircraft design and manufacture, it is proper to take into consideration, in determining whether plaintiffs have produced sufficient evidence of defect to go to the jury, the fact that the regulatory agency has approved the very design of which they complain after considering the dangers involved.") *superseded by statute on other grounds*, *see Purdy v. Deere and Co.*, 281 Or. App. 407, 410–11, 386 P.3d 2, 6 (Or. App. 2016) (citing ORS 30.920(1) and explaining Oregon legislature abrogated "reasonable manufacturer" test in favor of "consumer expectations" test).

[60] Dkt. 206 at 10–12.

Defendants, or any duty to warn imposed upon Defendants.[61] Plaintiffs' expert Dr. Cochran opined that the aircraft crashed because "its stability and control characteristics had been changed by the STCs of [TTC] and Stolairus, which were implemented by [RAC], that changed the engine and propeller and the wing, respectively, of the accident aircraft so that the pilot was unable to control it during an attempted takeoff [.]"[62] Dr. Cochran further explained in his deposition: "'[T]he problem is that the aircraft is modified with more power, and it has more torque – on the propeller. And it's modified near the stall angle of attack. The – the moments due to the propeller reaction torque and the P-factor, in my opinion, apparently are such that they caused the aircraft to yaw . . . to the right and roll to the right.'"[63]

However, even as Plaintiffs' experts claim that TTC should have modified operating instructions, and that TTC should have issued additional warnings, these experts do not point to actions on the part of TTC that show TCC behaved in an outrageously reckless manner and do not themselves conclude as much.[64] Regardless of any alleged incompetence or negligence on the part of TCC or disputes over what caused the crash, Plaintiffs offer no evidence that TTC's actions could be considered reckless by industry standards, and there is no dispute of material fact that TCC intended to injure Plaintiffs or that it knew that Plaintiffs would or could be injured as a result of its actions.[65]

---

[61] Dkt. 313 at 15, 19; *see also* Dkt. 206 at 5–7.

[62] Dkt. 206 at 9 (quoting Dkt. 206-2 at 23 (Cochran Report)).

[63] Dkt. 206 at 10 (quoting Dkt. 206-6 at 54:15–22 (Cochran Depo.)).

[64] *See e.g.*, Dkts. 206-3 at 2 (Coburn noting, "it seems more effort could have been invested[.]"); 282-2 at 156:24–157:6.

[65] *See Hagens Ins., Inc.*, 139 P.3d at 1225; *Robles*, 29 P.3d at 840, 846.

Moreover, evidence of other similar accidents involving the same model aircraft and modifications, which the Court has limited,[66] do not present a genuine issue of material fact regarding TCC's allegedly outrageous conduct. Even construing the evidence and all reasonable inferences in favor of Plaintiffs, no reasonable jury could find by clear and convincing evidence that punitive damages are warranted. Accordingly, TCC is entitled to judgment as a matter of law on the issue of punitive damages and TCC's Motion is **GRANTED**.

## V. CONCLUSION

For the above reasons, RAC's Motion for Partial Summary Judgment at Docket 168 and TTC's Motion for Summary Judgment on Punitive Damages Claims at Docket 191 are **GRANTED**. Further, the Court concludes oral argument is unnecessary and Defendants' Motions at Dockets 267 and 288 are **DENIED**.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 28th day of December 2020.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[66] *See* Dkts. 187 (TTC Motion in Limine to Exclude Evidence of Other Accidents); 249 (RAC Motion to Join Dkt. 187); 323 (Order Granting in Part and Denying in Part Motion at Dkt. 187) (excluding any evidence of an accident where the craft lacked the STOL Kit modification and limiting admissibility of evidence of other accidents for the purpose of showing notice).