IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOLYN L. SPECTER, as Personal Representative of the ESTATE OF JAMES E. SPECTER, M.D., and on behalf of herself, and the Surviving Family Members including KEVIN SPECTER, and DAVID W. WOOD, JR. and MARIANNE WOOD, Individually an on behalf of the marital community,<br><br>                            Plaintiffs,<br>v.<br><br>TEXAS TURBINE CONVERSIONS, INC., a Texas Corporation, RECON AIR CORPORATION, a foreign corporation,<br><br>                            Defendants. | Case No. 3:17-cv-00194-TMB<br><br>ORDER ON MOTION IN LIMINE TO PRECLUDE ADMISSION OF NTSB REPORTS AND FAA EXHIBITS DESCRIBED IN TESTIMONY OF MADDEN (DKT. 186) AND MOTION FOR HEARING (DKT. 289) |

## I. INTRODUCTION

This matter comes before the Court on Plaintiffs' "Motion in Limine to Preclude Admission of the NTSB Reports About This Crash and In Addition The FAA Exhibits Described In The Testimony of Madden Should Be Excluded" (the "Motion").[1] Defendant Texas Turbine Conversions, Inc. ("TTC") opposes the Motion.[2] Defendant Recon Air Corporation ("RAC," and, together with TTC, "Defendants") joins TTC in opposition.[3] The Court ordered supplemental briefing by the parties to clarify their positions as to whether certain documents created by the

---

[1] Dkt. 186-1 (Motion).

[2] Dkt. 215 (Response in Opposition).

[3] Dkt. 237 (RAC Joinder to Dkt. 215).

1

National Transportation Safety Board ("NTSB") should be excluded.[4] The matter is fully briefed by the parties.[5] Oral argument on the Motion was requested by TTC, however, the Court finds the matter suitable for disposition without oral argument.[6] For the following reasons, the Motion at Docket 186 is **GRANTED in part and DENIED in part**. The Motion for Hearing at Docket 289 is **DENIED**.

## I. BACKGROUND

The background facts of this case are set out in detail in this Court's order at Docket 313. The facts are incorporated by reference and will not be repeated here.[7]

The NTSB investigated the crash involving DeHavilland DHC-3 "Otter" No. N928RK (the "aircraft" or "plane").[8] As part of its investigation, the NTSB collected witness statements, took photos and analyzed the crash site, conducted a weight and balance analysis, and reviewed the flight conditions on East Wind Lake, among other things.[9] It issued multiple reports in connection with the crash, including a Probable Cause Report, Final Report, and Data Summary (the "Reports").[10] In the Reports, the NTSB relied on facts collected through its investigation and

---

[4] Dkts. 312 (Text Order re: Supplemental Briefing); 315 (Plaintiffs' Supplemental Brief); 316 (Decl. of A. Brodkowitz re: Plaintiffs' Supplemental Brief); 319 (TTC Supplemental Brief); 320 (RAC Joinder to Dkt. 319).

[5] Dkts. 186-1; 215; 237; 281 (Reply); 315; 319; 320.

[6] Dkt. 289 (Motion for Hearing).

[7] Dkt. 313 (Order on Parties' Motions in Limine re: Certain Expert Testimony).

[8] *See* Dkt. 186-2 (NTSB Probable Cause Report).

[9] *See, e.g.*, Dkt. 215-1 (NTSB Docket Summary ("NTSB Docket")) (listing the various documents produced by NTSB in connection with its investigation).

[10] Dkts. 186-2; 186-3 (NTSB Final Report); 186-4 (NTSB Data Summary). These are separate and apart from any reports on the NTSB Docket.

2

reached conclusions about the chain of events leading to the crash and the probable cause of the crash.[11] The NTSB concluded that the probable cause of the accident was the

> pilot's decision to depart in dark night . . . which resulted in his subsequent spatial disorientation and loss of airplane control. Contributing to the accident was the pilot's failure to determine the airplane's actual preflight weight and balance and center of gravity (CG), which led to the airplane being loaded and operated outside of the weight and CG limits and to a subsequent aerodynamic stall.[12]

The NTSB determined that the aircraft exceeded its maximum weight by about 508.6 pounds and that the center of gravity was 4.08 inches aft of the aft center of gravity limit.[13]

Plaintiffs ask the Court to preclude the parties from referencing the Reports, including any legal conclusions, opinions, or probable cause determinations made by NTSB.[14] Plaintiffs assert that federal law precludes admission, legal conclusions are inadmissible, and the balance of the Reports should be excluded as untrustworthy under Federal Rule of Evidence ("FRE") 803(8).[15]

Separately, Plaintiffs ask the Court to preclude Defendants' expert Mark E. Madden from using videos and documents from the Federal Aviation Administration ("FAA") as part of his testimony in front of the jury.[16] Plaintiffs list four videos relating to spatial disorientation and

---

[11] *See* Dkt. 186-2.

[12] *Id.*

[13] Dkt. 186-3 at 1.

[14] Dkt. 186-1 at 4.

[15] *Id.* at 3–12.

[16] *Id.* at 12.

3

"Max-Vis" systems[17] that, Plaintiffs say, should be excluded because they are inadmissible hearsay, irrelevant, and unfairly prejudicial.[18]

Defendants oppose Plaintiffs' Motion.[19] They argue that federal law does not bar admission of the Reports, the Reports are not inadmissible hearsay or legal conclusions, the purported inability to cross-examine the NTSB investigator does not impact admissibility, and redacting the Reports is acceptable.[20] Defendants point out that Plaintiffs failed to object to large portions of the NTSB investigation in this case, including passenger statements and other factual findings such as the weight and balance analysis.[21] They further argue that defense expert Madden can use the subject FAA videos because they are demonstrative exhibits that help to clarify his testimony for the jury.[22]

In reply, Plaintiffs reiterate their arguments against admission of the Reports or FAA videos, but sharpen the focus of their Motion by conceding that "[t]he facts discussed . . . which are from the work of the NTSB investigation team are admissible—this would include, for example, photographs and measurements at the crash scene, the flight path, and other work actually

---

[17] According to one of the cited videos, the "Max-Viz Enhanced Vision system uses an infrared sensor and a visible light camera to display a real-time video image of the environment outside of the aircraft." *See* Max-Viz EVS600 Flight Evaluation, https://www.youtube.com/watch?v=hlblK6A8pEU (last visited Nov. 5, 2020) (video description); Dkt. 186-1 at 13.

[18] Dkt. 186-1 at 12–14.

[19] Dkts. 215; 237.

[20] Dkt. 215 at 2.

[21] *Id.* at 11 n.5. The Court later ordered supplemental briefing on these topics.

[22] *Id.* at 20.

4

performed by the NTSB."[23] Plaintiffs argue that since redaction of inadmissible material is impractical or impossible, the Reports should be excluded in their entirety.[24]

Through supplemental briefing, Plaintiffs provide the Court with more specific information as to which NTSB facts are admissible.[25] First, Plaintiffs provide an annotated copy of Exhibit 2 to their Motion at Docket 186-3, the NTSB Aviation Accident Final Report ("Exhibit 2" or "NTSB Aviation Accident Final Report"), indicating which factual information they view as admissible.[26] Plaintiffs do not contest the admissibility of: (1) pilot information; (2) aircraft and owner/operator information; (3) meteorological information and flight plan; (4) wreckage and impact information; (5) the description of the wreckage as NTSB found it; and (6) the aircraft flight path data, as contained in Exhibit 2.[27] Plaintiffs contest the admissibility of two studies done by NTSB and cited in Exhibit 2, the Weight and Balance Study and Airplane Performance Study, and move to exclude them.[28] Second, at the Court's request, Plaintiffs stated their position on the admissibility on other documents located on the NTSB Docket Summary located as Exhibit A to TTC's Response at Docket 215-1 ("Exhibit A" or "NTSB Docket").[29] The NTSB Docket contains several documents created or collected by the NTSB as part of its investigation, many of which appear to

---

[23] Dkt. 281 at 7.

[24] *See id.* at 7–8.

[25] *See* Dkts. 315; 316.

[26] Dkt. 316-1 at 3.

[27] Dkts. 315 at 2; 316-1 at 3–17.

[28] Dkt. 316-1 at 8–9, 13–14.

[29] Dkt. 312.

5

form the foundation for the Reports.[30] Plaintiffs do not contest the admissibility of the Wreckage Diagram, Photo Array, Pilot/Operator Aircraft Accident Report, and the Automatic Dependent Surveillance-Broadcast ("ADS-B") data that maps the plane's flight path (located in the Factual Figure and Tables document).[31] Plaintiffs seek to exclude all other documents on the NTSB Docket, including Civil Twilight information, the Medical Factual Report, and the two aforementioned studies.[32]

Defendants oppose exclusion of any factual reports, including any of the documents identified on the NTSB Docket, and argue that factual reports are admissible as a matter of law.[33]

## II. LEGAL STANDARD

Federal law and the FRE govern the admissibility of the Reports and FAA videos at issue. The NTSB is responsible for investigating aircraft accidents and charged with establishing the facts, circumstances, and their cause or probable cause.[34] NTSB officers or employees may enter the crash site and inspect any record that is related to the accident investigation.[35] Federal regulations clarify that the NTSB investigations may "result in a report or brief of the NTSB's conclusions" along with "factual records, safety recommendations, and other safety

---

[30] *See* Dkt. 215-1; *see also* NTSB: Docket Management System, ANC15FA071, https://data.ntsb.gov/Docket?ProjectID=91981 (last visited Dec. 16, 2020).

[31] Dkt. 315 at 3–4.

[32] *Id.* at 4–5.

[33] Dkt. 319 at 1–2.

[34] 49 U.S.C. § 1131(a)(1).

[35] 49 U.S.C. § 1134(a)(1)–(2). They may also inspect and test the crashed aircraft. *See* 49 U.S.C. § 1134(b).

information."[36] Investigations are not adversarial proceedings or conducted for the purpose of "determining the rights ... or blame of any person."[37] Federal regulations prevent "Board accident report[s]" from being admitted as evidence, but state that "factual accident reports" may be admitted.[38] The Board accident report is the report that "contain[s] the Board's determinations, including the probable cause of an accident[.]"[39] The factual accident report is the report that "contain[s] the results of the investigator's investigation of the accident."[40]

All evidence must also be admissible according to the FRE. Hearsay evidence is not admissible; however, FRE 803 lists several exceptions to that general rule.[41] FRE 803(8) allows certain records or statements from a public office (such as NTSB) to be admitted, including "factual findings from a legally authorized investigation."[42] FRE 803(8) states that public records can only be admitted if "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness."[43] Evidence must also conform with FRE 401 and 403, which allow the Court to exclude evidence that is not relevant or where the probative

---

[36] 49 C.F.R. § 831.4(b).

[37] *Id.* at § 831.4(c).

[38] 49 C.F.R. § 835.2.

[39] *Id.*

[40] *Id.*

[41] *See* Fed. R. Evid. 802, 803.

[42] Fed. R. Evid. 803(8)(A)(iii).

[43] Fed. R. Evid. 803(8)(B).

7

value of the evidence is substantially outweighed by unfair prejudice or other enumerated reasons.[44]

FRE 703 applies to Plaintiffs' claims regarding the Madden expert testimony. The rule states that evidence "need not be admissible for the opinion to be admitted[,] [b]ut if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helpinyeahg the jury . . . substantially outweighs their prejudicial effect."[45] An expert may use demonstrative exhibits in order to clarify his or her testimony or as a basis for their opinion.[46]

### III. ANALYSIS

The Motion and parties' supplemental briefing identify several areas of dispute relating to the NTSB Reports, in addition to their dispute over the use of FAA videos in Madden's testimony. For the reasons discussed below, the Motion is **GRANTED** as it pertains to the NTSB Reports identified in Exhibits 1–3 of Plaintiffs' Motion, but **DENIED** without prejudice as to the "Factual Information" section of Exhibit 2. The Motion is **GRANTED** as to the Weight and Balance document and the Civil Twilight document at Dockets 9–10 of the NTSB Docket, but **DENIED** without prejudice as to the Weight and Balance Study, Performance Study, Medical Factual

---

[44] *See* Fed. R. Evid. 401, 403.

[45] Fed. R. Evid. 703.

[46] *See Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1429 (9th Cir. 1991) ("The admissibility of demonstrative evidence lies largely within the discretion of the trial court.") (citation omitted); *Pac. MDF Prods., Inc. v. Bio-Mass Energy Concepts, LLC*, No. CIV. S-05-642 LKK/JFM, 2008 WL 4224559, at *3 (E.D. Cal. Sept. 12, 2008) (expert's demonstrative tool of economic projections admissible under FRE); 1 McCormick On Evid. § 12 (8th ed.) ("[T]he witness could give the jury a lecture or exposition about an expert methodology (a technique or theory) without attempting to apply the technique or theory to the facts.").

8

Report, and the Factual Figure and Tables document at Dockets 13, 19, 20, and 22 of the NTSB Docket.

The Court further **DENIES** without prejudice Plaintiffs' Motion to exclude potential use of FAA videos as part of Madden's expert testimony and will rule on the admissibility of Madden's potential use of these videos if and when offered at trial.

### A. NTSB Probable Cause Findings & Factual Information Contained in Reports

The parties appear to agree that probable cause findings are inadmissible and some factual information compiled by NTSB is admissible. The parties dispute, however, where to draw those lines. Specifically, the parties dispute the admissibility of both the factual summaries in the Reports and the documents that underpin those summaries.

The law is clear that NTSB factual findings are admissible, but probable cause findings and conclusions are not admissible.[47] Plaintiffs ask the Court to exclude the NTSB Reports and any "legal conclusions, opinions, or probable cause determinations of the NTSB."[48] Plaintiffs are

---

[47] *See* 49 C.F.R. § 835.2 ("Section 835.2"); *Chiron Corp. and PerSeptive Biosys., Inc. v. NTSB*, 198 F.3d 935, 941 (D.C. Cir. 1999) ("We agree with these recent decisions from the Fifth and Tenth Circuits, and also a decision from the Ninth Circuit . . . holding that, under the plain terms of the statute, NTSB reports are inadmissible in civil litigation."); *Benna v. Reeder Flying Serv.*, 578 F.2d 269, 272 (9th Cir. 1978); *Trishan Air, Inc. v. Dassault Falcon Jet Corp.*, 2011 WL 13182976, at *2 (C.D. Cal. April 19, 2011) (agreeing that NTSB probable cause reports are not admissible, but factual reports are admissible); *Britton v. Dallas Airmotive, Inc.*, No. 1:07–cv–00547–EJL, 2011 WL 13196592, at *2 (D. Idaho May 20, 2011) (no statutory bar to admission of factual accident reports).

While the Court agrees with Defendants that *Benna*'s precedential value is weakened by the enactment of Section 835.2, the *Benna* court's analysis regarding the prejudicial effect of NTSB probable cause reports remains convincing. *See* 578 F.2d at 272. Further, courts in this Circuit continue to cite *Brenna*. *See, e.g.*, *Britton*, No. 1:07–cv–00547–EJL, 2011 WL 13196592, at *2; *Escobar v. Nev. Helicopter Leasing LLC*, No. 13-00598 HG-WRP, 2020 WL 104672, at *3 (D. Haw. Jan. 8, 2020).

[48] Dkt. 186-1 at 4.

correct that probable cause determinations are properly excluded. Defendants appear to concede that the "single sheet probable cause report"[49] is not admissible but seek to utilize the accident report and other NTSB documents at trial.[50]

Although Section 835.2 references an "accident report" and a "factual accident report," the exhibits submitted by Plaintiffs do not clearly segregate into one of those two categories. There is no dispute, and the Court agrees, that Exhibit 1 at Docket 186-2 ("Exhibit 1") focuses on probable cause determinations and should be excluded. However, Exhibit 2 and Exhibit 3 at Docket 186-4 ("Exhibit 3") are less straightforward. Exhibit 2 contains four headings including "Analysis," "Probable Cause and Findings," "Factual Information," and "Preventing Similar Accidents."[51] Exhibit 3 contains headings including "Analysis," "Flight Events," "Probable Cause," and "Findings."[52] Defendants also assert that a plethora of other documents generated by NTSB, as listed on the public NTSB Docket, are admissible.[53] Plaintiffs agree that the "work of the NTSB investigation team [is] admissible," but dispute the admissibility of portions of the facts sections in the Reports and certain documents on the NTSB Docket.[54]

Congress, perhaps anticipating the value of a thorough investigation, limited the admissibility of NTSB Reports because of their prejudicial effect on a jury or fact-finder.[55] The

---

[49] Dkt. 186-2.

[50] Dkts. 215 at 6; 319 at 1–2.

[51] Dkt. 186-3.

[52] Dkt. 186-4.

[53] Dkts. 215 at 11 n.5; 319 at 1.

[54] *See* Dkts. 281 at 7; 315; 316.

[55] *See* 49 C.F.R. § 835.2; *Britton*, No. 1:07–cv–00547–EJL, 2011 WL 13196592, at *2.

10

Ninth Circuit has stated that a jury's consideration of a "probable cause" finding would "definitely prejudice the jury by unfairly placing a government stamp of officiality on the probable cause of the accident."[56] Each Report, on its face, cannot be admitted in its entirety because of the references to NTSB's probable cause findings. The question then turns to whether redacted versions of the Reports may be admitted.

Because the Reports contain probable cause analysis and findings, the Court finds that all portions of the Reports at Plaintiffs' Exhibits 1–3 are inadmissible, except for the "Factual Information" section of Exhibit 2 at pages 3–12.[57] The Court finds that the "Factual Information" section of Exhibit 2 is admissible, but the Court will defer decision on whether or how to redact this section from the Report.[58] The "Factual Information" section contains information that might be helpful to the jury in this case, such as information collected by NTSB about the aircraft, pilot, wreckage and impact.[59] This is information that may not be available elsewhere and the parties have indicated a desire to admit such information.[60]

---

[56] *Benna*, 578 F.2d at 272.

[57] *See* Dkt. 186-3. The "Additional Information" portion beginning on page 12 of the "Factual Information" section is properly excluded.

[58] Although Plaintiffs identify challenges associated with redacting Exhibit 2, 49 U.S.C. § 1154(b) and its implementing regulations do not prevent redaction. The Court may admit evidence from "[f]actual accident report[s]," which would cover the "Factual Information" section of Exhibit 2. *See* 49 C.F.R. § 835.2. Authority cited by Plaintiffs is consistent with this position. For example, in *Echevarria v. Caribbean Aviation Maintenance Corp.*, the court did not find redaction barred by federal law but instead concluded that the hearsay statements would be impossible to redact effectively and would be an inefficient use of resources. *See* 839 F. Supp. 2d 464, 466–67 (D.P.R. 2012).

[59] *See* Dkt. 186-3 at 8–9.

[60] *See* Dkts. 315 at 2–3 (stating that pilot, aircraft, meteorological, and wreckage and impact information is admissible); 319 at 1–2 (arguing that all factual reports are admissible). The Court finds that the parties do not dispute the admissibility of the Wreckage Diagrams, Photo Array, or

11

Four primary areas of dispute remain as it relates to the "Factual Information" section and related supporting documents on the NTSB Docket. First, Plaintiffs move to exclude the Weight and Balance Study.[61] Second, they move to exclude the Airplane Performance Study (the "Performance Study").[62] Third, they move to exclude the Medical Factual Report (the "Medical Report").[63] And fourth, they dispute the admissibility of hearsay statements contained in the "Factual Information" section.[64]

### *i. Weight and Balance Study*

Plaintiffs argue that the Weight and Balance Study is inadmissible because it is a "post-accident attempt to ascertain where items were located, how much they weighed and how the aircraft was loaded."[65] They assert that the study is based on "approximations, guesses and opinions" and thus is inadmissible.[66] Defendants counter that the Weight and Balance Study is based on "detailed weight calculations of the aircraft" and is "[c]onsistent with the fact-finding nature of NTSB investigations."[67]

The Court finds that the summary of the Weight and Balance Study in the "Factual Information" section is admissible. It further finds that the underlying documents on the NTSB

---

Pilot/Operator Aircraft Accident Report at Dockets 8, 11, and 14 of the NTSB Docket. As such, they are not excluded at this time.

[61] Dkt. 315 at 1–4.

[62] *Id.*

[63] *Id.* at 4.

[64] Dkt. 281 at 7–8; *see* Dkt. 316.

[65] *Id.* at 3.

[66] *Id.*

[67] Dkt. 319 at 3–4.

12

Docket, at Docket 19, are not inadmissible. The summary of NTSB's weight and balance calculations is part of NTSB's factual report, created as part of its investigation into the crash. Table 1 in Exhibit 2 includes a detailed breakdown of NTSB's weight and balance calculations, listing several components of the plane, the passengers on board, and their respective weights.[68] As Defendants point out, Plaintiffs' experts did not criticize the NTSB weight and balance calculations, and in fact, relied on them.[69] The Court finds that the summary of the Weight and Balance Study is relevant and reliable, and that its probative value is not substantially outweighed by unfair prejudice. The document at Docket 19 of the NTSB Docket, however, is more vulnerable to Plaintiffs' arguments. The document, listed as "Final Weight and Balance" appears to include the raw data used by NTSB to make their weight and balance findings.[70] Nevertheless, the document is not stylized as a report and it contains numerous handwritten notations without explanation.[71] Although this document appears to form part of the basis for NTSB's factual investigation and factual conclusions, the lack of context raises legitimate questions about its potential prejudice and/or probative value at trial. Since the document appears to be part of NTSB's factual investigation, the Court does not find the document inadmissible at this time, but will permit Plaintiffs to renew their Motion at trial.

---

[68] Dkt. 186-3 at 7.

[69] *See* Dkt. 319 at 5–6.

[70] *See* Final Weight and Balance, NTSB: Docket Management System, ANC15FA071, https://data.ntsb.gov/Docket?ProjectID=91981 (Dkt. 19) (last visited Dec. 16, 2020).

[71] *Id.*

*ii. Airplane Performance Study*

Plaintiffs object to the admission of the Performance Study because it "makes assumptions about handling and stall speeds" and Plaintiffs "cannot cross examine the NTSB [at trial] on the studies."[72] However, Plaintiffs do not object to admissibility of Figure 1 in Exhibit 2, a rendering of the aircraft flight path from the ADS-B data.[73] In response, Defendants argue that the Performance Study is part of the factual record; that Plaintiffs' objections go to the weight of the evidence, not admissibility; and that the inability to cross examine the NTSB is not fatal to admissibility.[74]

The Court finds that the Performance Study and the summary of the Performance Study in the "Factual Information" section of Exhibit 2 are admissible. As the Report states, "the ADS-B-capable aircraft uses an ordinary GPS receiver to derive its precise position from the global navigation satellite system . . . and then combines that position with any number of aircraft parameters" including speed and altitude.[75] The NTSB made calculations to determine the airplane's orientation and airspeed, which it notes "should not be considered exact."[76] The NTSB's concession that the calculations "should not be considered exact" does not mean its calculations are inadmissible. These calculations have some room for inherent error given the nature of the data involved, which is something Plaintiffs can raise at trial and the jury can weigh when

---

[72] Dkt. 315 at 3; *see also* 49 C.F.R. § 835.5(a) (Manner in which Testimony Is Given in Civil Litigation) ("Board employees are not permitted to appear and testify in court" in civil litigation.").

[73] *Id.* at 2.

[74] Dkt. 319 at 6–7.

[75] Dkt. 186-3 at 11.

[76] *Id.*

14

Case 3:17-cv-00194-TMB   Document 330   Filed 12/28/20   Page 14 of 20

evaluating the Report. There is no evidence that the NTSB's methodology was out of the ordinary or so error-prone that its factual findings should be deemed untrustworthy.

Additionally, the inability of Plaintiffs to cross examine NTSB employees at trial does not defeat the admissibility of the agency's factual reports. Federal law bars NTSB employees from testifying at trial in a civil litigation.[77] Plaintiffs had the opportunity to seek depositions of the relevant NTSB employees during the discovery phase of this case.[78] Plaintiffs' failure to pursue this opportunity is not a reason for the Court to exclude otherwise admissible evidence. Moreover, Plaintiffs have not cited authority that would require a party to depose NTSB employees before introducing NTSB factual reports at trial. As such, the Court finds that the Performance Study is relevant and reliable, that its probative value is not substantially outweighed by unfair prejudice, and therefore, is admissible. The Court further finds that the factual documents that underpin the Performance Study, at Docket 22 of the NTSB Docket, are admissible.[79]

### iii. Medical Factual Report

The Medical Report contains the results of the NTSB's investigation into Pilot John Furnia's ("Pilot Furnia") health prior to and during the flight, including the presence of medications or toxins.[80] Plaintiffs argue that the Medical Report is inadmissible because it is not relevant, contains hearsay, and could "mislead the jury into believing that the pilot suffered some

---

[77] 49 C.F.R. § 835.5(a).

[78] *See* 49 C.F.R. § 835.6 (Request for Testimony in Civil Litigation); *see also Breaux v. Haliburton Energy Servs.*, Nos. 04–1636 c/w 05–0896, 05–0897, 2006 WL 2460748, at *2 (E.D. La. Aug. 22, 2006) (discussing deposition of NTSB investigator).

[79] *See* Dkt. 215-1.

[80] *See* Dkt. 186-3 at 9–10.

15

sort of mid-air medical emergency."[81] Defendants respond that the Medical Report is relevant to Defendants' arguments regarding spatial disorientation and that, regardless of whether the Medical Report contains hearsay, that hearsay is still admissible under FRE 803(8).[82]

The Court finds that the Medical Report is admissible. The NTSB reviewed Pilot Furnia's FAA medical certification file, hospital treatment records, and FAA toxicology results to make a factual finding that the "pilot had not reported any active medical conditions or use of medications and had not sought medical care for his swollen leg."[83] These factual findings are summarized and cited in the "Factual Information" section of Exhibit 2. While the Medical Report contains hearsay, the Court finds that the Medical Report is admissible through the public records exception of FRE 803(8) and as part of NTSB's factual investigation of the crash, and does not lack trustworthiness.[84] Moreover, the Medical Report is relevant to Defendants' arguments regarding spatial disorientation and has a bearing on the jury's evaluation of potential cause or causes of the accident. Finally, it is not substantially more prejudicial to Plaintiffs than probative.

*iv. Hearsay Statements from NTSB Interviews*

The "Factual Information" section of Exhibit 2 also contains several statements which are hearsay, and potentially inadmissible under the FRE, such as statements made by Rainbow King

---

[81] Dkt. 315 at 4.

[82] Dkt. 319 at 8–9.

[83] *See* Medical Factual Report, NTSB: Docket Management System, ANC15FA071, https://data.ntsb.gov/Docket?ProjectID=91981 (Dkt. 13) (last visited Dec. 16. 2020).

[84] *See* Fed. R. Evid. 803(8). The Medical Report is the result of an investigation conducted by multiple NTSB medical officers and an FAA Aviation Accident Medical Case Review Physician. *See* Medical Factual Report, NTSB: Docket Management System, ANC15FA071, https://data.ntsb.gov/Docket?ProjectID=91981 (Dkt. 13) (last visited Dec. 16. 2020).

16

Lodge employees and Pilot Furnia.[85] Plaintiffs argue that the hearsay statements are not admissible and that the parties can have the relevant individuals testify at trial.[86] Defendants acknowledge the hearsay statements, but argue that the summary of their statements should be admitted under the public records hearsay exception.[87] Defendants further argue that the "investigative reports discussion of information obtained very shortly after the accident is crucial," due to decay in witness' memories or other reasons.[88] The Court finds merit to both arguments, and will defer any decision on the admissibility of the hearsay statements collected as part of the NTSB investigation, including those in the "Factual Information" section of Exhibit 2, until trial. The Court does not find them inadmissible at this time and will allow Plaintiffs to renew their objection at trial.

*v. Remaining Documents on NTSB Docket at Issue*

The Court finds that the Civil Twilight document at Docket 9 of the NTSB Docket is inadmissible.[89] This document is not a report or other document created by NTSB and the Court does not have enough information on which to evaluate its admissibility. As Plaintiffs state, however, the "information is reasonably available elsewhere," and the parties can present the same

---

[85] *See* Dkt. 186-3 at 3.

[86] Dkt. 281 at 7–8.

[87] Dkt. 215 at 7; Fed. R. Evid. 803(8).

[88] Dkt. 215 at 12.

[89] *See* Civil Twilight, NTSB: Docket Management System, ANC15FA071, https://data.ntsb.gov/Docket?ProjectID=91981 (Docket 9) (last visited Dec. 16, 2020).

17

or similar information in an admissible form.[90] NTSB's citation to civil twilight time on page 8 of Exhibit 2, however, is admissible because it is part of NTSB's factual report.[91]

Additionally, the Weight and Balance document at Docket 10 of the NTSB Docket is not admissible because the Court does not have enough information at this time on which to judge its trustworthiness. The information contained in Docket 10 appears to be incomplete and duplicated, at least in part, in both the "Factual Information" section of Exhibit 2 to the Motion and in Docket 19 of the NTSB Docket.[92]

Finally, the Factual Figures and Tables document at Docket 20 of the NTSB Docket is admissible, since it contains identical information to the admissible portions of Exhibit 2.[93]

### B. FAA Videos in Madden's Expert Testimony

Plaintiffs also move to preclude Defendants' expert Madden from utilizing certain FAA videos as part of his expert presentation.[94] Madden plans to testify on issues relating to the cause of the plane crash, including a theory that the Pilot suffered from spatial disorientation.[95] As part of his testimony, Madden identified certain videos, including the four videos cited in the Motion,

---

[90] *See* Dkt. 315 at 4.

[91] *See* Dkt. 186-3 at 8.

[92] The fact that the NTSB Docket has a Final Weight and Balance document at Docket 19, which is more comprehensive than the document at Docket 10, suggests that document 10 may be preliminary. It is not clear to the Court how document 10 of the NTSB Docket was used by NTSB, if at all.

[93] *See* Factual Figures and Tables, NTSB: Docket Management System, ANC15FA071, https://data.ntsb.gov/Docket?ProjectID=91981 (Dkt. 20) (last visited Dec. 16, 2020).

[94] Dkt. 186-1 at 12.

[95] Dkt. 170-11 at 18 (Madden Expert Report).

that he may wish to show the jury at trial.[96] Plaintiffs object, arguing that the videos are inadmissible hearsay because the producer of the video is not in court.[97] Defendants point out that an expert may rely on inadmissible evidence if its probative value substantially outweighs its prejudicial effect.[98] Defendants do not purport to introduce the videos at issue as evidence in this case; the only issue is whether the videos may be used by Madden as demonstratives in Madden's expert testimony.[99]

In his expert report, Madden identified that he hopes to use the videos to explain spatial disorientation and to describe the Max-Viz system in the aircraft.[100] The Court, in a separate order, did not exclude testimony relating to Madden's theory.[101] The Court finds that the videos are relevant to the Defendants' and Madden's spatial disorientation theory since they help to explain the mechanics of the concept and the equipment on the aircraft. However, the Court does not reach the question of whether their probative value substantially outweighs their prejudicial effect. Plaintiffs may re-assert their objection at trial, when the Court will have more comprehensive information about the proffered testimony and proposed exhibits.

---

[96] *See* Dkts. 170-11; 186-1 at 12–13.

[97] Dkt. 186-1 at 13.

[98] Dkt. 215 at 19; Fed. R. Evid. 703.

[99] Dkt. 215 at 20.

[100] Dkts. 215 at 20–21; 170-11.

[101] *See* Dkt. 317 at 6–9 (Order on Parties' Motions in Limine to Exclude Certain Expert Testimony Regarding Spatial Disorientation).

## IV. CONCLUSION

For the above reasons, Plaintiffs' Motion at Docket 186 is **GRANTED in part and DENIED in part**. The Motion is **GRANTED** as it pertains to the NTSB Reports identified in Exhibits 1–3 of Plaintiffs' Motion but **DENIED** without prejudice as to the "Factual Information" section of Exhibit 2, as limited above. The Motion is **GRANTED** as to the Weight and Balance document and the Civil Twilight document at Dockets 9–10 of the NTSB Docket but **DENIED** without prejudice as to the Weight and Balance Study, Performance Study, Medical Factual Report, and the Factual Figure and Tables document at Dockets 13, 19, 20, and 22 of the NTSB Docket.

The Motion as it pertains to the four FAA videos cited in Mark Madden's expert report is **DENIED** without prejudice.

The Motion for Hearing at Docket 289 is **DENIED**.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 28th day of December, 2020.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE