IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOLYN L. SPECTER, as Personal Representative of the ESTATE OF JAMES E. SPECTER, M.D., and on behalf of herself, and the Surviving Family Members including KEVIN SPECTER, and DAVID W. WOOD, JR. and MARIANNE WOOD, Individually an on behalf of the marital community,<br><br>Plaintiffs,<br>v.<br><br>TEXAS TURBINE CONVERSIONS, INC., a Texas Corporation, RECON AIR CORPORATION, a foreign corporation,<br><br>Defendants. | Case No. 3:17-cv-00194-TMB<br><br>ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE LEARNED INTERMEDIARY AND SOPHISTICATED USER DEFENSES (DKT. 189) |

The matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment (the "Motion") on the Learned Intermediary and Sophisticated User Defenses.[1] Defendant Texas Turbine Conversions, Inc. ("TTC") opposes Plaintiffs' Motion, and Recon Air Corporation ("RAC") joins TTC's Opposition.[2] The Motion has been fully briefed and is ready for decision without oral argument.[3] For the following reasons, the Motion for Partial Summary Judgment at Docket 189 is **GRANTED**.

---

[1] Dkt. 189 (Motion).

[2] Dkts. 223 (TTC's Opposition to Motion); 236 (RAC Joinder). TTC and RAC are the remaining Defendants in this action and will be referred to collectively as "Defendants."

[3] *See* Dkts. 189 at 2 (Plaintiffs request oral argument); 189-1 (Memorandum of Law); 257 (Plaintiffs' Reply).

1

## I. BACKGROUND

The background facts of this case are set out in detail in this Court's Order at Docket 313. The facts are incorporated by reference and will not be repeated here.[4]

In its Answer to Plaintiffs' Complaint, TTC denies liability for the crash and asserts that all of Plaintiffs' claims are barred by the learned intermediary and sophisticated user defenses.[5] Plaintiffs filed the present Motion seeking to "exclude any attempt [by Defendants] to 'interject' [the defense] into the future trial."[6] Plaintiffs state that the learned intermediary and sophisticated user defenses only apply to failure-to-warn claims.[7] Although Plaintiffs acknowledge their Complaint asserts "state law tort claims for design defect and failure to warn under legal theories of negligence, strict liability and breach of warranty," Plaintiffs argue that the learned intermediary and sophisticated user defenses have no application given the facts of the case because Defendants offered no relevant warning.[8] Plaintiffs' experts have identified two warnings they allege should have been given: (1) "[a] pilot should be warned not to use take-off flaps on take-off, but to use climb flaps, as was done during testing by [TTC]; and [(2)] [t]he aircraft has a tendency to roll right during take-off."[9] Plaintiffs point out TCC did not offer these warnings and does not dispute that it did not offer such warnings.[10]

---

[4] Dkt. 313 (Order on Parties' Motions in Limine re: Certain Expert Testimony).

[5] Dkts. 17 at 15 ¶ 7, 16 ¶ 15 (TTC's Answer); 189-1 at 3.

[6] Dkts. 189-1 at 4; 257 at 2–3.

[7] *See* Dkt. 189-1 at 4–7.

[8] *Id.* at 2–5, 7.

[9] Dkts. 189-1 at 3, 6; 257 at 3–4.

[10] Dkts. 189-1 at 5–7; 257 at 3–4.

In opposition, TTC notes that under Alaska law the learned intermediary defense applies in the context of pharmaceutical companies and prescribing physicians, but urges the Court to extend the doctrine to the relationship between pilots and passengers and permit it to assert the defense in this case.[11] TTC states that as the holder of the Supplemental Type Certificate ("STC") with the ability to modify the DHC-3 Otter from its original configuration, it must, among other responsibilities, provide purchasers of its products with an Airplane Flight Manual Supplement ("AFMS").[12] The AFMS must be approved by the Federal Aviation Administration ("FAA") and contains information about safe operation of the aircraft, including operating limitations and procedures, aircraft performance, and loading information.[13]

Thus, TTC argues that it provided the converted aircraft and the AFMS to purchaser Rainbow King Lodge and to Pilot John Furnia, fulfilling its responsibilities under the applicable aviation regulations.[14] TTC argues Pilot Furnia was in control of the plane, was the "'user'" of the airplane, was furnished with the necessary instructions and warnings, and was an experienced user—having logged over 400 hours in the aircraft.[15] TTC also argues that Plaintiffs' expert, Mark Pottinger, whose opinion forms the main support for Plaintiffs' failure to warn claim, is not

---

[11] Dkt. 223 at 11–13. Plaintiffs point out the sophisticated user defense similarly applies where the consumer of a product is sophisticated in its use and is as aware of the product dangers as the manufacturer. Dkt. 189-1 at 5 n.1 (citing *Webb v. Special Elec. Co., Inc.*, 63 Cal. 4th 167, 182, 370 P.3d 1022, 1031 (2016)).

[12] Dkt. 223 at 2.

[13] *Id.*

[14] *Id.* at 3. TTC incorporates by reference arguments made in its Motion for Summary Judgment for Failure to Warn, Dkt. 173, and in its Opposition to Plaintiffs' Motion for Partial Summary Judgment on Federal Preemption and GARA, Dkt. 212. *Id.*

[15] *Id.* at 12–13.

3

qualified to opine as to what duties TTC may have had or what warnings TTC should have provided.[16]

RAC joins in TTC's Opposition and adds that, as the installer of the short takeoff and landing kit (the "STOL Kit") and turbine modification, RAC had no duty or ability to issue the warnings Plaintiffs suggest were required.[17] RAC points out that it is not required by federal law, and "no expert has opined, that RAC had a duty to inspect TTC's flight protocols, disregard the FAA's certification process for the TTC [STC,] independently determine whether TTC's flight protocols were sufficient, revise/re-submit and re-certify the already approved AFMS . . . and then provide pilots with this new AFMS."[18] Further, RAC argues that Plaintiffs incorrectly suggest that RAC somehow played a role in the design or manufacturing of the turbine conversion kit.[19]

## II. LEGAL STANDARD

*A. Summary Judgment*

Summary judgment is appropriate where, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party,[20] "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[16] *Id.* at 13–14.

[17] Dkt. 236 at 2–3, 5–6.

[18] *Id.* at 9–10.

[19] *Id.* at 3, 5 ("'*Defendants* failed to properly design the modifications, and test the aircraft once the modifications were installed, and then warn pilots of the issues related to aircraft performance.'") (emphasis added) (quoting Dkt. 189-1 at 2–3).

[20] *Scott v. Harris*, 550 U.S. 372, 378 (2007).

4

law."[21] Material facts are those which might affect the outcome of the case.[22] A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[23] "There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion."[24] A movant's burden may be met by "'showing' . . . that there is an absence of evidence to support the nonmoving party's case."[25] Thus, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[26]

Once a movant has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify facts which show a genuine issue for trial.[27] Evidence introduced in opposition to a summary judgment motion does not have to be the kind that would be admissible at trial; but may be any type of evidence identified in Fed. R. Civ. P. 56(c).[28] However, "conclusory

---

[21] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Jensinger v. Nev. F. Credit Union*, 24 F.3d 1127, 1130–31 (9th Cir. 1994).

[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

[23] *Id.* at 248.

[24] *Mills v. Wood*, No. 4:10-CV-00033-RRB, 2015 WL 2100849, at *1 (D. Alaska May 6, 2015), *aff'd in part*, 726 F. App'x 631 (9th Cir. 2018) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[25] *Celotex Corp.*, 477 U.S. at 325.

[26] *Anderson*, 477 U.S. at 249.

[27] *Id.* at 323–24.

[28] *See, e.g.*, *Celotex*, 477 U.S. at 323–24; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987); *Fraser v. Goodale,* 342 F.3d 1032, 1036–37 (9th Cir.

5

Case 3:17-cv-00194-TMB   Document 336   Filed 01/21/21   Page 5 of 18

assertions are wholly insufficient to sustain either the defendants' burden or the district court's grant of summary judgment."[29] "A party opposing a summary judgment motion must produce '*specific* facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative as to any [material] fact claimed to be disputed."[30]

   *B. Negligence*

Under Alaska law, in order to establish a prima facie case of ordinary negligence, Plaintiffs must present evidence to satisfy the following elements: (1) duty; (2) breach of duty; (3) causation; and (4) harm.[31] They are "separate and distinct elements of a negligence claim, all of which must be proven before a defendant can be held liable for the plaintiff's injuries."[32]

/ / /

/ / /

---

2003), *cert. denied*, 541 U.S. 937 (2004) (reversing a grant of summary judgment, holding that the district court should have considered unsworn, arguably inadmissible statements written by the plaintiff in a diary and noting " [a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."); *Rosenfeld v. Mastin*, No. CV 11–7002–DOC(E), 2013 WL 5705638, at * 4–5 (C.D. Cal. Oct. 15, 2013).

[29] *Walker v. Sumner*, 917 F.2d 382, 387 (9th Cir. 1990); *see also Hilsinger v. Enerco Grp., Inc.*, No. 3:13-cv-00003-TMB, 2014 WL 12569381, at *2 (D. Alaska Sept. 3, 2014); *Mills v. Wood*, 2015 WL 2100849, at *1 (citing *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005) and *Walker*, 917 F.2d at 387 ("In general, in ruling on a motion for summary judgment, a court may not weigh the evidence or judge the credibility of witnesses . . . . However, this rule does not apply to conclusory statements unsupported by underlying facts.").

[30] *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (quoting *Ruffin v. County of Los Angeles,* 607 F.2d 1276, 1280 (9th Cir. 1979)).

[31] *Lyons v. Midnight Sun Transp. Servs., Inc.*, 928 P.2d 1202, 1204 (Alaska 1996).

[32] *Id.*

*C. Strict Liability Claims*

Under Alaska law, "[a] product may be defective because of a manufacturing defect, a defective design, or a failure to contain adequate warnings."[33] A product is defectively designed if:

> [(1)] the plaintiff proves that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or (2) the plaintiff proves that the product's design proximately caused injury and the defendant fails to prove, in light of the relevant factors, that on balance the benefits of the challenged design outweigh the risk of danger inherent in such design.[34]

In general, for a consumer warning to be adequate, it should: "[(]1) clearly indicate the scope of the risk or danger posed by the product; [(]2) reasonably communicate the extent or

---

[33] *Shanks v. Upjohn Co.*, 835 P.2d 1189, 1194, 1199–1200 (Alaska 1992) (citing *Caterpillar Tractor Co. v. Beck*, 593 P.2d 871, 878 n.15 (Alaska 1979)); *In re Crash of Aircraft N93PC on July 7, 2013, Soldotna, Alaska*, No. 3:15-cv-0112-HRH [Consolidated with No. 3:15-cv-0113-HRH and No. 3:15-cv-0115-HRH], 2020 WL 2739173, at *3 (D. Alaska May 26, 2000).

[34] *Beck*, 593 P.2d at 886; *Kirst v. Ottosen Propeller & Access. Inc.*, No. 3:16-cv-00188-TMB, 2018 WL 9943557, at *7 (D. Alaska Mar. 31, 2018); *In re Crash of Aircraft N93PC on July 7, 2013, Soldotna, Alaska*, No. 3:15-cv-0112-HRH, 2020 WL 2739173, at *3 ("Under Alaska law, to prevail on a products liability claim, a plaintiff must prove that 1) the product was defective, 2) the product was defective when it left the possession of the defendant, and 3) a defect in the product was a legal cause of the plaintiff's injuries.") (citing Alaska Civil Pattern Jury Instruction 7.02); *Ellis v. Coleman Co.*, 232 F.3d 894, 2000 WL 1131893, at *2 (9th Cir. 2000) (unpublished opinion) (noting that the Alaska Supreme Court routinely refers to and follows the comments to Restatement (Second) of Torts § 402A when addressing issues of Alaska product liability law and that "where the Alaska Supreme Court has specifically declined to follow § 402A's Comments it has done so to adopt a rule of increased liability against manufacturers.") (citing *Palmer G. Lewis Co. v. Arco Chem. Co.*, 904 P.2d 1221, 1231 (Alaska 1995); *Prince v. Parachutes, Inc.*, 685 P.2d 83, 87 (Alaska 1984); *Hiller v. Kawasaki Motors Corp.*, 671 P.2d 369, 372 (Alaska 1983); *Shanks,* 835 P.2d at 1198 (refusing to adopt Comment K because many courts had interpreted it to be a blanket immunity for drug manufacturers, opting instead for a traditional analysis leaving the potential for liability open)).

7

seriousness of harm that could result from the risk or danger; and [(]3) be conveyed in such a manner as to alert the reasonably prudent person."[35]

### III. ANALYSIS

Plaintiffs move for summary judgment, arguing that Defendants should be precluded from asserting the learned intermediary and sophisticated user defenses.[36] First, the Court finds that the sophisticated user defense applies only in the context of failure to warn claims and any application of this defense outside of this scope is not permitted. Second, because Alaska only recognizes the learned intermediary defense in the drug manufacturer/physician context, Defendants may not assert this defense. According, the Court **GRANTS** Plaintiffs' Motion.

*A. Applicability of the "Sophisticated User" Defense to Failure to Warn Claims*

Although some courts apply the learned intermediary and sophisticated user defenses interchangeably,[37] the sophisticated or "knowledgeable" user defense applies where the consumer of the product is sophisticated in its use, has special knowledge, or is as aware of the dangers as

---

[35] *Shanks*, 835 P.2d at 1199–1200 (noting that "conceptual problems that exist in determining the boundary between negligent and strict liability failure to warn and the practical difficulties facing courts and juries in applying these principles" and that "[n]egligence-like language inevitably creeps into strict liability failure to warn analysis, both in the context of determining which risks require a warning and in determining whether a warning is adequate." ) (citing, *inter alia*, W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 99, at 697–98 (5th ed. 1984)).

[36] Dkt. 189-1 at 4.

[37] *See, e.g.*, *Parker v. Schmeide Mach. & Tol Corp.*, 445 F. App'x 231, 233, 237–38 (11th Cir. Oct. 21, 2011) (applying Georgia law) (unpublished opinion); *Russell v. Ashland, Inc.*, 574 F.Supp.2d 957, 958–59 (W.D. Ark. 2008) (applying Arkansas law); *Mann v. Lincoln Elec. Co.*, No. 1:06–CV–17288, 2010 WL 4117417, at *1, *6–7 (N.D. Ohio, Oct. 15, 2010) (applying South Dakota law); *see also* Kenneth M. Willner, *Failures to Warn and The Sophisticated User Defense*, 72 Va. L. Rev. 579 (1988). Plaintiffs devote only a footnote to differentiating the two defenses, Dkt. 189-1 at 5 n.1, and TCC does not appear to draw a distinction, *see* Dkt. 223 at 11–15.

the manufacturer.[38] "The sophisticated user defense does not require a user's actual awareness of potential hazards. Rather a product manufacturer or supplier is not liable for failing to warn a sophisticated user if the user knew or should have known of the product's risk in light of his training or skill."[39] Alaska courts, for example, have considered the application of the sophisticated users defense in the context of a suit involving a propane retailer who was injured and alleged the propane distributer failed to offer adequate warnings or sufficient training to the retailer.[40]

Here, Plaintiffs acknowledge that the sophisticated user defense is applicable in the context of a failure to warn claim.[41] Likewise, Defendants appear to state that such a defense applies to failure to warn claims in product liability suits.[42] Thus, it appears the parties are in agreement about the scope of this defense and that it does not have broad applicability to all of Plaintiffs' asserted claims. Accordingly, to the extent Plaintiffs ask the Court to bar Defendants from

---

[38] *See Robles v. Shoreside Petro., Inc.*, 29 P.3d 838, 843 (Alaska 2001); *see also Webb*, 63 Cal. 4th at 182, 370 P.3d at 1031 ("This defense is based on a Restatement provision stating that warnings are unnecessary if a product's dangers are readily observable and the supplier has reason to expect the user will perceive them."); *Johnson v. American Standard, Inc.*, 43 Cal. 4th 56, 73–75, 74 Cal. Rptr. 3d 108, 179 P.3d 905, 916–17 (Cal. 2008).

[39] *Webb*, 1031 63 Cal. 4th at 182, 370 P.3d at 1031. Alaskan courts have looked to California courts' application of certain tort law principles, and the Court finds California courts' reasoning to be persuasive authority on this issue. *See Beck*, 593 P.2d at 878–80, *superseded by statute on other grounds*.

[40] *Robles*, 29 P.3d at 843 (rejecting the sophisticated user defense as applied to a propane retailer where a jury found that the propane distributor failed to offer adequate training to retailer).

[41] Dkt. 189-1 at 4 ("This defense applies only to the failure-to-warn claims asserted by the Plaintiffs."). Despite acknowledging that the defense is applicable in failure to warn claims, Plaintiffs simultaneously argue that passenger Plaintiffs were the ultimate consumer or "user" *and* that Defendants should have provided Pilot Furnia, the "user" of the aircraft, with specific additional warnings. *Id.* at 7–9.

[42] *See* Dkt. 223 at 3, 7–8, 10–12 (briefing the issue as to TTC's duty to warn and in the context of the failure to warn claims and treating Pilot Furnia as the sophisticated user or learned intermediary).

asserting the sophisticated user defense outside of the failure to warn context, Plaintiffs' Motion is **GRANTED**.[43]

### B. Scope of the "Learned Intermediary" Defense in Alaska

Generally, a manufacturer has a duty to issue warnings to the ultimate consumer about known risk of the use of a product,[44] and a manufacturer can be held strictly liable for failing to do so.[45] In certain limited circumstances, however, the sale of the product to a learned intermediary shifts the duty, and instead of offering the warning to the ultimate consumer, the duty is met by warning the learned intermediary.[46]

---

[43] Indeed, the weight of authority shows that the sophisticated user defense is exclusively used in the failure to warn context. *See, e.g.*, *Johnson v. Honeywell Intern. Inc.*, 179 Cal. App. 4th 549, 556, 101 Cal. Rptr. 3d 726, 731 (Cal. App. Ct. 2009); *Cabasug v. Crane Co.*, 988 F. Supp. 2d 1216, 1220– 23 (D. Haw. 2013); *Castellanos v. Louisville Ladder, Inc.*, No. C–082009 MMC, 2009 WL 1299133, at *1–2 (N.D. Cal. May 11, 2009). Out of an abundance of caution, to the extent Plaintiffs' Motion seeks to bar application of the sophisticated user defense in the failure to warn context, the Motion is **DENIED**.

[44] *See Hiller*, 671 P.2d at 372; *Robles*, 29 P.3d at 842 (Alaska 2001) ("Alaska has not explicitly adopted [Restatement (Second) of Torts] § 388. But in an analogous area, this court has recognized a manufacturer's strict liability for failure to warn if a product is defective because of 'misinformation or inadequate information about risks involved in using the product or about minimizing or avoiding harm from such risks'") (quoting *Prince*, 685 P.2d at 87).

[45] *Prince*, 685 P.2d at 87 (a product, although faultlessly manufactured and designed may be defective when placed in the consumer's hands without first giving an adequate warning concern the manner in which to safely use the product).

[46] *See Koho v. Forest Lab., Inc.*, 17 F. Supp. 3d 1109, 1119 (W.D. Wash. 2014) (The "learned intermediary" defense relieves a pharmaceutical drug supplier or manufacturer of the duty to warn an ultimate consumer or user of a known hazard where there is an intermediary with knowledge of the hazard; and the "manufacturer's duty is satisfied if the product is properly labeled and the prescribing physician has adequate warning as to any possible dangers."); Restatement (Third) of Torts: Prod. Liab. § 6(d) & cmt. d (1998) (a manufacturer of prescription medications or medical devices has a duty to advise the prescribing medical professional of the proper use and potential risks of its products, rather than a duty to advise the patient or the public); *see also Sterling Drug, Inc. v. Cornish*, 370 F.2d 82, 85 (8th Cir. 1966) (in situations involving prescription drugs, "the purchaser's doctor is a learned intermediary between the purchaser and the [drug] manufacturer").

The most common application of the learned intermediary defense, and the application adopted by Alaska courts, provides that a drug manufacturer's duty to warn runs to the physician not the patient, and the prescribing physician is treated as the ultimate consumer.[47] The rationale behind the learned intermediary doctrine is threefold:

> (1) The doctor is intended to be an intervening party in the full sense of the word. Medical ethics as well as medical practice dictate independent judgment, unaffected by the manufacturer's control, on the part of the doctor. (2) Were the patient to be

---

[47] *Shanks*, 835 P.2d at 1194 n.6, 1200 ("In the case of prescription drugs, the warnings should be sufficient to put the physician on notice of the nature and extent of any scientifically knowable risks or dangers inherent in the use of the drug. . . . In determining the adequacy of the warnings and directions in the context of typical prescription drugs, it is appropriate for the trier of fact to consider that the warnings and directions were directed to the prescribing physician rather than to the patient."); *see Cusack v. Abbott Lab. Inc.*, No. 3:16-cv-00166-SLG, 2017 WL 3688149, *2–3, *2 n.21 (D. Alaska Jan. 17, 2017); *Hill v. Novartis Pharm. Corp.*, 944 F. Supp. 2d 943, 953 (E.D. Cal. 2013) (citations omitted); *see also Polly v. Ciba-Geigy Corp.*, 658 F. Supp. 420, 421 (D. Alaska 1987) (Under the "learned intermediary" rule, "the manufacturer satisfies its duty to warn of risks inherent in its product by providing adequate information to prescribing physicians, who in turn pass on to their patients whatever information, in whatever form, they believe best for each patient's individual medical circumstances. The learned intermediary rule carefully allocates the duties of educating physicians, on the one hand, and warning patients, on the other, of the risks inherent in prescription medicines. The drug manufacturer has a duty to warn physicians, but has no duty to assist physicians in communicating with their patients.").

Other state and federal courts have expanded the doctrine, most commonly in the context of medical devices. *E.g.*, *In re Bard IVF Filters Prod. Liab. Litig.*, 969 F.3d 1067, 1076 (9th Cir. 2020) ("Under the learned-intermediary doctrine, the manufacturer of a prescription drug or medical device does not have a duty to warn the patient of the dangers involved with the product, but instead has a duty to warn the patient's doctor, who acts as a learned intermediary between the patient and the manufacturer.") (citation and internal quotation marks omitted, applying Georgia law); *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1158 (S.D. Cal. 2015) ("California applies the 'learned intermediary' doctrine which provides that the duty to warn in the case of medical devices runs to the physician, not the patient.") (citing, *inter alia*, *Plenger v. Alza Corp.*, 11 Cal. App. 4th 349, 362, 13 Cal. Rptr. 2d 811 (1992) (prescription implanted medical device case)); *see also Heinrich v. Ethicon, Inc.*, 455 F. Supp. 3d 968, 973–74 (D. Nev. 2020); *Adams v. United States*, 449 F. App'x 653, at *3 (9th Cir. Sep. 8, 2011) (applying Idaho law and concluding that growers were not voluntary purchasers of manufacturer's herbicide, and thus learned intermediary doctrine did not apply to growers' failure to warn claims against manufacturer); *Parker*, 445 F. App'x at 233, 237–38 (sophisticated user or learned intermediary doctrine relieved suppliers and manufactures of beryllium-containing products of their duty to warn workers in aircraft manufacturing plant of dangers of beryllium exposure).

given the complete and highly technical information on the adverse possibility associated with the use of the drug, he would have no way to evaluate it, and in his limited understanding he might actually object to the use of the drug, thereby jeopardizing his life. (3) It would be virtually impossible for a manufacturer to comply with the duty of direct warning, as there is no sure way to reach the patient.[48]

Warnings from drug manufactures to physicians are sufficient if they "give adequate notice of possible complications, . . . put the physician on notice of possible dangers, . . . disclose the nature and extent of the danger, and . . . reasonably disclose[] to the medical professional all risks inherent in the use of the drug which the manufacturer knew or should have known to exist."[49]

In *Stevens v. Cessna Aircraft Co.*, the California Court of Appeal extended the learned intermediary defense to the aircraft manufacturer/pilot context.[50] The trial court held that failure by defendant plane manufacturer to post a warning in airplane's passenger compartment regarding cargo/passenger capacity did not create liability and granted summary judgment to defendant.[51] The California Court of Appeal affirmed, noting that:

> [T]he passengers are not the operators of an airplane. It is the pilot who has control of the airplane and the responsibility under federal regulations to determine aircraft weight prior to takeoff. The owner's manual for this type of aircraft contained the necessary information for use by the pilot. Defendant did not have a duty to provide such information to the passengers also.
>
> . . .
>
> In the airplane situation the passenger necessarily depends upon the skill and judgment of the pilot to determine the load capacity of the airplane in light of the flying conditions to be encountered. Plaintiff's argument implies logically that

---

[48] *Carmichael v. Reitz*, 17 Cal. App. 3d 958, 989, 95 Cal. Rptr. 381 (1971) (internal quotation marks and citation omitted); *Hill*, 944 F. Supp. 2d at 953.

[49] *Polly*, 658 F. Supp. at 421 (citations and internal quotation marks omitted).

[50] *Stevens v. Cessna Aircraft Co.*, 115 Cal. App. 3d 431, 433–34, 170 Cal. Rptr. 925, 926 (Ct. App. 1981).

[51] *Id.*

numerous other bits of information should be posted in the passenger compartment to enable the passengers to second-guess the pilot on a myriad of flying decisions. It would be impossible ultimately to provide meaningful information to the passenger, and in the long run a rule requiring the manufacturer to provide such information directly to the passenger would not be in the interests of passenger safety.[52]

Here, Plaintiffs' Complaint asserts state law tort claims for design defect and failure to warn under legal theories of negligence, strict liability and breach of warranty.[53] Plaintiffs contend that the failure of Defendants to "properly design the modifications, and test the aircraft once the modifications were installed, and then warn pilots of the issues related to aircraft performance, led to this crash."[54] Relevant here, Plaintiffs assert those piloting the aircraft should have been warned (1) not to use takeoff flaps on takeoff and instead to use climb flaps, and (2) the aircraft has a tendency to roll or yaw right during takeoff.[55] Plaintiffs rely on their experts Mark Pottinger and John Cochran to establish which warnings they allege should have been provided.[56]

---

[52] *Id.* (internal citations omitted).

[53] Dkt. 189-1 at 2.

[54] *Id.* at 2–3.

[55] Dkts. 189-1 at 3; 257 at 3–4, 6; 189-4 at 6:15–25, 7:1–15 (Bishop Depo.). Plaintiffs acknowledge that given the counterclockwise spin of the modified turbine engine, the aircraft pulled right and AMFS notified the operator of this rightward pull. Dkt.189-1 at 3. Evidently, this warning does not cover the rightward roll or yaw Plaintiffs argue should have been provided. *See* Dkt. 257 at 3–4.

[56] *See* Dkt. 189-1 at 3–4 (citing 189-3 (Pottinger Depo.)). The Court has since limited Pottinger's testimony. Dkt. 313 at 15 ("[T]he Court finds that Pottinger is not qualified to opine on other topics including the legal, regulatory, or testing obligations of TTC or RAC, or any duty to warn imposed upon TTC or RAC."). Plaintiffs' expert John Cochran also expresses opinions regarding TCC's alleged duty to warn and breach of this duty. Dkt. 158-4 at 23–25; *see also* Dkt. 313 at 14–15 (concluding Cochran's testimony was relevant and reliable including his opinions regarding "whether the information provided to pilots through the AFMS adequately captured how the engineering changes might impact the plane's flight characteristics.").

Plaintiffs argue that there are no issues of material fact regarding the learned intermediary defense; the defense has no application given that "Defendants simply offered no relevant warning."[57] Since the undisputed record establishes that the Defendants failed to offer appropriate warnings to Pilot Furnia, Defendants cannot meet their burden of proving a warning to the learned intermediary.[58] Accordingly, Plaintiffs ask that the Court grant the Motion and exclude any attempt by Defendants to "interject" the learned intermediary or sophisticated user defenses at trial.[59]

TTC urges the Court to adopt the reasoning of *Stevens* and expand the learned intermediate defense to airplane aircraft manufacturer/pilot relationship.[60] TTC argues that like a physician who is in a better position to thoroughly understand the directions and warnings (and ramifications of misuse) from a drug manufacturer, a pilot is in a better, if not the only, position to understand and adhere to the instructions and warnings in an AFMS.[61] Regarding applicable warnings, TTC directs the Court to its Motion for Summary Judgment for Failure to Warn, and incorporates those arguments by reference.[62]

---

[57] Dkt 189-1 at 5.

[58] *Id.* at 6.

[59] *Id.* at 4; 257 at 4.

[60] Dkt. 223 at 11–13.

[61] *Id.* at 11.

[62] *Id.* at 3. There, TCC argues that Plaintiffs' failure to warn claims under theories of negligence and strict liability fail because TCC conducted the appropriate testing and provided the aircraft owner an FFA-approved AFMS detaining the safe method of operating the particular aircraft, and Pilot Furnia testified that he read and understood the AFMS. Dkts. 223 at 10 (quoting Dkt. 223-5 at 88:14–89:9, 96:1-6 (Furnia Depo.)); 173 at 5–19; *see also* Dkt. 184 (RAC Joinder to Dkt. 173). Additionally, any other dangers were open and obvious and required no warning. Dkt. 173 at 18–20.

The applicability and admissibility of the learned intermediary and sophisticated user defenses is properly before the Court on summary judgment.[63] There is no dispute that Defendants did not directly warn pilots operating the modified aircrafts, and specifically Pilot Furnia operating the plane involved in the present crash, that a pilot should not always use takeoff flaps on takeoff or that aircraft has tendency to roll and yaw to the right in certain scenarios.[64] Instead, the parties dispute the necessity of the warnings and whether Defendants had duty to provide such warnings at all.[65] The Court has not yet decided whether Defendants had a duty to provide certain warnings regarding a supposed right roll and yaw or the appropriate use of takeoff flaps.[66] Even if Defendants had an obligation to provide the specific warnings alleged by Plaintiffs and even if Defendants failed to provide those warning, the Court need not consider at this stage what specific warnings TTC and RAC were obligated to provide to Plaintiffs or to Pilot Furnia.

The issue, instead, remains the applicability of the learned intermediary defense to the aircraft parts manufacturer/pilot context. "Federal courts are not precluded from affording relief simply because neither the state Supreme Court nor the state legislature has enunciated a clear rule

---

[63] *See Koho*, 17 F. Supp. 3d at 1120; *Latiolais, v. Merck & Co., Inc.*, 302 F. App'x 756, 757 (9th Cir. Dec. 9, 2008) (unpublished opinion); *First Nat. Bank & Trust Corp. v. Am. Eurocopter Corp.*, 378 F.3d 682, 692 (7th Cir. 2004) ("In general, summary judgment should not be granted in favor of a manufacturer based on the sophisticated intermediary doctrine" because "whether a manufacturer has adequately discharged its duty to warn to qualify for the sophisticated intermediary defense is a question for the trier of fact.") (internal citations and quotation marks omitted).

[64] *See* Dkts. 189-1 at 2, 6; 257 at 3–4; *see also* Dkt. 223 at 13–14.

[65] *See* Dkt. 223 at 13–14.

[66] *See* Dkts. 173; 224 (Opposition).

governing a particular type of controversy."[67] When interpreting state law, federal courts follow decisions of the state's highest court unless the state's highest court has not spoken on the issue, in which case federal courts "determine what result the [state's highest] court would reach based on state appellate court opinions, statutes and treatises."[68]

Alaska law currently only recognizes the learned intermediary defense in the context of drug manufactures/physicians, and the *Shanks* Court made clear the learned intermediary defense has a limited application.[69] Alaskan courts have not expanded the defense in the nearly thirty years since *Shanks* was decided or the in the nearly forty years since *Stevens*, and neither party cites any Alaska case where the learned intermediary defense has been applied in this way. Moreover, it appears other courts have only infrequently applied this defense to the aircraft parts

---

[67] *Paul v. Watchtower Bible & Tract Soc. of N. Y.*, 819 F.2d 875, 879 (9th Cir. 1987), *cert. denied*, 484 U.S. 926 (1987).

[68] *Hewitt v. Joyner*, 940 F.2d 1561, 1565 (9th Cir. 1991); *Trishan Air, Inc.*, 532 F. App'x at 788; *Heinrich*, 455 F. Supp. 3d at 973–74 (expanding learned intermediary doctrine to include medical device manufactures after noting that Nevada adopted the learned intermediary doctrine in a negligence action such that a pharmacist does not owe a duty to warn a customer of a medication's generalized risks, noting that "[w]here [the state's] highest court has not decided an issue, [the district court] must predict how that court would decide" relying on decisions from other jurisdictions, statutes, treatises, and restatements as guidance.") (citing *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007)); *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004) (internal quotation marks omitted).

[69] *See Shanks*, 835 P.2d at 1194 n.6, n.7 ("With certain types of prescription drugs, the role of the doctor in the decision to use a specific product is significantly reduced. Examples of such atypical prescription products include contraceptives, where the patient initiates and directs the usage, drugs administered in a clinical setting with little or no physician involvement, or drugs marketed under a strategy designed to appeal directly to the consuming public. These are areas where courts have held that manufacturers have a duty to warn patients directly."); *Polly*, 658 F. Supp. at 421.

manufacturer/pilot context, and such an expansion has typically been undertaken by state courts or legislatures.[70] The Court similarly declines to extend the doctrine in this case.

Additionally, the present case is not as analogous to *Stevens* as TTC suggests. In *Stevens*, the plaintiff argued that if warnings had been posted in the passenger compartment, decedent or one of the other passengers would not have flown, and an accident could have been avoided.[71] Conversely here, Plaintiffs argue that Defendants should have offered certain warnings to the aircraft *pilot*, not the passengers.[72] Also, as part of the rationale behind the current application of the learned intermediary defense, it is presumed that a physician will use her own expertise and judgment to determine whether to prescribe the product, filter the information, and determine which warnings should be provided to the patient. Here, Plaintiffs do not argue that Pilot Furnia would have or should have told passengers about which flaps he planned to use on takeoff or any alleged tendency for the plane to yaw or roll right, nor have they argued that the passengers would have changed their mind about whether to fly on the aircraft based on that information.

Accordingly, because the learned intermediary defense is inapplicable to the facts of the present case, summary judgment to exclude this defense is appropriate, and the Motion at Docket 189 is **GRANTED**.

---

[70] *See e.g.*, *Stevens*, 115 Cal. App. 3d at 433–34, 170 Cal. Rptr. at 926; *Davis v. Cessna Aircraft Corp.*, 182 Ariz. 26, 38, 893 P.2d 26, 38 (Ariz. App. Ct. 1994) (applying the learned intermediary doctrine to a manufacturer of airplane parts), *superseded by statute as stated in Watts v. Medicis Pharm. Corp.*, 236 Ariz. 511, 342 P.3d 847 (Ariz. App. Ct. 2015); *First Nat. Bank & Trust Corp.*, 378 F.3d at 691 n.8, 691–93 (applying Indiana law and concluding that the passenger was the "end user" of the product and therefore the sophisticated intermediary, rather than the sophisticated user defense, applied).

[71] *Stevens*, 115 Cal. App. 3d at 433–34, 170 Cal. Rptr. at 926.

[72] Dkt. 189-1 at 3. Most learned intermediary suits allege failure to provide adequate warnings to *doctors* not patients. *See Motus v. Pfizer, Inc.*, 358 F.3d 659, 660–61 (9th Cir. 2004) (stating that a prescription drug manufacturer's duty to warn runs to the physician) (emphasis added).

## IV. CONCLUSION

The Court has not yet ruled on whether Defendants had a duty to warn or failed to provide adequate warnings to the appropriate parties regarding the takeoff flaps issue or alleged right roll and yaw. However, because Alaska law only recognizes the learned intermediary defense in the context of drug manufactures/physicians, and because the sophisticated user defense is applicable only to Plaintiffs' duty to warn claims, Plaintiffs' Motion for Summary Judgment at Docket 189 is **GRANTED**.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 21st day of January 2021.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE