IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOLYN L. SPECTER, as Personal Representative of the ESTATE OF JAMES E. SPECTER, M.D., and on behalf of herself, and the Surviving Family Members including KEVIN SPECTER, and DAVID W. WOOD, JR. and MARIANNE WOOD, Individually an on behalf of the marital community,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>TEXAS TURBINE CONVERSIONS, INC., a Texas Corporation, RECON AIR CORPORATION, a foreign corporation,<br><br>　　　　　　　　　　　Defendants. | Case No. 3:17-cv-00194-TMB<br><br>ORDER ON TEXAS TURBINE CONVERSIONS, INC.'S MOTION TO DISMISS/STRIKE OR IN THE ALTERATIVE FOR SUMMARY JUDGMENT RE: PLAINTIFFS' SECOND AMENDED COMPLAINT (DKT. 373) |

## I.　INTRODUCTION

This matter comes before the Court on Defendant Texas Turbine Conversions, Inc.'s ("TTC") "Motion to Dismiss/Strike or in the Alternative for Summary Judgment re: Plaintiffs' Second Amended Complaint" (the "Motion").[1]  Plaintiffs oppose the Motion.[2]  The Motion has been fully briefed.[3]  The parties have not requested oral argument and the Court finds that the Motion is ready for decision without oral argument.  For the following reasons, the Motion at Docket 373 is **DENIED**.

---

[1] Dkt. 373 (Motion).

[2] Dkt. 380 (Opposition).

[3] Dkts. 373; 380; 381 (Reply).

1

## II. BACKGROUND

The background facts of this case are set out in detail in this Court's Order at Docket 313. The facts are incorporated by reference and will not be repeated here.[4] This Motion follows Plaintiffs' filing of the Second Amended Complaint ("SAC") on March 2, 2021, which was the product of extensive negotiation between TTC and Plaintiffs.[5] TTC consented to the filing of the SAC pursuant to Federal Rule of Civil Procedure ("Rule") 15(a)(2).[6]

TTC seeks to dismiss the SAC because "one of Plaintiffs' theories fails to state a claim and both lack an evidentiary basis[.]"[7] Specifically, TTC argues that the SAC "asserts liability based on an alleged 'lack of rudder authority'" and that it is "inextricably interlinked within the 'right roll and yaw' theory that was vitiated by the Court's January 25 order regarding failure to instruct or warn[.]"[8] TTC asserts that Plaintiffs abandoned the "right roll and yaw" theory, but "insisted during [the] meet and confer that the 'loss of rudder' allegations must somehow remain."[9] TTC argues that the rudder authority allegation would only come into play "in order to correct unintended roll and yaw[,]" but since the Court found that there was "no significant or dangerous

---

[4] *See* Dkt. 313 (Order on Defendants' Motions in Limine re: Certain Expert Testimony). Plaintiffs also subsequently filed a stipulated First Amended Complaint on January 22, 2021, to remove claims based on their abandoned center of gravity theory and include claims based on the subject plane's "tendency to roll to the right and yaw." *See* Dkts. 335 (Stipulation Regarding First Amended Complaint); 338 at ¶¶ 35, 56 (First Amended Complaint).

[5] *See* Dkts. 371 (SAC); 354 (Stipulation Regarding SAC); 369 (Order Accepting Stipulation and Setting Deadlines).

[6] Dkt. 354 at 2.

[7] Dkt. 373 at 2.

[8] *Id.*

[9] *Id.* at 7.

tendency of the floatplane to roll right and yaw[,]" Plaintiffs' theory cannot stand.[10]  TTC points

to the expert reports and proffered testimony of Plaintiffs' experts Mark Pottinger and John

Cochran as supporting TTC's argument that the "loss of rudder authority" is intrinsic to the "right

yaw and roll" theory.[11]  TTC also argues that there is no "direct evidence that the TTC conversion

kit proximately caused this accident[.]"[12]

      Second, TTC argues that the SAC's allegations that relate to a defect or failure to warn

based on the use of takeoff flap settings is "unsupported by either direct evidence or law."[13]  TTC

asserts that the use of takeoff flaps was "not pleaded in either Plaintiffs' original or Amended

Complaint."[14]  TTC attaches the declaration of TTC's expert Lawrence Timmons, whose position

is that there was no dangerous condition to warn about.[15]  TTC also takes issue with the Court's

prior order that there was "'dissonance'" between the lack of stall testing with takeoff flaps and

Pilot John Furnia's use of takeoff flaps during takeoff.[16]  TTC says that the Federal Aviation

Administration ("FAA") did not need to test the takeoff flaps because there was no substantial

---

[10] *Id.* (emphasis omitted).

[11] *Id.* at 8–9 (internal quotation marks omitted).

[12] *Id.* at 9.

[13] *Id.* at 2.

[14] *Id.* at 13.

[15] *Id.* at 14; Dkt. 374 (Timmons Decl.).

[16] Dkt. 373 at 15.

difference between the handling conditions with takeoff flaps versus landing flaps.[17]  TTC also argues that there is no evidence that using takeoff flaps caused the accident.[18]

Plaintiffs oppose the Motion.[19]  First, Plaintiffs argue that the Motion to Dismiss is procedurally improper and that the Motion should be analyzed under Rule 6(b) since, in effect, TTC's request seeks to move the dispositive motion deadlines.[20]  Since the SAC does not add any new claims or new bases for liability, Plaintiffs argue, TTC cannot show "good cause" under Rule 6(b) to file its Motion.[21]  Plaintiffs assert the "loss of rudder authority" theory is based on the "differences in takeoff versus climb flap settings[.]"[22]  Plaintiffs also argue that TTC fails to show excusable neglect, since "it could have included these arguments in its initial motions but chose not to do so."[23]  Plaintiffs state that TTC did not act in good faith because it "offers no explanation for its delay in bringing this motion."[24]  Second, even if the Court reaches the merits of the Motion, Plaintiffs argue it should be denied.[25]  Plaintiffs assert that the Court previously addressed issues relating to loss of rudder authority and that TTC reads the Court's Order at Docket 339 "too

_____

[17] *Id.* at 16.

[18] *Id.* at 17.

[19] Dkt. 380.

[20] *Id.* at 3.

[21] *Id.* at 4.

[22] *Id.* at 5.

[23] *Id.* at 6.

[24] *Id.* at 6–7.

[25] *Id.* at 7.

4

expansively, ignores the testimony of Plaintiffs' experts, ignores its own flight test data, and misstates the Plaintiffs' theory."[26]

In reply, TTC argues that it is entitled to file its Motion under Rule 12 and that it timely filed the Motion in accord with the Rules.[27] TTC argues that Plaintiffs "two remaining theories of liability arose *as a result of* this Court's January 25, 2021 order[.]"[28] TTC reiterates its arguments that Plaintiffs offer no evidence that the use of takeoff flaps during takeoff caused the accident.[29]

## III.   LEGAL STANDARD

### A.  *Motion to Dismiss Under Rule 12(b)(6)*

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief,"[30] and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[31] In ruling on a 12(b)(6) motion, the Court must "'accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party.'"[32] "'A dismissal for

---

[26] *Id.* at 11.

[27] Dkt. 381 at 3.

[28] *Id.* at 4.

[29] *Id.* at 11–12.

[30] Fed. R. Civ. P. 8(a)(2).

[31] *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

[32] *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001) (quoting *Nat'l Ass'n for the Advance. of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000)).

5

failure to state a claim is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[33]

Generally, the court should not consider materials outside of the pleadings when ruling on a motion to dismiss for failure to state a claim.[34] Courts may consider additional materials where the complaint "necessarily relies" on those documents and their authenticity is not disputed.[35] "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."[36]

### B.    Summary Judgment Under Rule 56

Summary judgment is appropriate where, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party,[37] "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[38] Material facts are those which might affect the outcome of the case.[39] A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the

---

[33] *Arpin*, 261 F.3d at 923 (quoting *Pillsbury, Madison, & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994)).

[34] *See id.* at 925 (citing *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)).

[35] *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (citations omitted).

[36] Fed. R. Civ. P. 12(d).

[37] *Scott v. Harris*, 550 U.S. 372, 378 (2007).

[38] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Jensinger v. Nev. F. Credit Union*, 24 F.3d 1127, 1130–31 (9th Cir. 1994).

[39] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

6

non-moving party."[40]  "There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion."[41]  A movant's burden may be met by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."[42]  Thus, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[43]

Once a movant has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify facts which show a genuine issue for trial.[44]  Evidence introduced in opposition to a summary judgment motion does not have to be the kind that would be admissible at trial, but may be any type of evidence identified in Rule 56(c).[45]  However, "conclusory assertions are wholly insufficient to sustain either the defendants' burden or the district court's grant of summary judgment."[46]  "A party opposing a summary judgment motion

---

[40] *Id.* at 248.

[41] *Mills v. Wood*, No. 4:10-CV-00033-RRB, 2015 WL 2100849, at *1 (D. Alaska May 6, 2015), *aff'd in part*, 726 F. App'x 631 (9th Cir. 2018) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[42] *Celotex Corp.*, 477 U.S. at 325.

[43] *Anderson*, 477 U.S. at 249.

[44] *Celotex Corp.*, 477 U.S. at 324.

[45] *See, e.g.*, *id.* at 323–24; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

[46] *Walker v. Sumner*, 917 F.2d 382, 387 (9th Cir. 1990); *see also Hilsinger v. Enerco Grp., Inc.*, No. 3:13-cv-00003-TMB, 2014 WL 12569381, at *2 (D. Alaska Sept. 3, 2014); *Mills v. Wood*, 2015 WL 2100849, at *1 (citing *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1036 (9th Cir. 2005) and *Walker*, 917 F.2d at 387 ("In general, in ruling on a motion for summary judgment, a court may not weigh the evidence or judge the credibility of witnesses . . . . However, this rule does not apply to conclusory statements unsupported by underlying facts.")).

7

must produce '*specific* facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed."[47]

### C. *Rule 12(g)*

Rule 12(g)(2) states that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."[48] The Ninth Circuit has stated that this should be read in light of Rule 1, which directs that the Rules "'be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.'"[49] The Rule should be used to "avoid repetitive motion practice . . . and ambush tactics[,]" but where "entertaining the motion would expedite the case, and where the motion would narrow the issues involved[,]" the Court might properly reach the merits of an otherwise-late motion.[50]

---

[47] *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (quoting *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir. 1979)).

[48] Fed. R. Civ. P. 12(g)(2).

[49] *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017) (quoting Fed. R. Civ. P. 1).

[50] *Id.* at 318–19 (citing *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1175 (C.D. Cal. 2011)); *Doe v. White*, No. 08-1287, 2010 WL 323510, at *2 (C.D. Ill. Jan. 20, 2010)); *see ISE Entm't Corp. v. Longarzo*, No. CV 17-9132-MWF (JCx), 2018 WL 5298692, at *4 (C.D. Cal. Apr. 16, 2018) ("Courts commonly invoke Rule 12(g)(2) to reject new arguments raised in a motion to dismiss an amended complaint that could have been raised in a previous motion to dismiss a prior complaint but were not.") (collecting cases); 2–12 Moore's Federal Practice—Civil § 12.23 ("[B]ecause [a 12(b)(6) defense] is so basic and was not waived, [a district] court might properly entertain a second motion if it were convinced it was not interposed for delay and that addressing it would expedite disposition of the case on the merits.")).

## IV. ANALYSIS

The Court finds that Plaintiffs' SAC properly alleges the loss of rudder authority as a potential cause of the accident. The Court also finds that Plaintiffs have properly alleged that the use of takeoff flaps may be a potential cause of the accident. There is a genuine dispute of material fact as to whether the loss of rudder authority or flaps settings were substantial factors in causing the accident in this case. Accordingly, the Motion is **DENIED**.

### A. Plaintiffs' Procedural Objection

Plaintiffs argue that the Motion is procedurally defective because TTC should have made a motion "under Rule 6(b) to extend the dispositive motion deadlines."[51] Plaintiffs argue that TTC had the chance to make its arguments relating to the loss of rudder authority and takeoff flaps theories, in accord with the Scheduling and Planning Order in this case, but chose not to, and it is now too late.[52] TTC disagrees, arguing that "TTC has a right under the Federal Rules to seek dismissal of [Plaintiffs' new] claims."[53]

Rule 6(b) governs extension of time on certain motions deadlines.[54] The Court finds the arguments under Rule 6(b) inapposite here, since TTC is entitled to file this dispositive motion under Rule 12 as a response to the SAC.[55] Plaintiffs' objection is better lodged under Rule 12(g)(2), which disfavors redundant motion practice and states that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that

---

[51] Dkt. 380 at 3.

[52] *Id.* at 3–7; *see* Dkt. 116 (Scheduling and Planning Order).

[53] Dkt. 381 at 9.

[54] *See* Fed. R. Civ. P. 6(b).

[55] *See* Fed. R. Civ. P. 12(b), (d), (f).

was available to the party but omitted from its earlier motion."[56]  The Ninth Circuit in *In re Apple iPhone Antitrust Litigation* stated that courts should apply Rule 12(g) to help secure "'the just, speedy and inexpensive determination of every action and proceeding.'"[57]

Although, under Rule 12(g), the Court need not address the merits of TTC's Motion, the Court chooses to reach the merits to bring clarity to its prior orders and to assist the parties in preparing for trial or otherwise resolving the case.  The Court will evaluate the merits of the Motion under Rule 56, since TTC relies on extensive materials from outside of the pleadings, such as deposition testimony and the parties' expert reports.[58]

### B.  Loss of Rudder Authority Theory

The Court finds that Plaintiffs' allegation regarding the subject plane's lack of rudder authority is not "an orphan" as it relates to TTC's potential liability for negligence.[59]  First, the Court will address TTC's arguments as it relates to the Court's prior order regarding Plaintiffs' failure to warn claims.  TTC argues that the SAC "asserts liability based on an alleged 'loss of rudder authority'" and that it is "inextricably interlinked within the 'right roll and yaw' theory that was vitiated by the Court's January 25 order regarding failure to instruct or warn[.]"[60]  Plaintiffs argue that TTC reads the Court's order "expansively" and that "[n]othing in this Court's [January

---

[56] Fed. R. Civ. P. 12(g)(2).

[57] 846 F.3d at 318 (quoting Fed. R. Civ. P. 1).

[58] *See, e.g.,* Dkt. 373 at 8, 10, 11, 16, 18.

[59] Dkt. 373 at 18.

[60] *Id.* at 2 (referring to the Court's Order at Docket 339).

25 Order], however, excludes discussion about how the characteristics of the aircraft led to this crash."[61]

The Court finds merit to Plaintiffs' argument. Regarding the "right roll and yaw" theory, the Court stated:

> Even drawing all reasonable inferences in favor of Plaintiffs, their argument that the engine experienced a "significant right turn tendency" that was not warned about, and that the *lack of warning* was a substantial factor in causing the crash, cannot prevail.
>
> There is scant evidence that the plane had a "significant right turn tendency" that could be characterized as a "hazard or danger[]" that is "not readily recognized" by the ordinary pilot.
>
> ***
>
> Since there is no evidence that the alleged "tendency to roll and yaw right" was out of the ordinary, and since the alleged danger was open and obvious, TTC did not need to put any additional warnings in the [Airplane Flight Manual ("AFM")] or [Approved Flight Manual Supplement ("AFMS")]. [62]

The focus of the Court's Order at Docket 339 was on Plaintiffs' failure to warn claims, *not* other claims that may be germane to TTC's liability for negligence. The Court examined "whether there was a hazard or danger about which Defendants had a duty to warn, namely, whether there is any merit to Plaintiffs' claim that the engine conversion created a 'significant right turn tendency.'"[63] The Court concluded that while there was an undisputed "natural propensity to pull to the right," Plaintiffs' argument that there "'significant right turn tendency' that was not warned about, and

---

[61] Dkt. 380 at 11.

[62] Dkt. 339 at 19–20, 24 (Order re: TTC's Motion for Summary Judgment re: Failure to Instruct and Failure to Warn) (emphasis in original).

[63] *Id.* at 19 (alteration omitted) (citing Dkt. 224 at 2 (Response in Opposition to TTC's Motion for Summary Judgment for Failure to Warn)).

11

that the *lack of warning* was a substantial factor in causing the crash" was insufficient.[64]   The

Court's position does not foreclose a jury from finding that TTC's engine conversion kit changed

the flight characteristics of the plane in a way that was a substantial factor in causing the accident.

Second, TTC argues that Pilot Furnia testified that "*he did not know that he was in a right*

*turn.*"[65]   The portion of Pilot Furnia's deposition that TTC cites to substantiate its assertion states:

"But I do absolutely know that I turned inadvertently.  I don't know what my airspeed was."[66]

Pilot Furnia was noncommittal about certain details of the flight that led to the crash, noting that

"everything happened so fast."[67]   He also testified that he did not know what changes had been

made to the plane as a result of the engine conversion.[68]   Pilot Furnia's deposition testimony is

less forceful than TTC's characterization and not dispositive of Plaintiffs' arguments relating to

rudder authority or changed flight characteristics.  The parties will be able to call Pilot Furnia at

trial and the jury will be able to weigh his testimony as to this issue.

Third, Plaintiffs have made a sufficient—though not overwhelming—showing that a jury

should review the evidence relating to the chain of events that led to the accident and determine

whether TTC's allegedly-defective engine conversion was a substantial factor in causing the

accident.[69]   Plaintiffs' expert testimony, which is based on the experts' expertise and evaluation of

---

[64] *Id.*

[65] Dkt. 373 at 2–3 (citing Dkt. 373-1 at 152:7-8 (Furnia Dep. Tr.)) (emphasis in original).

[66] Dkt. 373-1 at 152:7-8.

[67] *Id.* at 176:24.

[68] *Id.* at 72:18-22 ("Q: Any other major differences you recall? A: No.  They supposedly had rebuilt it, but I don't know what they did.  You'd have to get into the logbooks to see what they did.").

[69] *See Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell*, 956 P.2d 1199, 1203 (Alaska 1998) (questions of fact reserved for the jury); *Maddox v. River & Sea Marine, Inc.*, 925 P.2d 1033, 1040

the record, is that the TTC engine conversion kit may have contributed to the crash. Expert Dr. John Cochran offers five opinions regarding the subject accident, including that the plane crashed "because its stability and control characteristics had been changed" and that Pilot Furnia was "unable to control [the plane] during an attempted takeoff from East Wind Lake."[70] Expert Mark Pottinger opined that "Pilot Furnia ran out of rudder authority during the high angle of attack maneuver" and that the "increased torque, slipstream and [p] factor" contributed to the crash.[71] Finally, expert Dr. Todd Coburn's testimony focuses on the flight testing and the plane's behavior during the crash. He asserts that the flight testing "fell short of defining the flight characteristics sufficiently such that unacceptable performance could be avoided" and "[t]he stall characteristics of the aircraft with the combined modifications of the [TTC] turboprop . . .was not sufficiently understood[.]"[72] The Court is persuaded that reasonable minds could differ as to whether the TTC engine conversion—and its related impact on the plane's rudder authority—was a substantial factor in causing the subject accident. Thus, the Motion as to this issue is **DENIED**.

### C. Plaintiffs' Allegations Regarding Use of Takeoff Flap Settings

TTC next argues that "[t]he very first time Plaintiffs make the allegations concerning takeoff flaps is in their Second Amended Complaint[.]"[73] TTC argues that "there is not a scintilla of evidence . . . that it was a hazard and a danger to takeoff the TTC turbine engine equipped

---

(Alaska 1996) (causation is usually a jury question); *Tush v. Pharr*, 68 P.3d 1239, 1249 (Alaska 2003) (Where reasonable minds could differ, "the question of causation is one for the jury.").

[70] Dkt. 158-4 at 23–25 (Cochran Expert Report).

[71] Dkt. 161-5 at 39–41 (Pottinger Expert Report).

[72] Dkt. 177-1 at 6–8 (Coburn Expert Report).

[73] Dkt. 373 at 13.

13

DHC-3 using takeoff flaps."[74]  TTC argues that the Court's finding of "dissonance" between the flight testing that omitted takeoff flaps and Pilot Furnia's use of takeoff flaps is not "*actual* 'dissonance.'"[75]  TTC asserts that this tension is manufactured by Plaintiffs and their experts, and cite the FAA flight test report for the proposition that takeoff flaps are sufficiently similar to landing flaps that they did not need to be tested.[76]  TTC also argues that there is no evidence that the use of takeoff flaps caused the accident.[77]  Plaintiffs disagree, and argue that this is not a new issue, especially since TTC sought summary judgment on a takeoff flaps issue.[78]  Plaintiffs argue that the "Court considered the evidence relied on by the parties, the arguments made by the parties based upon the law and that evidence, and denied the [m]otion[.]"[79]  They say that "[a]t best, [TTC's] new expert opinion[80] and argument create factual disputes for the jury to resolve."[81]

The Court's conclusion on January 25, 2021, still stands: "There is [] a genuine dispute of material fact as to whether the alleged lack of warning was a substantial factor in causing the plane crash."[82]  The parties briefed the issue as it related to the warnings in the AFM and AFMS and the Court considered the evidence and arguments presented.  The SAC was properly amended to bring

---

[74] *Id.* at 14.

[75] *Id.* at 15.

[76] *Id.*

[77] *Id.* at 17.

[78] Dkt. 380 at 13.

[79] *Id.* at 14; *see* Dkt. 339.

[80] *See* Dkt. 374.

[81] Dkt. 380 at 14.

[82] Dkt. 339 at 26.

14

the complaint into alignment with the issues litigated by the parties.[83]   TTC urges the Court to reconsider its decision at Docket 339, arguing that there is in reality no "dissonance" between the flight testing and sufficiency of the warnings regarding flaps settings, but the Court declines to do so.

The Court further finds that there is a genuine dispute of material fact as to whether the use of takeoff flaps (not only the lack of warnings) were a substantial factor in causing the accident.[84] As described above, the record, including Plaintiffs' proffered expert testimony, is sufficient to establish a genuine dispute of material fact as to whether the stability and control characteristics of the plane were a substantial factor in the crash.   TTC attempts to have the Court take various causation factors off the table—such as the rudder authority theory or the plane's flaps settings— but the Court concludes that reasonable minds could differ as to whether those characteristics contributed to the accident.   The jury should be able to evaluate Plaintiffs' evidence and determine whether one or more of the changes made to the DHC-3 Otter aircraft was a substantial factor in causing the accident.   The Motion, therefore, is also **DENIED** on this ground.

---

[83] *See Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) (noting that where a party makes an argument or claim in summary judgment briefing, courts should allow those claims to be incorporated into the complaint under Rule 15); *cf.* Fed. R. Civ. P. 15(b)(2) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.  A party may move—at any time, even after judgment— to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.  But failure to amend does not affect the result of the trial of that issue.").

[84] TTC argues that "there is not even an argument . . . that Furnia's selection of the 'takeoff' setting factually and proximately *caused* this tragic accident." Dkt. 373 at 18.  However, the SAC states "[t]he defendants were aware that the modified aircraft should not be operated in 'Takeoff' flap settings during takeoff, and that as a result of their modifications and negligence at a high angle of attack the pilot ran out of the ability to control the aircraft due to rudder limitations and as a result the aircraft crashed."  Dkt. 371 at ¶ 50.  While Plaintiffs could have more precisely drafted Paragraph 50 of the SAC, the Court construes it as alleging that the use of takeoff flaps contributed to the crash.

## V.    CONCLUSION

Accordingly, for the above reasons, TTC's Motion at Docket 373 is **DENIED**.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 1st day of April, 2021.

/s/ _____
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE