IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOLYN L. SPECTER, as Personal Representative of the ESTATE OF JAMES E. SPECTER, M.D., and on behalf of herself, and the Surviving Family Members including KEVIN SPECTER, and DAVID W. WOOD, JR. and MARIANNE WOOD, Individually an on behalf of the marital community,<br><br>Plaintiffs,<br><br>v.<br><br>RECON AIR CORPORATION, a foreign corporation,<br><br>Defendant. | Case No. 3:17-cv-00194-TMB<br><br>ORDER ON RECON AIR CORPORATION'S MOTION FOR ATTORNEY'S FEES AND COSTS (DKT. 393) |

## I. INTRODUCTION

This matter comes before the Court on Defendant Recon Air Corporation's ("RAC") Motion for Attorney's Fees and Costs (the "Motion").[1] Plaintiffs Jolyn L. Specter[2] (the "Specter Estate" or "Specter Plaintiffs") and David W. Wood, Jr. and Marianne Wood (the "Wood Plaintiffs," and together with the Specter Plaintiffs, "Plaintiffs") oppose the Motion.[3] The Motion has been fully briefed and the Court concludes oral argument is not necessary for resolution of the

---

[1] Dkts. 393 (Motion); 393-1 (Memorandum of Law).

[2] As Personal Representative of the Estate of James E. Specter, M.D., and on behalf of herself, and the Surviving Family Members including Kevin Specter.

[3] Dkt. 402 (Opposition).

1

matter.[4] For the following reasons, the Motion at Docket 393 is **GRANTED in part** and **DENIED in part**.

## II. BACKGROUND

On February 5, 2021, the Court issued an Order granting RAC's Motion for Summary Judgment as to Plaintiffs' negligence claims against it.[5] The Court entered Final Judgment in favor of RAC on March 12, 2021.[6] The Motion was filed on March 26, 2021, pursuant to Federal Rule of Civil Procedure 54(d)(2) and Local Civil Rule 54.[7] The background facts of this case and RAC's Motion for Summary Judgment are set out in detail at this Court's Orders at Dockets 313 and 348 and incorporated by reference herein. RAC requests $247,336.86 in attorney's fees pursuant to Alaska Rule of Civil Procedure ("Alaska Civil Rule" or "Rule") 68(b)(2), or, in the alternative, $138,134.20 under Rule 82(b)(2).[8]

It its Motion, RAC argues that "[a]s the prevailing party, [it] is entitled to an award of attorney's fees in its favor."[9] It states that under Rule 82, RAC would be entitled to at least 20 percent of its "actual, reasonable attorney's fees which were necessarily incurred."[10] On September 9, 2019, however, RAC served Plaintiffs with Offers of Judgment, which, RAC asserts

---

[4] *See* Dkts. 393; 402; 406 (RAC Reply); 427 (RAC Notice of Supplemental Authority).

[5] Dkt. 348 (Order re: RAC's Motion for Summary Judgment (Dkt. 167)).

[6] Dkt. 375 (Judgment for RAC).

[7] *Id.* at 2.

[8] Dkt. 393-1 at 6–7.

[9] *Id.* at 3.

[10] *Id.*

2

"would have completely resolved all of [P]laintiffs' claims against RAC."[11] RAC's Offers of Judgment (the "Offers") would have provided $25,000 to resolve the claims brought by the Wood Plaintiffs and $25,000 to resolve the claims brought by "Estate of James Specter, M.D., and all beneficiaries and dependents" against RAC.[12] RAC argues that since its Offers were "made more than 60 days after the parties exchanged initial disclosures but more than 90 days before the start of trial[,]" and since the Court found RAC was not liable for any of Plaintiffs' claims, RAC is entitled to 50 percent of its reasonable attorney's fees.[13]

RAC argues that its fees were "reasonable and necessarily incurred by RAC in order adequately and properly to defend the various claims asserted against RAC by [P]laintiffs."[14] RAC cites the numerous claims brought against RAC, including various claims for strict liability, negligence, negligent failure to warn," and claims for emotional harm and punitive damages.[15] RAC also cites the "over 30 motions" filed in relation to Plaintiffs' claims, "substantial discovery[,]" and how "plaintiffs completely altered their theory of the case—twice—leading to additional discovery and motion practice."[16] In addition, Plaintiffs "retained seven different expert witnesses[.]"[17] RAC argues that its attorney's fees request is reasonable, especially in light of

---

[11] *Id.*

[12] Dkts. 393-2 (Offer of Judgment to Wood Plaintiffs); 393-3 (Offer of Judgment to Specter Estate).

[13] Dkt. 393-1 at 4 (citing Alaska Civ. R. 68(b)(2)).

[14] *Id.* at 5.

[15] *Id.*

[16] *Id.*

[17] *Id.*

Plaintiffs' assertion that their damages would have amounted to "'tens of millions of dollars[.]'"[18] To substantiate its request, RAC attached itemized statements detailing how attorneys' time was spent.[19]

Plaintiffs oppose the Motion.[20] First, Plaintiffs argue that the Motion is procedurally defective because RAC "made no effort to apportion the fees between the various Plaintiffs[.]"[21] Second, Plaintiffs argue that RAC is not entitled to fees under Rule 68 because the Offers were only made "for the purposes of shifting fees[.]"[22] They argue that the Offers were too small in comparison to the potential damages that a jury could award, and that "the [Offers were] not made in order to encourage settlement."[23] Plaintiffs also point to the timing of the Offers as supporting their position.[24] Specifically, they argue that "there is no way that [RAC] could have accurately assessed the strength of the Plaintiff[s'] liability case."[25] When RAC made the Offers, the "expert opinions had yet to be disclosed[,]" so RAC "did not know what criticism the Plaintiffs' experts would have on its conduct."[26]

---

[18] *Id.* at 6 (citing Dkt. 366 at 1 (Joint Status Report)).

[19] *See* Dkts. 393-4 (Guess & Rudd P.C. Itemized Invoices); 393-5, 393-6, 393-7 (Rohmer & Fenn Itemized Invoices); *see also* Dkts. 393-8 (Crabb Aff.); 393-9 (Fenn Aff.).

[20] Dkt. 402.

[21] *Id.* at 4.

[22] *Id.* at 4–5.

[23] *Id.* at 6.

[24] *Id.*

[25] *Id.* at 7.

[26] *Id.*

4

Third, if the Court decides to award attorney's fees under Rule 82, Plaintiffs argue RAC's fees should be "substantially reduced."[27] Plaintiffs argue that RAC's requested fees are not reasonable because the fees include (1) alleged over-billing; (2) overlap with the *In re Crash of Aircraft N93PC*[28] litigation that should have reduced fees, non-legal tasks performed by attorneys; and (3) duplicative tasks and billing, vague entries, excessive time spent on phone calls and emails, excessive redactions that make it "impossible" to justify certain entries.[29] Plaintiffs also raise specific objections to the "overall time spent" on certain litigation tasks such as RAC's Answer and preparing discovery requests.[30] Plaintiffs further argue that "[n]othing in the record shows any efforts by [RAC's] counsel to minimize fees" and that awarding the fees requested by RAC would "deter future airplane accident victims."[31] Plaintiffs argue that, at most, RAC should be awarded approximately $40,000 in fees under Rule 82.[32]

In a Reply, RAC addresses Plaintiffs' objections.[33] First, RAC argues that its Offers were not procedurally defective because "[P]laintiffs' claims against RAC are all identical . . . and all relat[e] to RAC's performance work on the subject aircraft."[34] As a result, RAC argues that there

---

[27] *Id.*

[28] *In re Crash of Aircraft N93PC on July 7, 2013, at Soldotna, Alaska*, No. 3:15-cv-0112-HRH, (filed on July 1, 2015).

[29] Dkt. 402 at 9–14.

[30] *Id.*

[31] *Id.* at 14–15.

[32] *Id.* at 15.

[33] Dkt. 406.

[34] *Id.* at 4.

5

was no need to apportion fees.[35]  Second, RAC argues that its Offers were valid under Rule 68.[36] RAC made two separate Offers, which RAC argues was appropriate because the interests of each group of Plaintiffs were (and are) aligned.[37]  Namely, the Jolyn L. Specter, the wife of James E. Specter, and adult son Kevin Specter, have aligned interests, as do the married Wood Plaintiffs.[38] RAC says there is no apportionment issue that, "absent settlement, would have to be resolved by a jury."[39]  Third, RAC argues that their Offers were not nominal.[40]  RAC argues that "there was scant evidence that RAC had any realistic liability in relation to this accident, and there was substantial evidence indicating that the cause of the crash was the negligence of Rainbow King Lodge's pilot[.]"[41]  Accordingly, the Offers were to "provide an opportunity to the [P]laintiffs to take a realistic look at the case before . . . prolonged litigation."[42]  The Offers were not analogous to the two cases cited by Plaintiffs, RAC argues, where offers of $10 and $1 were made at different stages of the litigation than here.[43]  Fourth, RAC argues that its fees are reasonable in light of the

---

[35] *Id.* at 3.

[36] *Id.* at 5.

[37] *Id.* at 6.

[38] *Id.*

[39] *Id.* at 6–7.

[40] *Id.* at 8.

[41] *Id.* at 9.

[42] *Id.* at 11.

[43] *Id.* (citing *Anderson v. Alyeska Pipeline Serv. Co.*, 234 P.3d 1282, 1290 (Alaska 2010); *Beal v. McGuire*, 216 P.3d 1154, 1177–78 (Alaska 2009)).

complexity of the case.[44] RAC rejects Plaintiffs' critiques of certain line items or billing practices.[45]

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 54(d)(2) allows for a claim for attorney's fees by motion to be filed within fourteen days of the entry of judgment. Such a motion must specify the grounds entitling the movant to the award, the amount sought or a fair estimate thereof, and disclose the terms of any agreement under which the motion is made.[46] Under Local Civil Rule 54.2, a party seeking an award of attorney's fees must file a motion stating the amount requested, setting forth the authority for the award, and must be accompanied by a declaration or affidavit setting forth the total number of hours billed, the rate for each lawyer or professional, the amount charged to the client, and attaching itemized supporting documents.[47] In determining the amount which should be awarded in fees, the Court looks to Alaska Civil Rules 68 and 82. Rules 68 and 82 "are considered substantive law under *Erie R.R. Co. v. Tompkins*, and accordingly apply in cases in federal court based on diversity jurisdiction."[48]

A. *Alaska Civil Rule 68 Framework*

---

[44] *Id.* at 13–14.

[45] *Id.* at 15–20.

[46] Fed. R. Civ. P. 54(d)(2).

[47] D. Alaska L. Civ. R. 54.2.

[48] *Spencer v. Ottosen Propeller & Access., Inc.*, No. 3:16-cv-00188-TMB, 2019 WL 1090776, at *2 (D. Alaska Jan. 15, 2019) (citing *MRO Commc'ns Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1282 (9th Cir. 1999); *Dietzmann v. City of Homer*, No. 09-cv-00019-RJB, 2013 WL 11309599 at *3 (D. Alaska June 11, 2013)); *see also Alaska Rent-A-Car v. Avis Budget Grp., Inc.*, 738 F.3d 960, 972–75 (9th Cir. 2013) (holding that Alaska law regarding attorney's fees applies in diversity cases brought in or removed to federal court).

Alaska Civil Rule 68(b)(2) provides for the award of "all costs as allowed under the Civil Rules[.]" Rule 68(b)(2) also states that if an offer of judgment was "served more than 60 days after . . . initial disclosures . . . but more than 90 days before [] trial[,]" then the offeror is entitled to 50 percent of "reasonable actual attorney's fees," which covers all fees "incurred by the offeror from the date the offer was made." A party is only eligible for an award of fees under Rule 68(b) "if the judgment finally rendered by the court is at least . . . 10 percent less favorable to the offeree than the offer[.]"[49] Under Alaska law, "[w]hen awarding Rule 68 attorney's fees a trial court must use its discretion to determine what amount represents the reasonable actual attorney's fees," based on a determination of "whether the fees claimed are objectively reasonable."[50] The Alaska Supreme Court has held that this determination does not involve "an exhaustive list of factors," but instead "focuses on two factors: (1) the hourly rate charged and (2) the number of hours reported."[51] Courts may also consider the factors listed in Alaska Civil Rule 82(b)(3), discussed *infra* Section III-B, in determining whether an award is reasonable.[52] Critically, "the purpose of Rule 68 is not merely to 'partially compensate a prevailing party' for its reasonable expenses; rather, 'the purpose of Rule 68 is to encourage pretrial settlement' so as to save both the litigants

---

[49] Alaska Civ. R. 68(b).

[50] *Okagawa v. Yaple*, 234 P.3d 1278, 1281–82 (Alaska 2010).

[51] *Id.* In contrast, Alaska R. Civ. P. 82(b)(3) expressly provides a list of factors pursuant to which a trial court may vary an attorney's fee award. *See also Valley Rental Ctr. v. Thomas*, 228 P.3d 893, 894 (Alaska 2010) (noting that courts should determine whether the hourly rate charged and the number of hours worked were reasonable).

[52] *Kellis v. Crites*, 20 P.3d 1112, 1114 (Alaska 2001) ("Assuming the Rule 82(b)(3) factors apply to an award of attorney's fees under Rule 68(b) . . . they could be relevant in this case only for the limited purpose of determining whether the attorney's fees actually incurred by the offeror were reasonable.").

8

and the state from the time and expense of a trial."[53] Offers of judgment "made without any chance or expectation of eliciting acceptance or negotiation do not accomplish the purposes behind [Rule 68.]"[54] An offer that is "nothing more than tactical demand[] that plaintiffs dismiss their claims to avoid exposure to Rule 68 fees awards" is not a valid offer.[55] However, based on "the timing and the amount[,]" even "small offers may be valid even when they are much lower than the amounts demanded."[56]

Additionally, the Court should inquire as to whether the proffered offer creates apportionment difficulties, as in, disputes may arise among offerees as to how to divide proceeds. "In determining whether a joint offer may nonetheless be valid, we consider two factors: (1) whether '[t]he settlement offer clearly indicated all claims between the parties would be resolved if the offer were accepted'; and (2) whether apportionment difficulty actually exists."[57] Apportionment difficulties exist "'if [the offer] would leave unresolved serious disputes that, absent settlement, would have to be resolved by a jury.'"[58]

B.  *Alaska Civil Rule 82 Framework*

---

[53] *Froines v. Valdez Fisheries Dev. Ass'n, Inc.*, 175 P.3d 1234, 1237 (Alaska 2008).

[54] *Beal*, 216 P.3d at 1178.

[55] *Id.*

[56] *Marshall v. Peter*, 377 P.3d 952, 958 (Alaska 2016).

[57] *Boiko v. Kapolchok*, 426 P.3d 868, 875 (Alaska 2018) (citing *Alaska Fur Gallery, Inc. v. First Nat. Bank Alaska*, 345 P.3d 76, 99 (Alaska 2015) (internal quotations omitted) (alteration in original)).

[58] *Id.* (citing *Roderer v. Dash*, 233 P.3d 1101, 1113 (Alaska 2010)).

Alaska Civil Rule 82 is a separate avenue for an award of attorney's fees that is mutually exclusive from an award of fees under Rule 68.[59] It "provides for the award of partial attorney's fees to the prevailing party in litigation as a matter of course."[60] Rule 82(b)(2) provides that where a case is resolved without trial, where the "prevailing party recovers no money judgment[,]" the prevailing party is entitled to "20 percent of its actual attorney's fees which were necessarily incurred."[61] The Court has discretion to vary the attorney's fee award based on a list of statutory factors, which includes, among others, "the complexity of the litigation; . . . the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts; . . . and other equitable factors deemed relevant."[62]

## IV. ANALYSIS

The Court finds that Alaska Civil Rule 68 applies in this case, since RAC made separate Offers to the Specter Plaintiffs and Wood Plaintiffs, those Offers met the purposes of Rule 68, and there are no "unresolved serious disputes" relating to apportionment of the Offers between Plaintiffs. The Court further finds that the fees requested by RAC are reasonable, except for a small number of deficient invoice entries.

### A. Whether RAC's Rule 68 Offers Were Valid

The Court finds that Rule 68 appropriately governs the attorney's fees request in this case. Plaintiffs argue that the Motion is procedurally defective because the RAC did not apportion the

---

[59] Alaska R. Civ. P. 68(c) ("A party who receives attorney's fees under this rule may not also receive attorney's fees under Civil Rule 82.").

[60] *Gamble v. Northstore P'ship*, 28 P.3d 286, 288 (Alaska 2001).

[61] Alaska R. Civ. P. 82(b)(2).

[62] Alaska R. Civ. P. 82(b)(3).

10

fees between the various Plaintiffs.[63] If the Motion is not procedurally defective and Rule 68 applies, however, there is no dispute between the parties that RAC prevailed in this case, that the Offers of $25,000 to each of the Specter and Wood Plaintiffs were more favorable than the award of zero, and that the timing of the Offers complied with the timing requirements of Rule 68(b)(2).[64] The Plaintiffs principally dispute whether the Offers were valid at all due to (1) apportionment issues and (2) whether the Offers met the purposes of Rule 68.[65]

As an initial matter, the Court finds that the Motion is not procedurally defective merely because RAC failed to specifically apportion fees between certain Plaintiffs. There is no requirement that RAC apportion fees between Plaintiffs, where, as here, the Plaintiffs asserted claims with an identical theory of liability. While the potential damages available to the Specter and Wood Plaintiffs varied,[66] the theory of liability was identical for all Plaintiffs. The unchallenged Judgment entered for RAC states that the Plaintiffs are "individually and collectively" responsible for attorney's fees.[67] The Court also agrees with RAC that the authority cited by Plaintiffs is distinguishable.[68] Therefore, the Motion is not procedurally defective, and the Motion is properly before the Court.

---

[63] Dkt. 402 at 4.

[64] *See, e.g.*, *McAnally v. Thompson*, 397 P.3d 322, 329–30 (Alaska 2017) (an offer of $5,000 was "more than the jury awarded [plaintiff]" and reasonable under Rule 68).

[65] *Id.* at 5.

[66] For example, the Specter Plaintiffs were not able to recover for particular personal injury damages and the Wood Plaintiffs were not able to recover for wrongful death damages. *See, e.g.*, Dkt. 1 at 18–21 (Complaint); Dkt. 371 at 15–17 (Second Amended Complaint).

[67] Dkt. 375 (Judgment for RAC).

[68] Plaintiffs cite to *Rude v. Cook Inlet Region, Inc.*, 322 P.3d 853, 859 (Alaska 2014), in which the Alaska Supreme Court instructed the state trial court on remand to apportion defendant's attorney's

Next, the Court finds that there are no apportionment issues which would have prevented the Specter and Wood Plaintiffs from apportioning the $25,000 settlement Offers among themselves. The Court must consider whether the Offers would have resolved all claims if accepted and "whether apportionment difficulty actually exists."[69] Apportionment difficulties exist if the Offers "'leave unresolved serious disputes that, absent settlement, would have to be resolved by a jury.'"[70] RAC argues that there are no apportionment issues because the Specter and Wood Plaintiffs each have "clearly aligned" interests against RAC.[71] RAC argues that "[a]ll plaintiffs uniformly asserted the identical claims alleging negligent installation of aircraft components, strict product liability, misrepresentation, and breach of warranties."[72] RAC also points out that Plaintiffs "made their own offer to RAC with no separation or segregation of amounts between individual [P]laintiffs."[73] On the other hand, Plaintiffs, in cursory fashion, argue

---

fees award between individual plaintiffs, which included three individuals on behalf of a class of shareholders. *Id.* at 855, 859. In *Rude*, the Alaska Supreme Court cited *Mills v. Hankla*, 297 P.3d 158, 175 (Alaska 2013), *abrogated on other grounds*, *Lane v. City of Juneau*, 421 P.3d 83 (2018), in which the court held that joint and several liability for attorney's fees between plaintiffs was not appropriate where only two of eight counts applied to all plaintiffs. *Id.* at 176. This is plainly not the case here, and Plaintiffs have provided no other authority that bars joint and several liability for RAC's fees.

[69] *Boiko*, 426 P.3d at 875 (citation omitted).

[70] *Id.* (citation omitted).

[71] Dkt. 406 at 6.

[72] *Id.*

[73] *Id.* at 7 (emphasis omitted).

that the claims of each Plaintiff are separate and that the jury would have issued separate awards.[74] As a result, Plaintiffs say that the apportionment issues must render the Offers invalid.[75]

The Offers, dated September 9, 2019, state that RAC "offers to allow judgment to be entered in favor of [Wood Plaintiffs or Specter Estate], against RAC for the total amount of [$25,000.]"[76] The parties do not dispute that the Offers would have resolved all claims against RAC if accepted.[77] The Court agrees with RAC that the interests of the Specter Estate and all beneficiaries and dependents, and the Wood Plaintiffs, are fully aligned and there is no apportionment issue.[78] Plaintiffs David and Marianne Wood are married and have not put forward any reason as to why RAC needed to apportion the $25,000 Offer between them. Indeed, the Court has previously found that a joint settlement offer to a married couple with fully aligned litigation

---

[74] Dkt. 402 at 5.

[75] *Id.*

[76] Dkts. 393-2; 393-3.

[77] Instead, Plaintiffs challenge the validity of the Offers due to apportionment issues and, ultimately, the reasonableness of RAC's request. Dkt. 402 at 4–15. The Court also notes that the Offers make specific reference to Alaska Civil Rule 68. *See* Dkts. 393-2; 393-3.

[78] *See, e.g.*, *Hughes v. Foster Wheeler Co.*, 932 P.2d 784, 792 (Alaska 1997) (in a Rule 82 case, joint and several liability for plaintiffs is appropriate where the same issue is involved in each claim); *see also Boiko*, 426 P.3d at 875 (finding an apportionment issue where one plaintiff-offeree had a separate claim and a separate legal relationship with defendant).

This case is also distinguishable from *Randles v. Lowry*, 4 Cal. App. 3d 68 (Cal. Ct. App. 1970), cited by Plaintiffs. The *Randles* court reasoned that under California Civil Procedure Rules then in place, the court could not determine "that any one plaintiff received a less favorable result than he would have under the offer of compromise." *Id.* at 74. Here, none of the Plaintiffs were entitled to recover damages from RAC because the Court found that RAC could not be held liable for Plaintiffs' injuries. *See* Dkt. 348. As a result, there is no question that the Offers meet the requirements as set forth by Rule 68(b).

13

interests does not raise any apportionment concern.[79] Similarly, the claims brought by the Specter Estate, including Jolyn L. Specter and Kevin Specter, all derive from the same theory of liability. The Specter Estate has also failed to put forward any persuasive reason as to why RAC needed to apportion the $25,000 Offer between them. The fact that a jury might issue separate damage awards does not change the fact that the litigation interests of each group were fundamentally aligned. Plaintiffs have not identified *any* "unresolved disputes" within either group of Plaintiffs, let alone any disputes that could be considered "serious[.]" Accordingly, there is no apportionment issue between the Specter Estate and its beneficiaries and dependents and the Wood Plaintiffs.

The Court will next consider whether the Offers meet the goals of Rule 68. RAC argues that the Offers met the goals of Rule 68, because "there was substantial evidence indicating that the cause of the crash was the negligence of Rainbow King Lodge's pilot, John Furnia."[80] RAC cites the National Transportation Safety Board's ("NTSB") report and the discovery up to that point, including Pilot John Furnia's deposition.[81] RAC also argues that by the date of the Offers, "Plaintiffs had identified no case authority requiring an installer of aircraft components to conduct independent testing" and "had no evidence to support a theory that RAC had breached any legal duty or obligation."[82] As a result, RAC asserts, the "glaring weakness of the claims against RAC" should have been apparent, and the Offers were an attempt to resolve those claims.[83] Plaintiffs argue that the Offers were "not made in order to encourage settlement" and that "[t]here was no

---

[79] *See Spencer*, No. 3:16-cv-00188-TMB, 2019 WL 1090776, at *4.

[80] Dkt. 406 at 9.

[81] *Id.* at 9–10.

[82] *Id.* at 10.

[83] *Id.* at 10–11.

14

objective possibility that the Plaintiffs would accept these [O]ffers as they are so low as to cut off negotiations, not to encourage them."[84] Plaintiffs also argue that "there is no way that [RAC] could have accurately assessed the strength of the Plaintiff's liability case" when they made the Offers, since the expert opinions had not yet been disclosed.[85]

The Court finds that the Offers served the purposes of Rule 68. First, the Offers were not nominal. Plaintiffs cite two cases where the Alaska Supreme Court found that settlement offers made early in a litigation for $10 and $1 were insufficient to serve the purposes of Rule 68.[86] Those cases are easily distinguishable here. RAC was objectively reasonable in giving its Offers of $25,000 to the Specter and Wood Plaintiffs on September 9, 2019. The Offers are not "disingenuously low[.]"[87] The $25,000 Offers on their face were not nominal or similar to the $10 and $1 offers scrutinized by the Alaska Supreme Court. Additionally, Plaintiffs' argument that the Offers were small in comparison to the damages claimed by Plaintiffs is unavailing. The Alaska Supreme Court rejected the notion that courts should judge the "validity of the offer of judgment . . . simply by comparing the offer to the amount demanded in the lawsuit."[88] Even a

---

[84] Dkt. 402 at 6.

[85] *Id.* at 7.

[86] *See Anderson*, 234 P.3d at 1289 ("[T]here was no objectively reasonable prospect that [plaintiff] would accept ten dollars to settle her case[.]"); *Beal*, 216 P.3d at 1178 ("[O]ffers [of one dollar to settle case] were nothing more than tactical demands[.]").

[87] *See Lowell v. Hayes*, 117 P.3d 745, 760 n.76 (Alaska 2005) (citation omitted).

[88] *See Anderson*, 234 P.3d at 1289.

15

"small offer of judgment" can be appropriate in cases where, like here, Plaintiffs' claims were weak.[89]

Second, while Plaintiffs argue that there was no "objective possibility that Plaintiffs would accept [the Offers,]" the Court disagrees.[90] Looking back today, Plaintiffs may assert there was no *subjective* possibility that Plaintiffs would accept the Offers, but at the time RAC made the Offers the Court concludes there was an "objectively reasonable prospect" that Plaintiffs would consider the Offers or at least enter settlement discussions.[91] The case had been pending for over two years.[92] The key facts of the case had been developed, including pivotal testimony from Pilot Furnia's deposition.[93] Although its admissibility would be later disputed, the NTSB issued its probable cause finding in 2017, which concluded that the probable cause of the accident was Pilot Furnia's "decision to depart in dark night" and that his "failure to determine the airplane's preflight

---

[89] *Id.* at 1289–90; *see also Lowell*, 117 P.3d at 760–61 (affirming the trial court's award of attorney's fees where defendants offered settlement for "zero dollars and an apology" because it met the standards under Rule 68); *McAnally*, 397 P.3d at 330 (noting that a $5,000 settlement offer met the purposes of Rule 68, even though the plaintiff "honestly believed his damages were much greater than that").

[90] Dkt. 402 at 6.

[91] The Court is also mindful of the perverse incentives that would be created if it were to find a Rule 68 offer invalid solely because Plaintiffs would never accept a settlement offer. Rule 68 is intended to incentivize settlement of flimsy claims by increasing the costs of proceeding in the case (and here, to summary judgment). Plaintiffs chose to not accept RAC's Offers or to enter into further discussions and they must bear the costs of that decision as contemplated by Rule 68. *See Froines*, 175 P.3d at 1237 (noting that "the losing party's unreasonableness in rejecting an offer of judgment" can factor into the Rule 68 analysis).

[92] *See* Dkts. 1 (filed Sept. 7, 2017); 393-2, 393-3 (dated Sept. 9, 2019).

[93] *See, e.g.*, Dkt. 170-2 at 4, 6–7 (Furnia Dep. Excerpt) (admitting that the subject plane was a good airplane and discussing his and/or Rainbow King Lodge's oversight re: weight and balance issues).

weight and balance and center of gravity" contributed to the accident.[94] Plaintiffs also entered into settlements with Rainbow King Lodge and Pilot Furnia earlier in 2019, so it was not unreasonable for RAC to believe that Plaintiffs would be open to settlement discussions.[95] The fact that RAC gave the Offers before expert witness disclosures is not dispositive, especially since experts must rely on the factual record to underpin their opinions and cannot make legal conclusions.[96] Accordingly, the timing of RAC's Offers served the purposes of Rule 68 by giving Plaintiffs a bona fide option to settle their claims against RAC or otherwise enter into settlement discussions.

Based on the foregoing, the Court finds that the Offers were valid and served the purposes of Rule 68 because there was an "'objectively reasonable prospect' that they might [have started] a dialogue that could lead to settlement."[97]

### B. RAC's Attorney's Fees Were Reasonable

Under Rule 68(b), RAC is entitled to 50 percent of "reasonable actual attorney's fees[.]"[98] RAC argues that its requested fees of $247,336.86[99] is reasonable because the case involved over

---

[94] *See* Dkt. 186-2 (NTSB Probable Cause Report); *see also* Dkt. 303 (Order on Motion in Limine to Preclude Admission of NTSB Reports).

[95] *See* Dkts. 106 (Stipulation of Dismissal); 107 (Order Dismissing Rainbow King Lodge and John Furnia). Additionally, it appears that there was at least some discussion between counsel regarding possible settlement in early January 2020. *See* Dkt. 393-4 at 50–51 (invoice entry re: "possible settlement").

[96] *See* Fed. R. Evid. 702 (an expert witness may testify if "the expert's . . . knowledge . . . will help the trier of fact to understand the evidence or to determine a fact in issue" and where "the testimony is based on sufficient facts or data").

[97] *Marshall*, 377 P.3d at 958 (quoting *Anderson*, 234 P.3d at 1289).

[98] Alaska R. Civ. P. 68(b).

[99] This represents 50 percent of $494,673.73 in total attorney's fees incurred by RAC during the relevant period. *See* Dkt. 393-1 at 6. RAC asserts that, overall, it spent at least $690,671.02 in attorney's fees during this litigation. *Id.*

17

30 motions that required extensive review, substantial discovery, and seven expert witnesses from different technical fields.[100] RAC also argues that the overall amount spent was due, in part, due to Plaintiffs' litigiousness and RAC's obligation to defend itself.[101] On the other hand, Plaintiffs argue that the requested fees are not reasonable for a multitude of reasons, including but not limited to RAC's use of a Canadian attorney, ambiguous time entries, excessive time spent on emails and phone calls, and excessive redactions.[102]

The Court closely reviewed each line item in the invoices submitted by RAC and finds RAC's attorney's fees request to be reasonable and necessary. This case is among the most complex civil cases heard in the District of Alaska over the past few years, involving several parties and claims. The parties filed numerous motions in limine and vigorously litigated the merits of Plaintiffs' claims on summary judgment.

The Court will address Plaintiffs' specific objections in turn. First, the Court finds that RAC's use of a Canadian attorney is reasonable. RAC is a Canadian company, the subject plane was assembled in Canada, and the case involved Canadian aircraft regulations. Second, the Court rejects Plaintiffs' arguments that the *In re Crash of Aircraft N93PC* litigation should have further reduced fees. While there are certain similarities between the cases, it would be unreasonable to expect RAC's attorneys to uphold their attorney-client obligations to RAC without substantial legal work. Third, the time entries themselves are specific and reasonably demonstrate counsel's legal work in this case. However, the Court agrees with Plaintiffs that a small number of entries

---

[100] *Id.* at 5–6.

[101] Dkt. 406 at 15–18.

[102] *Id.* at 10–13.

are vague, ambiguous, not legal work, or otherwise unreasonable, and should be omitted.[103] The Court finds RAC's requested attorney's fees should be reduced by $1,469.21 on this basis, to a reduced total of $245,867.65. Fourth, there is no evidence that RAC inflated hours, performed unnecessary legal work, or charged abnormally high billing rates.[104] In fact, RAC pursued some cost-cutting measures. Substantial work was performed by attorneys with lower billable rates.[105] And RAC joined several of co-defendant Texas Turbine Conversions, Inc.'s motions, which reduced the need for RAC to draft its own.[106] Finally, the Court disagrees with Plaintiffs that awarding 50 percent of reasonable attorney's fees to RAC will deter future plaintiffs from bringing products liability cases, especially where, as here, Plaintiffs asserted that at trial they would ask for "tens of millions of dollars" in damages.[107]

## V. CONCLUSION

Accordingly, for the above reasons, RAC's Motion for Attorney's Fees and Costs at Docket 393 is **GRANTED in part** and **DENIED in part**. **IT IS FURTHER ORDERED** that, as the prevailing party on all claims asserted by Plaintiffs, RAC is awarded attorney's fees as against

---

[103] The Court finds that the following fees as listed at Dockets 393-4 and 393-6 should be omitted from RAC's attorney's fee award: 1.2 hours for K. Crabb's entries on 9/20/19 (.60 hrs.), 9/23/19 (.30 hrs.), and 2/27/20 (.30 hrs.); T. Bunkers's entries on 6/17/20 (.40 hrs.), 6/29/20 (.90 hrs.), 7/2/20 (1.60 hrs.), 12/8/20 (.40 hrs.) (the "[c]onference call in preparation" entry), 12/8/20 (.10) (the "[r]eview correspondence" entry); G. Zipkin's entry on 11/3/20 (.20 hrs); and R. Fenn's entries on 10/4/19 (.10 hrs.), 11/5/19 (.30 hrs.), 11/6/2019 (.10), 12/17/19 (.10 hrs.), and 2/5/20 (.40 hrs.). The reduction for R. Fenn's time was calculated in U.S. dollars.

[104] Plaintiffs do not challenge the reasonableness of the billing rates charged by RAC's attorneys. These include rates as follows: Gary Zipkin ($300/hr.), Kristin Crabb ($241.01/hr.), Traci Bunkers ($200/hr.) and Robert Fenn (USD $440/hr.). *See* Dkts. 393-4 at 122; 393-5 at 1.

[105] *See* Dkt. 393-4 at 122.

[106] *See, e.g.*, Dkts. 179, 181, 183, 184 (RAC Joinders to various Mtns. for Summary Judgment).

[107] *See* Dkt. 366 at 12.

19

Plaintiffs, jointly and severally, in the amount of $245,867.65.  The Final Judgment shall be modified accordingly.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 19th day of August, 2021.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE